Daniel C. Girard (SBN 114826)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dgirard@girardsharp.com

Amy M. Zeman (SBN 273100)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amz@classlawgroup.com

Elizabeth A. Kramer (SBN 293129)
**ERICKSON KRAMER OSBORNE LLP**
182 Howard Street
San Francisco, CA 94105
Telephone: (415) 635-0631
Facsimile: (415) 599-8088
elizabeth@eko.law

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.B., C.D., E.F., I.J., K.L., and M.N., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JAMES MASON HEAPS,<br><br>Defendants. | Case No. 2:20-CV-09555-RGK (Ex)<br><br>**JOINT DECLARATION OF PLAINTIFFS' COUNSEL IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL** |

Daniel C. Girard, Elizabeth A. Kramer, and Amy M. Zeman jointly declare:

1. We serve as counsel for the Plaintiffs in this action and submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and to Direct Class Notice.[1] We have personal knowledge of the facts set forth below and will testify competently thereto if called upon.

2. The proposed settlement (attached at **Exhibit 1**) would resolve claims relating to allegations that James Heaps, M.D. assaulted, abused, harassed, or otherwise engaged in inappropriate sexual conduct toward female patients while working as a physician at Regents' medical facilities, and that Regents ratified and failed to respond appropriately to Heaps's conduct.

3. The $73 million Settlement before the Court achieves the litigation goals of accountability through fair compensation for Heaps's patients as well as institutional changes at UCLA medical facilities to prevent similar violations in the future. The Settlement provides automatic $2,500 payments to Settlement Class Members who do not file a claim, while those who come forward to provide details about their experience will be eligible for up to $250,000. Recognizing some individuals may have experienced extraordinary harm as a result of their treatment by Heaps, the Panel is authorized to make supplemental awards if necessary to adequately compensate a claimant who is otherwise eligible to receive the maximum Tier 3 Award. The total amount of all supplemental awards will not exceed $5,000,000, and any unused portion of the $5,000,000 will be distributed to Settlement Class Members.

### Investigation and Litigation Activities

4. Plaintiffs filed their class action complaint on July 30, 2019, and the parties commenced discovery. Throughout early 2020, Regents produced over 5,500 pages of documents in response to Plaintiffs' requests for production of documents.

---

[1] Unless otherwise noted, all capitalized terms herein have the same meaning as defined in the Settlement Agreement.

5.  These documents included Heaps's employment agreements, credentials, and personnel file; University of California policies and procedures regarding sexual harassment and sexual violence; and internal investigations and Title IX investigations into Heaps's misconduct. Additionally, before the litigation, Regents had hired a third-party firm, Praesidium, to interview former Heaps patients and connect them with counselling services if requested.  In response to Plaintiffs' discovery requests, Regents produced anonymized records of calls from former Heaps patients to the Praesidium staff.

6.  Regents served Plaintiffs A.B. and C.D. with a set of Interrogatories and Requests for Production of Documents on February 12, 2020.

7.  Plaintiffs A.B. and C.D. responded to interrogatories and requests for production of documents on March 20, 2020.

8.  We prepared for and scheduled depositions with fact witnesses and corporate representatives from UC Regents under Federal Rule of Civil Procedure 30(b)(6), although those deposition were ultimately cancelled when defense counsel informed us that they could not produce witnesses, as Gibson Dunn's offices were no longer allowing non-essential personnel or third parties physical access to its building to protect staff and mitigate risks of transmission of the Coronavirus. Further, the witnesses who were set to be deposed were all medical professionals or administrators with public heath responsibilities who were fully devoted to addressing the pandemic.

9.  On Monday, March 16, 2020, the parties submitted a Joint Stipulation to extend the time to file the motion for class certification to May 11, 2020, citing the impediments to discovery created by the Covid-19 pandemic (Dkt. No. 39).  Also on March 16, 2020, Defendant UC Regents filed an Unopposed Motion for Protective Order to Stay Pending Discovery for 30 Days During Covid-19 Pandemic (Dkt. No. 40).

10.  On March 19, Judge Klausner denied the Joint Stipulation to file the class certification by May 11, 2020 (Dkt. No. 45). On March 20, Magistrate Judge Eick took

judicial notice of the fact that Los Angeles County is facing a pandemic, and granted Defendant UC Regents' motion to stay discovery for 30 days (Dkt. No. 36.)

11. The parties determined that it would be in the best interest of all parties to dismiss the case with the intent to refile in a few months when all parties had adjusted to the effects of the pandemic. The parties agreed that in the meantime, they would work toward a mediation, and informally exchange information to facilitate that effort.

12. The parties entered into a tolling agreement and on March 25, 2020, Plaintiffs filed a notice of voluntary dismissal without prejudice (Dkt. No. 50).

13. Throughout this period, and in anticipation of reengaging in litigation or mediating at a later date, we continued to collect information and documents from Heaps patients, including Plaintiffs. We also completed the review and analysis of all discovery produced by defendants.

**Support for Certification Under Fed. R. Civ. Proc. 23**

14. There is a strong "basis for the Court to conclude that it likely will be able, after the final hearing, to certify the class." Adv. Cmte. Note. R. 23(e)(1). Plaintiffs satisfy all the requirements for class certification under Rule 23(a), (b)(3) and (c)(4). Their claims arise out of UCLA's common course of conduct with respect to Heaps and uniform policies and procedures concerning sexual misconduct complaints against physicians at UCLA Health.

15. Classwide proof exists with respect to the key issues in this case against the UC Regents: whether UCLA knew of Heaps's misconduct, when UCLA obtained that knowledge, and the reasonableness of UCLA's response to the complaints in view of the information available to it.

16. Rule 23(a)'s numerosity requirement is readily met. Regents has identified approximately 5,000 persons in the Class based on available patient encounter data, and based on such data Regents estimates that there may be as many as 1,600 additional persons in the Class who cannot be pre-identified (but who will be given an opportunity to self-identify). Settlement Agmt. §10.6.

17. The commonality requirement under Rule 23(a) is satisfied here. Plaintiffs have identified common evidence concerning whether UCLA had or should have known of the sexual misconduct allegations against Heaps, when UCLA obtained or should have obtained that knowledge, and the reasonableness of UCLA's responses to the complaints, including its failure to investigate, discipline, or otherwise remove Heaps from seeing patients at its medical facilities.

18. For example, evidence shows a series of complaints by patients and employees to UCLA Health personnel, going back to at least 2014, claiming that Heaps engaged in unnecessary, unwanted, and/or inappropriate touching of the breasts, vagina, and buttocks during exams. Other reports were of Heaps making inappropriate sexual comments to patients and employees. Although the University of California had official policies for sexual harassment complaints and disciplinary procedures for staff accused of sexual harassment and sexual violence, it was not until June of 2018 that Heaps was placed on investigatory leave. Commonality is further satisfied because UCLA's uniform policies and conduct subjected all class members to a similar risk or threat of sexual abuse.

19. Plaintiffs meet the typicality and adequacy requirements. The class claims arise from UCLA's failure to act to protect its patients from Heaps. The same evidence will show that whether UCLA's conduct injured class members by subjecting them to a substantial risk of sexual assault and harassment. Plaintiffs have engaged capable counsel dedicated to pursuing to the litigation and Plaintiffs have and made important contributions to the case by communicating regularly with counsel, assisting in the preparation of the pleadings and discovery responses, providing interviews for use during mediation, and providing input on the settlement.

20. The requirements of 23(b)(3) and (c) are also met. Absent settlement Plaintiffs would propose certification of an issues class under Rule 23(c)(4) to resolve through common evidence key issues underlying every class member's claims. Those issues would include: (1) whether UCLA knew or should have known of sexual

misconduct allegations against Heaps; (2) when UCLA obtained or should have obtained that knowledge; (3) whether UCLA conducted a reasonable investigation into sexual misconduct complaints against Heaps; (4) whether it was reasonable for UCLA not to remove or otherwise discipline Heaps in light of the complaints against him; (5) whether UCLA's actions or failure to act constituted a policy of deliberate indifference to reports of sexual misconduct against it physicians; (6) whether UCLA attempted to conceal complaints or reports of Heaps's sexual misconduct; (7) whether UCLA's actions or failure to act exposed class members to a substantial risk of sexual assault or harassment by Heaps; (8) and whether certain forms of Heaps's conduct were objectively outside the scope of accepted medical standards of care applicable during the relevant time, or otherwise actionable. Here, the issues appropriate for certification would predominate over individualized questions.

### Mediation and Negotiation

21. In late May 2020, the parties participated in two full-day mediation sessions with mediator Kenneth R. Feinberg. His colleague, Ms. Camille Biros, assisted in the mediation. Mr. Feinberg and Ms. Biros have extensive experience in mediating complex litigation, and specifically in matters involving sexual abuse.  Mr. Feinberg has submitted a declaration in support of preliminary approval of the Settlement.

22. The parties made detailed submissions in advance of mediation, and presented their respective positions to Mr. Feinberg and Ms. Biros at the mediation. Plaintiffs' presentations included recorded statements describing their experiences.

23. At the end of the second day of the mediation, Plaintiffs and Regents were able to reach an agreement in principle to resolve the litigation. Ultimately, all parties signed on the proposed settlement.

24. In the months that followed, Plaintiffs and UCLA negotiated the settlement documents now before the Court, including the claim form class members will use to apply for Tier 2 and Tier 3 Awards and the Claims Procedure Guidelines that the Special Master and Panel will use to disburse the Settlement Fund to class members. Plaintiffs'

counsel include members of the team that represented the class plaintiffs in the UCS/Tyndall litigation, and drew upon their experience in preparing the settlement here.

25. The parties executed the settlement agreement on November 6, 2020.

### The Special Master and Panel

26. The Settlement provides for a three-person panel responsible for adjudicating and determining Claim Awards for Tier 2 and Tier 3 Claims. The Panel will consist of the Special Master appointed by the Court, along with a forensic psychologist or psychiatrist and an OB/GYN.

27. The use of an experienced special master, aided by subject matter experts, to determine individual awards was successfully employed in similar settlements of sexual assault claims, including the recent Johns Hopkins settlement, *Jane Doe No. 1, et al. v. Johns Hopkins Hospital, et al.*, No. 24-C-13-001041 (Md. Cir. Ct. 2014), and the USC/Tyndall settlement, *In re USC Student Health Center Litigation*, No. 2:18-cv-04258-SVW (C.D. Cal.).

28. The Special Master and her team will be mindful of the effects that trauma may have on survivors, and will consider these factors among others when performing the analysis necessary to determine awards and allocate the fund consistently and fairly among claimants.

29. The parties propose that Hon. Irma E. Gonzalez (Ret.)—who supervised administration of the USC/Tyndall settlement—be appointed as Special Master.

30. Plaintiffs will file a motion for appointment of a special master under Fed. R. Civ. Proc. 53 as part of the final approval process.

### Monetary Compensation

31. The $73 million Settlement Fund will be distributed to Settlement Class Members according to a tiered claims process. The Special Master will oversee the administration of disbursements from the Settlement Fund.

32. Settlement Class Members who can be pre-identified through UCLA's records will receive an automatic Tier 1 award of $2,500. Individuals who are not pre-

identified can establish their class membership, and receive the $2,500 Tier 1 award, by filing a qualifying Statement of Class Membership (Exhibit C1 to the Settlement Agreement). Payment of the Tier 1 awards will be made within 10 days after the Effective Date.

33. Settlement Class Members are also eligible to make a Tier 2 or Tier 3 Claim by submitting a Claim Form (Exhibit C2 to the Settlement Agreement).

34. Generally, a Tier 2 Claim requires the claimant to describe in writing her experience with Heaps, the impact upon her, and any damage she suffered. If the Panel determines that the Claim Form is credible, and that the conduct described falls outside the scope of accepted medical standards of care applicable during the relevant time, or is otherwise actionable, the Claimant will receive an additional $10,000 award, subject to Pro Rata Adjustments.

35. Generally, a Tier 3 Claim requires the claimant to describe her experience with Heaps, the impact to her, and any damage she suffered, in more detail than required under Tier 2, and participate in a telephone interview with a trained specialist. Tier 3 claimants also have the option of supporting their claim with documentation. If the Panel determines that the Claim Form is credible, and that the conduct by Heaps falls outside the scope of accepted medical standards of care applicable during the relevant time, or is otherwise actionable, the Claimant will receive a total award of $12,500 to $250,000, subject to Pro Rata Adjustments.

36. The Settlement Agreement provides that $5,000,000 will be set aside for supplemental awards. The Special Master may give a supplemental award in extraordinary cases if she determines that additional compensation is necessary to adequately compensate a claimant who is otherwise eligible to receive the maximum Tier 3 Award. The supplemental award may be in any amount, so long as the total of all supplemental awards does not exceed $5,000,000. Any unused portion of the 5,000,000 will be distributed to Settlement Class Members.

37. Details about the claims procedures, including a description of Pro Rata Adjustments are set forth in Exhibit A to the Settlement Agreement.

### Equitable Relief

38. Equitable relief is a material component of the Settlement. The Settlement's equitable relief provisions are set forth in Exhibit B to the Settlement Agreement and are the product of considerable negotiation between the parties.

39. As part of the settlement, Regents will ensure improved operating and oversight procedures for identification, prevention, and reporting of improper sexual conduct in the clinical setting, including: a new investigation model for sexual harassment/sexual violence; improved chaperone policies; notice to patients of reporting options; training for UCLA medical facilities personnel on provider-patient boundaries and on conducting sensitive examinations; enhanced due diligence during the credentialing and recredentialing process and in connection with UCLA Health's acquisition of a physician or group practice; and appointment of a compliance monitor to facilitate, oversee, and evaluate these institutional changes.

40. The Compliance Monitor will assist UCLA medical facilities in establishing concrete steps and a timetable for the completion of these measures, and UCLA will describe the progress in annual reports sent to the Chancellor, UC Regents, and Class Counsel.

41. UCLA medical facilities will undertake and implement the actions required under the equitable relief provisions for a minimum of three years. Class Counsel will have standing to seek relief from the Court if they believe there is material non-compliance on the part of UCLA medical facilities.

### Notice to the Class

42. The parties have agreed upon a notice program that comports with due process and the requirements of Rule 23. The proposed notice program is set out in the Declaration of Jennifer M. Keough of JND Legal Administration, with proposed notices attached.

43. Direct notice will be made to all women who, based on UCLA records, meet the Class definition, and for whom contact information can be found using UCLA records.

44. Notice will also be published in media likely to be seen by Class members, such as the *Los Angeles Times* newspaper, and as part of an online notice campaign that JND will supervise.

45. In addition, notice will be provided to the appropriate state and federal authorities as required by the Class Action Fairness Act, 28 U.S.C. §1715(b).

46. JND was selected after a competitive bidding process.

47. Notice costs will not be deducted from the Settlement Fund but will instead be paid separately by Regents.

**Appointment of Class Counsel; Attorney's Fees and Costs**

48. We are qualified to serve as settlement class counsel under Rule 23(g). Collectively, we have decades of experience successfully representing plaintiffs in complex class action litigation, including in sexual misconduct cases. Detailed information about our firms can be found at **Exhibits 2, 3 and 4** to this Declaration.

49. Regents will pay attorney's fees and reimburse litigation expenses separately from the $73 million settlement fund, in an amount to be determined by the Court. Our request for attorneys' fees and reimbursement of expenses will not exceed $8,760,000.

50. We propose to apply for an award of attorneys' fees and reimbursement of expenses after final approval and substantial completion of the claims process, so that the Court can evaluate the application will the benefit of full information about settlement implementation and class member payments.

**Conclusion**

51. We believe the Settlement is fair, adequate, and reasonable, and in the best interests of the proposed Settlement Class, and we respectfully request that the Court

preliminarily approve the settlement, appoint our firms to serve as counsel for the Settlement Class, authorize notice to the class on the terms described, and schedule a date for a final fairness hearing.

52. Each named Plaintiff has reviewed and supports the proposed Settlement.

We declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of November 2020.

/s/ *Daniel C. Girard*
Daniel C. Girard

/s/ *Elizabeth A. Kramer*
Elizabeth A. Kramer

/s/ *Amy M. Zeman*
Amy M. Zeman

**Attestation**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the ECF filer attests that the other signatory listed, on whose behalf the filing is submitted, concurs in this filing's content and has authorized this filing.

By: *Daniel C. Girard*