EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

A.B. *et al.*,

      Plaintiffs,

          v.

Regents of the University of California *et al.*,

      Defendants.

Case No. 2:20-CV-09555

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement and Release dated October 20, 2020 (the "Agreement"), is made and entered into by and among Plaintiffs A.B., C.D., E.F. G.H., I.J., K.L., and M.N. in the above-captioned consolidated action ("Plaintiffs"), through their undersigned counsel, Defendant Regents of the University of the California ("Regents"), and Defendant James Heaps, M.D. (together, "Releasing Defendants," and collectively with Plaintiffs, the "Parties"). The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against the Released Parties (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Agreement.

## 1.    RECITALS

WHEREAS, Plaintiffs filed a class action in July 2019 (C.D. Cal. No. 2:19-cv-06586) against James Heaps and Regents alleging various causes of action;

WHEREAS, in response to challenges presented by the COVID-19 pandemic, Plaintiffs voluntarily dismissed their claims, without prejudice, in March 2020;

WHEREAS, the Parties thereafter engaged in intensive arm's-length settlement negotiations;

WHEREAS, those negotiations were informed by Regents' production of documents and the Parties' exchanges of information and were supervised in formal mediation sessions by Kenneth R. Feinberg;

2

WHEREAS, on May 29, 2020, the Parties reached a proposed agreement on certain terms and further negotiation resulted in the terms as set forth in the Agreement;

WHEREAS, the Parties are entering into the Settlement to avoid the risks, burdens, and expense of continued litigation;

WHEREAS, each Plaintiff and Defendant has independently determined that it is desirable and beneficial for the Litigation to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement; and

WHEREAS, the Parties, by and through their respective undersigned counsel, have agreed to this Settlement on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and the Class Members) and Releasing Defendants, by and through their counsel, that, subject to the approval of the Court, the Litigation and the Released Claims will be finally and fully compromised, settled, and released, and the Litigation will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

## 2.    DEFINITIONS

The following terms, when used in this Agreement, have the meanings as set forth below. All terms defined in the singular have the same meaning when used in

3

the plural, and all terms defined in the plural have the same meaning when used in the singular.

2.1    "Administrative Expenses" means the cost of the notice program relating to this Settlement and the costs of administering and processing of claims, disbursements of consideration and other necessary and reasonable expenses associated with administering this Settlement, including the compensation of the Special Master, those working under the supervision of the Special Master or the Panel,, and including any costs and expenses related to lien resolution services, as well as expenses related to the Equitable Relief set forth in **Exhibit B** hereto. Regents shall pay Administrative Expenses separately from, and in addition to, the Settlement Amount.

2.2    "Awards" means the individual amounts due to Claimants in accordance with the protocols and procedures outlined herein and in **Exhibit A** hereto.

2.3    "Claim Form" or "Claim Forms" mean, individually or collectively, the "Statement of Class Membership," to be completed by individuals not pre-identified through Regents' records who wish to establish their membership in the Class and eligibility for payment under Tier 1; or the "Tier 2 and 3 Claim Form" to be completed by Class Members who wish to submit claims for Tier 2 or Tier 3 Claim Awards.

4

2.4    "Claim Form Deadline" means the deadline by which Claim Forms must be postmarked as being sent to the Claims Administrator, which deadline will be 120 days from the date of mailing Notice to Class Members.

2.5    "Claimant" means any Settlement Class Member who submits a Tier 2 and 3 Claim Form in accordance with the protocols and procedures outlined herein and in **Exhibit A** hereto.

2.6    "Claims Administrator" or "Settlement Administrator" means JND Class Action, Mass Tort & Lien Resolution, chosen jointly by Class Counsel and Releasing Defendants' Counsel, and to be approved by the Court to conduct various tasks, including as described herein.

2.7    "Claims Process" or "Claim Procedures" means the protocols and procedures set forth in **Exhibit A** hereto for seeking and awarding monetary payments to Settlement Class Members, or such other procedures for distribution of the Settlement Fund to Class Members as the Court may direct.

2.8    "Class" or "Class Members" means all female patients of Dr. James Heaps who were seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010,

or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

2.9    "Class Counsel" means the law firms of Girard Sharp LLP, Gibbs Law Group LLP, and Erickson Kramer Osborne LLP.

2.10   "Class Period" means the period of time from January 1, 1983 to June 28, 2018.

2.11   "Class Representatives" means the individual plaintiffs who brought suit in this Litigation.

2.12   "Court" means the United States District Court for the Central District of California.

2.13   "Effective Date" means the date on which the time for filing an appeal from the Court's issuance of an order granting final approval of this Agreement has either expired without an appeal being filed, or if later, after any appeal has been fully resolved upholding the Agreement (including requests for rehearing, rehearing *en banc*, and petitions for certiorari), at which time the obligations set forth in this Agreement and the terms of this Agreement become binding on Releasing Defendants, the Class Representatives, the Settlement Class, Class Counsel, and anyone else who has undertaken an obligation under this Agreement.

2.14   "Equitable Relief" means the specific measures Regents agrees to undertake pursuant to this Settlement, set forth in **Exhibit B** hereto.

2.15   "Escrow Account" means the escrow account designated and controlled by the Escrow Agent at one or more national banking institutions into which the Settlement Amount will be deposited for the benefit of Class Members.

2.16   "Escrow Agent" means the Claims Administrator or another neutral third party agreed to by the Parties.

2.17   "Final Approval" means entry of the Court's order granting final approval of this Agreement and entering judgment, substantially in the form of **Exhibit E**.

2.18   "Government Payor" means the Medicare program, the Medicaid program, and any other federal, state or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs.

2.19   "Late Claims" means claims filed by Class Members after the Claim Form Deadline.

2.20   "Lien" means any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor; or any mortgage, lien, reimbursement claim, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any person or entity, where there is a legal obligation to withhold payment of a Claim Award, or some portion thereof, to a Settlement Class Member under applicable federal or state law.

2.21   "Lienholder" means any governmental or private entity that holds or otherwise has the right to assert a Lien.

2.22   The "Litigation" means all proceedings consolidated with or relating to *A.B. et al. v. Regents of the University of California et al.*, No. 2:20-CV-09555 (C.D. Cal.).

2.23   "Medicaid Program" means the federal program administered by the states under which certain medical items, services and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1 *et seq.*

2.24   "Medicare Part C or Part D Program" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with the Centers for Medicare & Medicaid Services.

2.25   "Medicare Program" means the Medicare Parts A and B federal program administered by the Centers for Medicare & Medicaid Services under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*

2.26   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, together with its exhibits, including the Statement of Class

8

Membership, and the Tier 2 and 3 Claim Form, substantially in the form of **Exhibit C** hereto.

2.27 "Opt-Out Deadline" means the date, entered by the Court in the Preliminary Approval Order, by which a Class Member may elect to exclude herself from the Class.

2.28 The "Panel" means the three-person panel responsible for adjudicating and determining Claim Awards for Tier 2 and Tier 3 Claims. The Panel shall consist of the Special Master appointed by the Court, along with a forensic psychologist/psychiatrist and an OB/GYN selected by the Parties. Each Panel member shall have one "vote" for the purposes of adjudication decisions.

2.29 "Preliminary Approval" means the entry of the Court's order granting preliminary approval of this Settlement and providing for dissemination of notice of the Settlement to the Class, substantially in the form of **Exhibit D** hereto.

2.30 "Released Claims" means any and all claims, counterclaims, rights, causes of action, liabilities, actions, suits, damages, demands, disputes, obligations, judgments, duties, defenses, liens, administrative proceedings, costs, expenses, matters, issues, of any kind whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, at law or in equity, existing under federal, state, local, foreign, tribal, or common

law, that were or could have been asserted against any Defendant—or against a Defendant's representatives, insurance carriers and insurers of their insurance carriers, estates, current and former administrators, current and former officers, current and former trustees, current and former employees and agents in their official and individual capacities, predecessors, successors, subsidiaries, parents, affiliates, and assigns; and any current and former employees, current and former officers, current and former administrators or current and former agents of a Defendant's subsidiaries, parents, affiliates, or assigns—relating to matters alleged in the Litigation.  "Released Claims" does not include any claims relating to (i) actions by any medical practitioner at UCLA medical facilities unrelated to matters alleged in the Litigation in connection with Dr. Heaps, or (ii) medical malpractice or negligence by Dr. Heaps unrelated to any sexual conduct or physician/patient boundary allegations against Dr. Heaps, or (iii) medical malpractice or negligence by Dr. Heaps unknown to the Releasing Plaintiff as of the Opt-Out Deadline, or (iv) the enforcement of the Settlement.

2.31  "Releasing Defendants" means the Regents of the University of California and James Heaps, M.D.

2.32  "Releasing Defendants' Claims" means all claims and causes of action that Defendant may have against Releasing Plaintiffs and/or Class Counsel, whether known or unknown, whether arising under federal, state, common or foreign law,

that arise out of or relate in any way to the institution, prosecution, or settlement of the Litigation or the Released Claims against Releasing Defendants. Notwithstanding the foregoing, "Releasing Defendants' Claims" does not include claims relating to the enforcement of the Settlement.

2.33  "Releasing Plaintiffs" means Plaintiffs and each Settlement Class Member.

2.34  "Settlement" means the terms and conditions of settlement embodied in this Agreement.

2.35  "Settlement Class Member" means any Class Member who does not opt out of the Settlement, and "Settlement Class" means that group of individuals as a whole.

2.36  "Settlement Amount" means the sum of $73,000,000.00.

2.37  "Settlement Fund" means the Settlement Amount together with any interest and accretions thereto, which may be reduced by payments or deductions as provided herein or by Court order.

2.38  "Special Master" means the individual selected by the Parties, subject to Court approval, to administer and adjudicate the Claims Process as set forth in Section 7.

2.39  "Special Master's Team" means any psychologists, psychiatrists, PTSD experts, or other experts or trained specialists or administrative personnel

retained to assist the Special Master and Panel in conducting interviews and evaluating Claim Forms and evidence under the Special Master's supervision. The Special Master's team shall include at least one board certified OB/GYN, a forensic psychologist/psychiatrist, and include at least one woman.

2.40 "Statement of Class Membership" means either a statement in the form agreed upon by the Parties, or another simple, qualifying written statement, signed under penalty of perjury, to be submitted electronically or via U.S. mail by a Claimant, attesting to facts demonstrating that she is a member of the Class.

2.41 "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

## 3.    SCOPE AND EFFECT OF SETTLEMENT

3.1    **Scope of the Settlement.** This Settlement compromises and resolves the Released Claims and the Releasing Defendants' Claims only.

3.2    **Settlement Class Certification.** The Parties stipulate to, and waive their rights to appeal, class certification, for settlement purposes only, of the following Settlement Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3):

> All female patients of Dr. James Heaps who were seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from 1986 to June 28, 2018, (2) at UCLA's student

> health center (currently known as Arthur Ashe Student
> Health and Wellness Center) from 1983 to June 30, 2010,
> or (3) at Dr. Heaps's medical offices at 100 UCLA
> Medical Plaza from February 1, 2014 to June 28, 2018.

3.3   **Releasing Defendants' Reservation of Rights.** Releasing Defendants

do not agree to class certification for any purpose other than to effectuate this

Settlement. Releasing Defendants expressly reserve their right to contest

certification in the event this Settlement is not approved or fails to become effective

for any reason. The Parties agree that if the Settlement is not approved or fails to

become effective for any reason, the litigation will return to the status quo as of

May 28, 2020.

3.4   **Preliminary Approval Proceedings.** Promptly after execution of the

Agreement, Plaintiffs will submit the Agreement together with its Exhibits to the

Court and will apply for entry of an order, substantially in the form of **Exhibit D**,

requesting, *inter alia*, preliminary approval of the Settlement set forth in the

Agreement; the setting of dates for the mailing of the Notice, Claim Form Deadline,

Opt-Out Deadline, Objection Deadline, and Final Approval Hearing; approval of

the Claims Administrator; appointment of the Special Master; and approval of the

Notice.

3.5   **Opt-Out Right.** Any Class Member who wishes to opt out of the Class

must submit a timely written request for exclusion on or before the Opt-Out

Deadline, in the manner specified in the Notice and Preliminary Approval Order,

which written request will in any event include sufficient identifying information so that Releasing Defendants may properly evaluate their right to withdraw from the Settlement in accordance with Section 9.3 below. All requests for exclusion must be signed with a handwritten signature (or similar mark) by the person seeking to exclude herself from the Class.

3.6    **Deficient Submissions**. If a Class Member's request to opt out is materially deficient as to the requirements listed herein, that Class Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail the Class Member a cure letter within 10 business days of receiving the deficient submission to advise the Class Member that her submission is deficient and that the defect must be cured to render the Request for Exclusion valid. The Class Member will have until the later of (a) the Response Deadline or (b) 20 calendar days from the date of the cure letter, to postmark or provide electronically a revised Request for Exclusion. If a Class Member responds to a cure letter by filing a defective Request for Exclusion, then the Settlement Administrator will have no further obligation to give notice of a need to cure. If the revised Request for Exclusion is not postmarked or received electronically within that period, it will be deemed untimely.

3.7    **Binding Effect of Settlement Upon Class Members.** If this Settlement is approved by the Court, at the Effective Date, all persons within the

Class will be bound by the terms of the Settlement, except those Class Members who effectively exercise their right to opt out of the Class.

3.8 **Objections.** Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or the application of Class Counsel for an award of attorneys' fees and costs and/or for service awards for Plaintiffs, must timely do so in the manner specified in the Preliminary Approval Order and in any subsequent notice or order concerning the application for attorneys' fees and costs and/or for service awards to Plaintiffs.

3.9 **Final Approval Proceedings.** Plaintiffs will request that the Court hold the Final Approval Hearing after notice to Class Members is given. At the Final Approval Hearing, Plaintiffs will request entry of an order, substantially in the form of **Exhibit E**:

(a) Finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

(b) directing that the Litigation be dismissed with prejudice, and releasing the Released Claims and the Releasing Defendants' Claims as set forth below;

(c) reserving jurisdiction with respect to implementation and enforcement of the terms of the Agreement; and

(d)    containing such other and further provisions consistent with the terms of the Settlement to which the Parties expressly consent in writing.

3.10 **Extinguishment of Released Claims.** Upon the Effective Date, all Releasing Plaintiffs and anyone claiming through or on behalf of any of them, including but not limited to each of their respective heirs, estates, predecessors, successors, agents, and assigns, will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims against Releasing Defendants, or against Releasing Defendants' representatives; insurance carriers and insurers of their insurance carriers; estates; current and former administrators, current and former officers, current and former trustees, current and former employees and current and former agents in their official and individual capacities; predecessors; successors; subsidiaries; parents; affiliates; assigns; and any employees, officers, administrators or agents of any of Releasing Defendants' subsidiaries, parents, affiliates, or assigns (the "Released Parties"). Upon the Effective Date, the Releasing Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against any of the Released Parties. As to the Released Claims only, all Releasing Plaintiffs hereby expressly, knowingly, and

16

voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Releasing Plaintiffs expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, Releasing Plaintiffs hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims known or unknown, suspected or unsuspected, matured or unmatured, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties. In furtherance of such intention, the Release herein given by Releasing Plaintiffs to the Released Parties shall be and remain in effect as a full and complete general

release as to the Released Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that they have been advised by their attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits they may have had pursuant to such section. Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this Release is a part.

3.11 **Extinguishment of Releasing Defendants' Claims.** Upon the Effective Date, Releasing Defendants will be deemed to have fully, finally, and forever released, relinquished, and discharged all Releasing Defendants' Claims against Releasing Plaintiffs, and Class Counsel, whether arising under federal, state, common, statutory or foreign law. Upon the Effective Date, Releasing Defendants will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Releasing Defendant's Claim against any of the Releasing Plaintiffs and/or Class Counsel. Releasing Defendants are aware of section 1542 of the California Civil Code and expressly waive and relinquish any rights or benefits available to them under that statute or

under any comparable statutory or common law provision of any other jurisdiction with respect to the Releasing Defendants' Claims.

    3.12 **Administrative Proceedings.** Nothing in this Agreement shall affect the rights and responsibilities of the U.S. Department of Education ("DOE") or U.S. Department of Health and Human Services ("HHS") to enforce Title IX of the Education Amendments Act of 1972, as amended, or The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, as amended, or any other applicable law. Nor shall anything in this Agreement be construed as a basis for interfering with Releasing Plaintiffs' right to file a charge or complaint with, or participate in an investigation or proceeding conducted by, DOE, HHS, or any other state, federal or local government entity. Notwithstanding the foregoing, if DOE, HHS or any other state, federal or local government entity commences a lawful investigation or issues a complaint on Releasing Plaintiffs' behalf, Releasing Plaintiffs specifically waive and release Releasing Plaintiffs' right, if any, to recover any monetary benefits of any sort whatsoever in connection with that investigation or administrative proceeding. Releasing Plaintiffs further agree that Regents may present this Agreement to DOE or any other state, federal or local government entity as evidence that the Released Claims have been fully resolved. Nothing in this Agreement shall affect the rights and responsibilities of the Regents under Title IX of the Education Amendments Act of 1972, as amended, The Jeanne Clery

Disclosure of Campus Security Policy and Campus Crime Statistics Act, as amended, or any other applicable law, and the Regents may take action related to the Released Claims against any person other than the Releasing Plaintiffs irrespective of this Agreement.

3.13 **No Release of Claims Between Releasing Defendants.** Notwithstanding the foregoing, this Agreement does not extinguish any claims or counterclaims (including but not limited to *James M. Heaps, M.D. v. The Regents of the University of California,* Case No. 19SMCV01313, pending in the Los Angeles Superior Court) asserted or that may be asserted by Heaps against Regents or by Regents against Heaps.

4. **SETTLEMENT CONSIDERATION**

A. **Equitable Relief.**

4.1 Regents will ensure that medical personnel at UCLA Health and the Arthur Ashe Student Health & Wellness Center act consistently with standards recognized by applicable health oversight agencies such as the Medical Board of California and specialty societies such as the American College of Obstetricians and Gynecologists. Additionally, Regents will ensure appropriate procedures are implemented at UCLA medical faciltes with respect to the identification, prevention, and investigation and reporting of sexual harassment, including sexual assault.

4.2    The specific measures that Regents will undertake to satisfy these provisions, and efforts to ensure compliance, are set forth in the Equitable Relief Measures, annexed hereto as **Exhibit B**.

      **B.    Monetary Consideration.**

4.3    Regents will pay all Administrative Expenses. Administrative Expenses shall be invoiced to Regents and timely paid.

4.4    Within 30 days of the Effective Date, Regents will deposit $73 million into the Escrow Account pursuant to instructions to be delivered by Class Counsel.

**5.    USE OF THE SETTLEMENT FUND**

5.1    **Disbursements.** The Settlement Fund will be used to pay distributions to Claimants as provided herein and in the Claim Procedures.

5.2    **Tax Implications for Claimants.** Releasing Defendants make no representation or warranty, and provide no advice, regarding the tax consequences, if any, of this Agreement. Claimants are advised to consult with appropriate legal counsel regarding any tax implications of this Agreement. It is the intention of the parties that every payment to a Settlement Class Member as provided herein is a payment made because of a personal injury suffered by the Settlement Class Member.

5.3    **Investment of Settlement Amount.** The Escrow Agent may invest the Settlement Amount in United States Agency or Treasury Securities or other

instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and may reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph will be borne by the Settlement Fund. Releasing Defendants will have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of, including any transactions executed by, the Escrow Agent.

5.4 **Execution of Approved Transactions.** Subject to further order(s) and/or directions as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Agreement. Releasing Defendants will have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent in its capacity as such.

5.5 **Fund Under Court Jurisdiction.** All funds held by the Escrow Agent will be deemed and considered to be *in custodia legis* of the Court, and will remain subject to the jurisdiction of the Court, until such time as such funds will be distributed pursuant to the Agreement and/or further order(s) of the Court. The Parties will account to the Court in regard to expenditures from the Settlement Fund

in such manner and at such times as the Court shall direct. The Settlement will not depend on the Court accepting particular proposed distributions, provided that there is a valid and binding release of class claims.

5.6    **No Return of Funds After Effective Date.** Upon the occurrence of the Effective Date, neither Releasing Defendants nor any other person or entity that paid any portion of the Settlement Amount will have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever (including, without limitation, the number of Claim Forms submitted, in absolute terms or by category, or the amounts to be paid to Claimants), except as set forth in Section 9.2 below.

5.7    **Qualified Fund and Relation Back.** The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. Additionally, the Escrow Agent will timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections will be made in compliance with the procedures and requirements contained in such regulations. It will be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.8   **Tax Administrator.** For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" will be the Escrow Agent. The Escrow Agent will timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described above) will reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund as provided herein.

5.9   **Taxes.** All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Releasing Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of these Tax provisions (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) returns) ("Tax Expenses"), will be paid out of the Settlement Fund; in no event will any Defendant or any of its or his counsel have any liability

24

or responsibility for the Taxes or the Tax Expenses. The Escrow Agent, through the Settlement Fund, will indemnify and hold each Defendant and its or his counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses will be treated as, and considered to be, a cost of administration of the Settlement Fund and will be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent will be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither Releasing Defendants nor any of their counsel are responsible or will have any liability for any Taxes or Tax Expenses. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to ensure performance of these Tax provisions.

   5.10  **Responsibility for Liens.**

         (a)    The Parties have appointed the Claims Administrator to administer the process to identify and resolve potential Liens owed for medical treatment paid on behalf of a Settlement Class Member by, but not limited to, Governmental Payors or Medicare Part C and D Program sponsors. The Claims

Administrator will determine from information provided directly to the Claims Administrator whether there is a potential repayment obligation for medical treatment related to this Settlement asserted against an eligible Settlement Class Member. The Claims Administrator will satisfy, either globally or on an individual basis, any such Liens out of a Settlement Class Member's Claims Award in advance of payment to that Settlement Class Member or, upon notice of a final lien total, hold funds equal to the amount of the Lien without distributing the held funds to the Settlement Class Member until the Lien has been satisfied or waived.

(b)     The Claims Administrator will obtain documentation that any applicable Lien has been resolved, either globally or otherwise, and whether through payment or otherwise. The Claims Administrator will provide to Class Counsel or the Special Master, upon request, information received for the purposes of verifying compliance and repayment satisfaction.

(c)     Each Settlement Class Member (and his or her respective counsel, if applicable) will be solely responsible for the satisfaction and discharge of all Lien obligations. This includes any potential notice obligation required by statute or otherwise when making a claim for and/or receiving compensation under this Settlement. Notwithstanding that responsibility, the Claims Administrator will perform the duties outlined herein upon authorization by the Court and each Settlement Class Member agrees to execute any supplemental documents or

correspondence, provide any additional information, and take all additional actions that may be necessary or appropriate to allow the Claims Administrator to identify or resolve a Lien. The Claims Administrator, through Class Counsel, will seek a Qualified Protective Order from the Court authorizing the Claims Administrator to receive and send information that is, or may be, protected under the Health Insurance Portability and Accountability Act ("HIPAA") to fulfill the duties described herein on behalf of Settlement Class Members.

(d)     If any person or entity claims a Lien, other than those described above, with respect to a Settlement Class Member's Claims Award and the Claims Administrator has been put on notice of such Lien, the Claims Administrator will have no authority to pay any Claims Award to any Settlement Class Member subject to a Lien that has not been fully and finally released. Nothing in here shall be interpreted to create or expand Lien recovery rights held by third parties pursuant to applicable law.

(e)     In reaching this Agreement and paying the Settlement Amount, Releasing Defendants are relying on the foregoing representations and warranties of the Plaintiffs and, specifically, the actions that the Plaintiffs have represented that the Claims Administrator and the Settlement Class Members will take to satisfy any and all Liens and claims should they arise, pertaining to matters involved in or relating to the Litigation and the Released Claims.

(f)      The Claims Administrator shall release, defend, indemnify, and hold harmless the Released Parties from any and all damages, penalties, costs, expenses and fees incurred in connection with any claim or cause of action asserted based on a Medicare or Medicaid Lien against the Released Parties as a result of the settlement payments to be made to Settlement Class Members.

(g)      The Claims Administrator shall release, defend, indemnify and hold harmless the Released Parties from any and all adverse consequences in the event that this Settlement results in the loss of any Medicare or Medicaid rights or benefits to any Settlement Class Member.

(h)      The Released Parties are hereby made express third-party beneficiaries of this Section 5.9 and may enforce directly and in their own name, and without the consent of any other person, all obligations of the Claims Administrator set forth in Sections 5.9(a) through (d).

(i)      Any modifications to this Section 5.9 must be approved by the Released Parties.

## 6.      NOTICE AND ADMINISTRATION

6.1   **Appointment and Invoices of Claims Administrator.** The Claims Administrator shall be appointed by the Court in the Preliminary Approval Order. The reasonable fees and expenses of the Settlement Administrator shall be invoiced to and paid by Regents.

28

6.2    **Notice Program.** Within 7 days after entry of the Preliminary Approval Order, Regents will furnish the Claims Administrator with all information reasonably available to Regents to assist in the identification of all potential Settlement Class Members. The Claims Administrator will provide direct notice of the Settlement to all identifiable Class Members within 28 days after entry of the Preliminary Approval Order. The Claims Administrator also will provide publication notice to Class Members who cannot be pre-identified.

6.3    **Website.** The Claims Administrator will establish a standalone website for the Settlement, which will make available all relevant materials, including the Claim Form, and will have the ability to receive and accept Claim Forms.

6.4    **Claims Administration.** The Claims Administrator will receive all Claims and process them as directed by the Special Master or as otherwise set forth in **Exhibit A**, or as otherwise approved by the Court. Unless the Court otherwise orders, claims processing will continue notwithstanding the pendency of an appeal, except that Releasing Defendants shall be under no obligation to pay claims prior to the occurrence of the Effective Date.

6.5    **Late Claims.** The parties recognize that in class action settlements, despite best efforts, late claims will be filed. The Special Master, during the period where timely claims are being evaluated, may, at her discretion,  allow a late claim.

6.6    **No Claims Arising From Settlement Administration.** No person will have any claim against Plaintiffs, Class Counsel, any person designated by Class Counsel, the Special Master, the Panel, or the Claims Administrator arising from or relating to determinations or distributions made substantially in accordance with this Agreement, the Claim Procedures, or further order(s) of the Court.

6.7    **Further Proceedings in the Event of Settlement Residue.** If the Settlement Fund is not fully disbursed after the Claim Procedures established in **Exhibit A** are completed, the Parties will notify the Court and propose additional means of distributing the remaining amount in the Settlement Fund, which may include providing additional distributions to Class Members, additional notice of the Settlement to non-participating Class Members, and/or distributions to appropriate *cy pres* recipients. There will be no *cy pres* distribution unless the Court finds that the parties have in good faith exhausted all reasonable efforts to distribute the Settlement Fund to Class Members.

6.8    **Return or Destruction of Claims Process Materials.** At the conclusion of the Claims Process, the Claims Administrator and Special Master will destroy all materials submitted during the Claims Process, or, if requested by the Claimant, will return such materials to the Claimant. Further, all work product of the Claims Administrator, the Special Master, the Special Master's Team, and the Panel containing claimant-specific information will be destroyed. The Claims

Administrator and Special Master shall then provide Affidavits of Return or Destruction to the Parties and the Court.

## 7.     THE SPECIAL MASTER

7.1     **Selection of Special Master.** A Special Master will adjudicate Claims under the Claims Process. The Parties will select and propose that the Court appoint as the Special Master an independent, mutually agreeable individual with knowledge of and experience with claims of sexual abuse, as well as trauma-informed training. Plaintiffs shall select the Special Master and her team, and Regents shall have approval authority of the selected Special Master and her team, which approval shall not be unreasonably withheld. Among other designated responsibilities, the Special Master will assess and adjudicate the Claims Awards as a member of the three-person Panel. The Special Master and her team shall, in consultation with the Parties, develop the protocols for interviews or other oral or written direct contact with Settlement Class members relating to Tier 2 and Tier 3 claims.

7.2     **Special Master Consultation of Independent Experts.** The Special Master may consult with other experts independently, but upon any Party's request, the Special Master will disclose to the Parties their identities and any information, determinations, or conclusions (and the bases therefor) received from such independent experts upon which the Special Master intends to rely. All Parties will

then have a reasonable period to respond or provide additional information if necessary.

7.3   **Fees and Costs of Special Master.** The fees and costs of the Special Master are part of the Administrative Expenses and will be paid by Regents separately from, and in addition to, the Settlement Amount. The Parties will jointly negotiate such fees and monitor the Special Master's expenditures.

## 8.   ATTORNEYS' FEES AND COSTS; SERVICE AWARDS

8.1   **Attorneys' Fees and Costs.** All attorneys' fees and costs will be paid separately by Regents, in addition to and without any reduction of the Settlement Fund. Any fee and cost award must be approved by the Court. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses after Final Approval and implementation of the Claims Procedure. Class Counsel's request for attorneys' fees and reimbursement of expenses will not exceed $8,760,000. If the fee and cost award approved by the court is less than the amount sought by Class Counsel, this will not be a basis for setting aside this Settlement.

8.2   **Service Awards.** In conjunction with their application for attorneys' fees and reimbursement of expenses, Class Counsel will request that the Court approve service awards to the Class Representatives. Regents will not object to any request for a service award for each Class Representative of up to $15,000. Any approved service award will be paid from the Settlement Fund.

9.      **TERMINATION**

9.1    **No Right to Reversion.** Releasing Defendants have no right to reversion of any portion of the Settlement Fund unless this Agreement is not approved or fails to become effective for any reason. Under no circumstances will Regents have any right to reversion of any funds expended for Administration Expenses.

9.2    **Partial Refund.** In the event that the Agreement is not approved or fails to become effective for any reason, the Settlement Fund, including accrued interest and less Taxes or Tax Expenses paid, incurred, or due and owing in connection with the Settlement as provided for herein, will be refunded to Releasing Defendants pursuant to written instructions from counsel for Releasing Defendants.

9.3    **Election to Withdraw.** Regents will have the option to withdraw from the Settlement if the number of Settlement Class Members who exclude themselves from the Class exceeds 250. If the Settlement, other than terms pertaining to the attorneys' fees and costs and/or service awards to Class Representatives, is materially modified by any court, Releasing Defendants may, in their sole discretion to be exercised within 14 days after such a material modification, declare the Settlement void. For purposes of this paragraph, material modifications include but are not limited to any modifications to the definitions of the Releasing Plaintiffs, the Class and/or Class Members, or Released Claims. In the event that Releasing

Defendants exercise their option to withdraw from and terminate this Settlement, the Settlement proposed herein shall become void and shall have no force or effect, the Parties shall not be bound by this Settlement, and the Parties will be returned to their respective positions as of May 28, 2020.

## 10.   GENERAL PROVISIONS

10.1   **Mutual Intent.** The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish such terms and conditions.

10.2   **Good Faith.** The Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

10.3   **Ongoing Best Efforts to Effectuate.** The Parties agree to make their best efforts on an ongoing basis to effectuate the Monetary Relief and Equitable Relief provided for in this Agreement, as well as to defend this Agreement from any legal challenge by objection, appeal, collateral attack, or otherwise.

10.4   **No Waiver**. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach. A Party's failure to exercise any rights under this Agreement shall not constitute waiver of that Party's right to exercise those rights later, except as expressly provided in this

Agreement. No delay by any Party in exercising any power or right under this Agreement will operate as a waiver of that power or right, nor will any single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right, except as expressly provided.

10.5   **Making Records and Information Available.** Regents has made and will continue to make records and information available to Class Counsel for purposes of enabling Class Counsel to confirm the scope of the Settlement Class, the proper Parties, and the scope and accuracy of records maintained by Regents. Such records and information shall be provided in the form of admissible evidence as reasonably necessary to effectuate the purposes of this Agreement.

10.6   **Class Size Contingency.** Regents has represented that there are approximately 5,000 identifiable persons in the Class based on available patient encounter data, and based on such data Regents estimates that there may be as many as 1,600 additional persons in the class who cannot be pre-identified. Plaintiffs reserve the right to withdraw from the Settlement if the actual number of Class Members is materially greater.

10.7   **Authority of Class Counsel.** Class Counsel, on behalf of the Class, are expressly authorized to take all appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms. All Parties covenant and

represent that they have consulted with competent counsel prior to entering into this Agreement.

10.8   **Final Resolution Without Adjudication.** The Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between Releasing Plaintiffs, on the one hand, and the Released Parties, on the other hand, with respect to the Litigation. The Settlement resolves claims which are contested and will not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11 and California Code of Civil Procedure § 128.7. The Parties agree that the Settlement Amount and the other terms of the settlement were negotiated in good faith by the Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

10.9   **No Admission of Liability.** Neither this Agreement nor the Settlement embodied herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement, (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the truth of any of the allegations in the Litigation of any wrongdoing, fault, or liability of Releasing Defendants, or that Plaintiffs or any Class Members have suffered any damages, harm, or loss, or (b) is or may be deemed to be or may be

36

used as an admission of, or evidence of, any fault or omission on the part of Releasing Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

   10.10  **No Court Findings on Liability.** In agreeing to this Settlement, the Parties acknowledge that this Court has not made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in the Litigation.

   10.11  **Use in Other Proceedings.** The Parties will not introduce or use, or cause to be introduced or used, any provision in this Settlement, or any action taken in implementation thereof, or any statements, discussions, or communications, or any materials prepared, exchanged, issued, or used during the course of negotiations leading to this Settlement, in this Litigation or in any other judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature, as evidence of any violation or lack thereof; provided, however, that any Defendant may file this Agreement and/or the Final Order and Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim.

10.12 **Class Member Confidentiality.** The Parties acknowledge that all claimant-identifying information shall be protected from disclosure to the full extent authorized by the relevant laws and regulations governing the protection of personal information, including but not limited to the California Financial Privacy Act and the California Insurance Information and Privacy Protection Act and the Federal Rules of Civil Procedure. Regents further acknowledges that its insurers will execute appropriate non-disclosure agreements with confidentialty protections limiting the disclosure of and protecting the confidentiality of claimant-identifying information. Consistent with California Code of Civil Procedure, section 1001, nothing in this settlement is intended to prevent the disclosure of factual information by Plaintiffs and Class Members.

10.13 **Responsibility of Settlement Class Members for Taxes.** The Parties agree the payments to Settlement Class Members are not wages, and each Settlement Class Member and Class Representative who receives a payment in connection with this Settlement will be responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such Settlement Class Member or Class Representative.

10.14 **Survival of Confidentiality Agreements.** All agreements made and orders entered during the course of the Litigation relating to the confidentiality

of information, such as those designed to protect patient confidentiality and patient identifying information, will survive this Agreement.

10.15 **Applicability of California Public Records Act.** The Parties acknowledge that Regents is subject to the California Public Records Act ("CPRA") and that this Agreement and other documents, or portions thereof, underlying the Agreement may constitute public records of a type that is generally required to be disclosed upon request, to the extent such disclosure is also consistent with Regents' obligations under the law, including under the Information Practices Act ("IPA"), the Health Insurance Portability And Accountability Act ("HIPAA"), the Family Educational Rights And Privacy Act ("FERPA"), and all other applicable state and federal privacy laws.

10.16 **Limitation on Amendment.** The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.17 **Governing Law.** This Agreement and the Exhibits hereto will be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Agreement will be construed and enforced in accordance with, and governed by, the substantive laws of the State of California.

10.18     **Neutral Construction.** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Parties and their counsel. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party will not be employed in the implementation of this Agreement, and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

10.19     **Entire Agreement.** The Agreement and the Exhibits annexed hereto constitute the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in these documents.

10.20     **Exhibits Fully Integrated.** All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

10.21     **Severability.** Except as otherwise provided in this Agreement, if any covenant, condition, term or other provision in this Agreement is held to be invalid, void or illegal, the same will be deemed severed from the remainder of this

Agreement and will in no way affect, impair or invalidate any other covenant, condition, term, or other provision in this Agreement. If any covenant, condition, term or other provision in this Agreement is held to be invalid due to its scope or breadth, such covenant, condition, term, or other provision will be deemed valid to the extent of the scope or breadth permitted by law.

10.22    **Authority to Execute.** Each counsel or other Person executing the Agreement or any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

10.23    **Execution in Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of executed counterparts will be filed with the Court. Signatures sent by facsimile or sent in PDF form via e-mail will be deemed originals.

10.24    **No Prior Assignments**. The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or that are rights released or discharged in this settlement except as set forth in this Agreement.

10.25 **Binding Upon Successors and Assigns.** The Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.26 **Continuing Jurisdiction.** The Court will retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement and matters related to this Settlement.

10.27 **Condition.** This Agreement shall not be binding on the Regents unless and until the Board of Regents of the University of California has formally approved this settlement and such formal approval has been communicated to counsel for Releasing Plaintiffs.

APPROVED AND AGREED TO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATE NOTED BELOW.

Dated: November 6, 2020

**GIRARD SHARP LLP**

By: _____

Daniel C. Girard
Jordan Elias
Makenna Cox
601 California Street
Suite 1400
San Francisco, CA 94108
(415) 981-4800

**GIBBS LAW GROUP LLP**

By: _____

Eric H. Gibbs
Amy M. Zeman
Amanda M. Karl
505 14th Street, Suite 1110
Oakland, CA 94612
(510) 350-9700

**ERICKSON KRAMER OSBORNE
LLP**

By: _____

Elizabeth A. Kramer
182 Howard Street
San Francisco, CA
(415) 635-0631

*Plaintiffs' Counsel*

**REGENTS OF THE UNIVERSITY OF
CALIFORNIA**

By: _____

Kevin Confetti
Deputy Chief Risk Officer
University of California

**REGENTS OF THE UNIVERSITY OF
CALIFORNIA**

By: _____
202FDBA3955644A...

Benjamin Minkow
Senior Counsel
University of California

**GIBSON DUNN & CRUTCHER LLP**

By: _____

Debra Wong Yang
Catherine A Conway
Jesse A. Cripps
Matthew A. Hoffman
333 South Grand Avenue
Los Angeles, California 90071
(213) 229-7584

*Counsel for Defendant Regents of the
University of California*

43

**JAMES MASON HEAPS, M.D.**

By:

James Mason Heaps, M.D.

By:

Marc Smith
Daniel L. Reback
Georgia Skoumbis
**KRANE & SMITH, APC**
16255 Ventura Blvd., Suite 600
Encino, CA 91436
 (818) 382-4000

Tracy Green
**GREEN & ASSOCIATES**
800 West Sixth Street, Suite 450
Los Angeles, California 90017
 (213) 233-2260

*Counsel for Defendant*
*James Mason Heaps, M.D.*