# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., C.D., E.F., G.H., I.J., K.L., and M.N., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JAMES MASON HEAPS,<br><br>Defendants. | Case No. 2:20-cv-09555<br><br>**DECLARATION OF KENNETH R. FEINBERG IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Kenneth R. Feinberg, hereby declare as follows:

1. I submit this declaration in my capacity as a mediator in the above-captioned action and in connection with the proposed settlement of claims in this case.

2. The parties' settlement negotiations were conducted in confidence and under my supervision. All participants in the mediation executed a confidentiality agreement indicating that the mediation process was to be considered settlement negotiations for the purposes of Rule 408 of the Federal Rules of Evidence, protecting disclosures made during such process from later discovery, dissemination, publication, and/or use of evidence. By submitting this declaration, neither I nor the parties waive in any way the provisions of the confidentiality agreement or the protections of Rule 408. Additionally, although I cannot disclose the contents of the mediation negotiations, the parties have authorized me to inform the court of the matters set forth below to be used in support of approval of the settlement. The information provided herein is based on personal knowledge and I am competent to testify as to the matters set forth herein.

3. I have served as mediator or special master in numerous complex litigations, including the class action arising out of Vietnam veterans' exposure to Agent Orange during their service, the class action involving the closing of the Shoreham nuclear plant on Long Island, and numerous individual commercial disputes in federal and state courts. I also served as the Special Master of the Federal September 11th Victim Compensation Fund of 2001. I have also designed, implemented, and administered numerous allocation and compensation programs for the distribution of settlement proceeds to eligible claimants, such as those affected by the BP oil spill in the Gulf of Mexico, Hurricanes Katrina and Rita, the Virginia Tech shootings, the Boston Marathon bombings, and the Aurora, Colorado and Orlando Pulse nightclub shootings.

4. My co-mediator in this dispute was my colleague Camille Biros, who has extensive experience with settlements, designing claims processes in mass actions, and

1

DECLARATION OF KENNETH FEINBERG IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:20-cv-09555

working closely with me over the years in designing, supervising and administering the equitable distribution of funds to claimants. In addition to administering claims processes, she has designed criteria and procedures for settlement reporting requirements, and compensation valuation determinations. Ms. Biros served as Deputy Administrator of the September 11th Victim Compensation Fund, the Aurora Colorado Victim Relief Fund, the BP Oil – Gulf Coast Claims Facility, the GM Ignition Compensation Claims Resolution Facility, One Fund Boston and the Pulse nightclub shootings.

5. Especially relevant here, both Ms. Biros and I have experience designing, implementing, administering and evaluating claims in sexual abuse cases. We continue to serve as Fund administrators in thousands of child sexual abuse cases involving twenty-three Dioceses of the Roman Catholic Church located throughout the United States, including California. Since 2017, Ms. Biros has distributed over $420 million to approximately 2,600 eligible individual victims. In addition, Ms. Biros and I were retained to design and implement the Jeffery Epstein Victims' Compensation Program.

6. This action is brought as a proposed class action by women who consulted Dr. Heaps for OB/GYN health treatment during his time providing such treatment at one of three UCLA medical facilities: (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010, or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018. Plaintiffs assert that Heaps abused his position through inappropriate contacts and statements during the course of medical examinations, and that UCLA failed to act on complaints it received about Dr. Heaps over a period of years. Plaintiffs allege traumatic physical and emotional abuse. Heaps adamantly denies any misconduct or liability.

7. This action presents many complex legal and factual issues. The claims also present difficult issues relating to the sensitive nature of gynecological exams and what is and is not appropriate and medically necessary.

8. Deciding the fairness of the settlement is a matter for this Court. I make this declaration to provide the Court with my observations in my capacity as mediator during the negotiations and the settlement. The parties were well-represented by zealous and able counsel. The negotiations were based on detailed analyses of the relevant facts and legal principles, and counsel for all parties negotiated at arm's length. I am strongly of the view that the settlement of this action reached at the end of the mediation process represents a fair and practical resolution of what would likely be highly uncertain, complex and time-consuming litigation. From a mediator's perspective, the settlement that has been reached is a compromise reached after informed, hard-fought negotiations, and reflects the strength—and risks—of the claims being resolved through intensive mediation.

## The Mediation Proceedings

9. The mediation was held by Zoom video conference on May 27 and 28, 2020. In attendance were counsel for the parties, in-house counsel for the Regents, and other representatives of the Regents. Heaps's counsel and a representative of his liability insurers also participated in the mediation.

10. Although I cannot disclose matters covered by the mediation privilege, through their submissions in advance of the mediation and their presentations at the mediation, it was apparent to me that the parties were well-prepared to discuss the applicable legal standards, the relative strengths and weaknesses of the parties' respective positions, and the key issues to be addressed at mediation. Counsel for the respective parties made detailed presentations, which included videotaped interview segments with several plaintiffs who described their experiences. Counsel for the parties identified the central issues in dispute and acknowledged the material degree of

3

litigation risk and the benefits that resolution could provide to each of the parties. The mediation addressed the risks at the level of both the law and the alleged facts, and included exchanges of estimated claims and valuation summaries for the purpose of estimating class-wide damage. By the end of the second day of mediation, the parties, with the active assistance of Ms. Biros and me, were able to reach an agreement in principle and executed a settlement term sheet under our auspices.

### Risks of Litigation and Benefits of the Settlement

11. As noted above, the plaintiffs in this matter would face considerable obstacles to success at trial. The relevant 30-year time period stretching back to the 1980s also limits the availability of evidence in support of early claims, as medical records are customarily destroyed after a period of time. Moreover, plaintiffs would face considerable challenges in establishing that Heaps acted negligently and imputing such negligence to UCLA at different stages during Heaps's relationship with UCLA. The challenges in maintaining a class action for trial also presented a significant risk for plaintiffs given their individual interactions with the doctor. And continued litigation likely would have exposed individual plaintiffs to cross-examination on the record concerning traumatic, highly personal events. The parties' settlement negotiations accounted for these and other risks and complex issues in the case, with the attorneys acting professionally and in their clients' best interests at all times.

12. Other than agreeing that attorneys' fees would be paid separately from any recovery to the class, the parties did not discuss attorneys' fees until after they had reached agreement in principle on the essential terms of the settlement, including the amount of the settlement.

13. I believe the proposed settlement is not merely adequate but a highly favorable result considering the risks and uncertainty this litigation would otherwise present. The $73 million fund, with the Regents to pay separately for notice, administrative expenses, and attorneys' fees, provides substantial monetary relief for

4

DECLARATION OF KENNETH FEINBERG IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:20-cv-09555

the class. The proposed claims protocol respects claimants' autonomy by permitting each individual class member to choose from one of three options: collect a payment with no further inquiry, submit a confidential written statement, or provide a more detailed submission and participate in an in-person interview with a team of independent and trained professionals. In addition, the settlement provides for meaningful equitable relief designed to protect the campus community and UCLA in the future.

14. For these reasons—and based upon personal knowledge—I fully support the settlement pending before the Court. I believe it is the product of informed, arms' length negotiations by the parties, represented by experienced and competent counsel, with due recognition of the complexity of the facts and legal issues in this litigation and the burden and risks of taking this matter to trial.

I declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed this 21st day of October 2020.

_____
Kenneth R. Feinberg