**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.B., *et al.*, | Case No. 2:20-CV-09555-RGK |
| Plaintiffs, | **DECLARATION OF JENNIFER M. KEOUGH REGARDING PROPOSED NOTICE PROGRAM** |
| v. | |
| Regents of the University of California, *et al.*, | |
| Defendants. | |

I, JENNIFER M. KEOUGH, declare as follows:

## I.    INTRODUCTION

1.    I am the Chief Executive Officer ("CEO") of JND Legal Administration LLC ("JND"). This Declaration is based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Counsel for the Plaintiffs and Defendants ("Counsel"), and if called upon to do so, I could and would testify competently thereto.

2.    I have more than 20 years of legal experience creating and supervising Notice and Claims Administration programs and have personally overseen well over 500 matters. A comprehensive description of my experience is attached hereto as <u>Exhibit A</u>.

3.     JND is a legal administration services provider with headquarters located in Seattle, Washington.  JND has extensive experience with all aspects of legal administration and has administered hundreds of class action settlements. JND was chosen as the Settlement Administrator[1] in this case.

4.     As CEO, I am involved in all facets of JND's operation, including monitoring the implementation of our notice and claims administration programs.

5.     I submit this Declaration at the request of Counsel in the above-referenced litigation to describe the proposed Notice program for Class Members and address why this comprehensive proposed Notice program is consistent with other best practicable court-approved notice programs and the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Federal Judicial Center ("FJC") guidelines for Best Practicable Due Process notice.

## II.   RELEVANT EXPERIENCE

6.     JND is one of the leading legal administration firms in the country. JND's class action and lien resolution divisions provide all services necessary for the effective implementation of class action settlements including:  (1) all facets of legal notice, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including online claim filing

---

[1] Capitalized terms used and not otherwise defined in this Declaration shall have the meanings given such terms in the Settlement Agreement.

---

capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) lien verification, negotiation, and resolution; (7) calculation design and programming; (8) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (9) qualified settlement fund tax reporting; (10) banking services and reporting; and (11) all other functions related to the secure and accurate administration of class action settlements.  JND is an approved vendor for the United States Securities and Exchange Commission ("SEC") as well as for the Federal Trade Commission ("FTC").  We also have Master Services Agreements with various law firms, corporations, banks, and other government agencies, which were only awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures.  JND has also been certified as SOC 2 compliant by noted accounting firm Moss Adams.  Finally, JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times*, and, most recently, the *New York Law Journal*, for excellence in class action administration.

7.     The principals of JND, including myself, collectively have over 75 years of experience in class action legal and administrative fields.  We have personally overseen some of the most complex administration programs including: $20 billion Gulf Coast Claims Facility; $10 billion Deepwater Horizon BP Settlement; $6.15 billion WorldCom Securities Settlement; $3.4 billion Indian

1    Trust (the largest U.S. Government class action ever); and $3.05 billion

2    VisaCheck/MasterMoney Antitrust Settlement.

3        8.    JND and its principals have extensive experience handling

4    Settlements in courts throughout the 9th Circuit including, but not limited to:

5    *Hernandez v. Experian Information Solutions, Inc*., Case No. 05-cv-1070-DOC

6    (MLGx) (C.D. Cal.); *Chester v. The TJX Co., Inc.*, Case No. 5:15-cv-01437-DDP-

7    DTBx (C.D. Cal.); *Gragg v. Orange CAB Co., Inc.*, Case No. CV 12-576 RSL

8    (W.D. Wash.); *Kellgren, et al., v. Petco Animal Supplies, Inc., et al.*, Case No.

9    3:13-cv-00644-L-KSC (S.D. Cal); *Nozzi, et al., v. Housing Authority of the City of

10   Los Angeles, et al.*, Case No. CV 07-0380-PA-FFMx (C.D. Cal.); *Kissel v. Code42

11   Software, Inc., et al.*, Case No. SACV 15-1936-JLS (KES) (C.D. Cal.); *Harris, et

12   al., v. Amgen, Inc., et al.*, Case No. CV 07-05442-PSG(PLAx) (C.D. Cal.); *In re:

13   Resonant Inc. Securities Litigation*, Case No. 15-cv-01970-SJO-MRW (C.D.

14   Cal.); *Scherer v. Tiffany & Co.*, Case No. 11-cv-00532 (S.D. Cal.); *Seebrook v.

15   The Children's Place Retail Stores*, Case No. 11-cv-00837 (N.D. Cal.); *Fleury v.

16   Richemont North America, Inc.* (Cartier), Case No. 05-cv-04525 (N.D. Cal.);

17   *Howell v. Checkr, Inc.*, Case No. 3:17-cv-04305-SK (N.D. Cal.); *Lloyd v. CVB

18   Financial Corp.*, et al., Case No. 10-cv-06256-CAS-PJW (C.D. Cal.); *In re Intuit

19   Data Litigation*, Case No. 15-cv-1778-EJD (N.D. Cal.); *DeFrees, et al. v. John C.

20   Kirkland, et al. and U.S. Aerospace, Inc.*, Case No. 11-cv-04272-JLS-SP (C.D.

21   Cal.); *McKibben, et al. v. McMahon, et al.*, Case No. 14-cv-02171-JGB-SP (C.D.

Cal.); *Schwartz v. Opus Bank et al.*, Case No. 16-cv-07991-AB-JPR (C.D. Cal.);

*Paggos v. Resonant, Inc. et al.*, Case No. 15-cv-01970-SJO (MRW) (C.D. Cal.);

*Wahl v. Yahoo! Inc. d/b/a Rivals.com*, Case No. 17-cv-02745-BLF (N.D. Cal.); *del*

*Toro Lopez v. Uber Technologies, Inc.*, Case No. 17-cv-06255-YGR (N.D. Cal.);

*In re Yahoo! Inc. Securities Litigation*, Case No. 17-cv-00373 (N.D. Cal.);

*Connolly v. Umpqua Bank*, Case No. C15-517-TSZ (W.D. Wash.).

9.    JND's Legal Notice Team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant state court rules.   Our notice campaigns, which are regularly approved by courts throughout the United States, use a variety of media including newspapers, press releases, magazines, trade journals, radio, television, social media and the internet depending on the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools.   During my career, I have submitted several hundred affidavits to courts throughout the country attesting to our role in the creation and launch of various media programs.

## III.    NOTICE PROGRAM SUMMARY

10.    This section summarizes all elements of the Notice program that will be part of this Settlement.   Section IV below describes each component in greater detail.

11.     The proposed Notice program is designed to inform Class Members of the proposed class action Settlement between Plaintiffs and Defendants.  In the Settlement Agreement, the Class is defined as:

> All female patients of Dr. James Heaps who were seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from 1983 to June 30, 2010, or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

12.     The Notice program described and detailed below has been designed to reach the Class through direct mail, email, and supplemental media efforts. Specifically, the proposed Notice Program includes the following components:

- CAFA Notice:  JND will mail CAFA Notice to appropriate state and federal officials.

- Direct Mail Notice:  JND will mail to all *known* Class Members identified through UCLA's records a Notice Packet that includes the Notice of Proposed Class Action Settlement ("Long Form Notice") and the Tier 2 and Tier 3 Claim Form ("Claim Form"), substantially similar to the proposed Long Form Notice and Claim Form agreed upon by the Parties and submitted to the Court.  JND will also mail a Notice Packet to all women who contact JND and self-identify as Class Members and request a Notice Packet.  This Notice Packet will

include a Long Form Notice, a Claim Form, and a Statement of Class Membership for individuals who self-identify as Class Members to complete and return for determination of eligibility.  Notice Packets will be mailed in an envelope with call-outs on the front and back of the envelope identifying that the mailing is Court-Ordered, encouraging Class Members to open and read the Notice.  The proposed Long Form Notices, the Statement of Class Membership, Claim Form, and mailing envelope will be substantially similar to the attached Exhibits B-1, B-2, C, D, and E, respectively.

- Email Notice:  JND will email a summary notice ("Email Notice") to known Class Members as identified above where email contact information is available.  The proposed Email Notice will be substantially similar to the attached Exhibit F.

- Supplemental Media Effort:  JND will execute a digital media effort using the leading digital network (Google Display Network) and the top social media platform (Facebook) as well as a print media effort using a leading consumer magazine (*People*) and a top daily newspaper (*Los Angeles Times*).  The proposed digital notices are attached as Exhibit G, the *People* notice as Exhibit H, and the *Los Angeles Times* notice as Exhibit I.

- <u>Press Release</u>:  A press release of a shortened summary notice ("Press Release") will be distributed over PR Newswire's US1 Newsline in English and Spanish.  The proposed Press Release will be substantially similar to the attached <u>Exhibit J</u>.

- <u>Settlement Website</u>:  JND will develop and deploy an informational and interactive case-specific Settlement website on which the Long Form Notice and other important Court documents will be posted.  JND reserved the domain www.UCLAHeapsSettlement.com, as requested for this Settlement.  The Settlement website will include functionality to download or submit a Statement of Class Membership and/or a Claim Form.

- <u>Settlement Administrator Email Address</u>:  JND has established a dedicated email address (info@UCLAHeapsSettlement.com) to receive and respond to Class Member questions.

- <u>Toll-Free Information Line</u>:  JND will establish and maintain a 24-hour, toll-free telephone line where callers may obtain information about the Settlement.  During certain business hours, JND's call center will be staffed with live operators, all female associates, who are professionally trained to emphasize the skills necessary to respond to the sensitive and confidential issues involved

1    in this Settlement. The Toll-Free information line will clarify before

2    a caller speaks with an associate that these calls do not constitute an

3    interview with the Special Master's Team as required for a Tier 3

4    claims.

5                    **IV.    NOTICE PROGRAM DETAILS**

6    **A.    CAFA Notice**

7        13.    JND will provide notice of the proposed Settlement under the Class

8    Action Fairness Act (CAFA), 28 U.S.C. §1715(b), no later than 10 days after the

9    proposed Settlement is filed with the Court.  JND will provide such notice to the

10   appropriate state and federal government officials.  Upon completion of the Notice

11   program, a detailed report of the mailing will be provided to this Court.

12   **B.    Direct Mail Notice**

13       14.    An adequate notice program needs to satisfy "due process" when

14   reaching a class.  The United States Supreme Court, in the seminal case of *Eisen*

15   *v. Carlisle & Jacqueline*, 417 U.S. 156 (1974), clearly stated that direct notice

16   (when possible) is the preferred method for reaching a class.  In addition, Rule

17   23(c)(2) of the Federal Rules of Civil Procedure requires that "the court must direct

18   to class members the best notice that is practicable under the circumstances,

19   including individual notice to all members who can be identified through

20   reasonable effort.  The notice may be by one or more of the following: United

21   States mail, electronic means, or other appropriate means."

15.     For this Settlement, JND will send a Notice Packet by direct mail as described above to all women who were identified in UCLA's records, using contact information received from UCLA's records.  Specifically, JND will mail to all *known* Class Members who are pre-identified through UCLA's records a Notice Packet that includes the Long Form Notice and Claim Form.  This Notice Packet will include a Claimant ID Number in the upper left-hand corner of each page of the Long Form Notice, and an explanation indicating these women were pre-identified as Class Members through UCLA's records and will receive a Tier 1 payment check without doing anything further.  The components of the proposed Notice Packet for *known* Class Members are attached as Exhibits B-1, D, and E.  For all other women who were not pre-identified as Class Members but contact JND for a Notice Packet, JND will mail a Notice Packet that includes a Long Form Notice *without* a pre-populated Claimant ID, a Claim Form, a Statement of Class Membership, and an explanation that they must self-identify as Class Members in order to receive a Tier 1 payment.  The components of the proposed Notice Packet for all other women who self-identify as Class Members are attached as Exhibits B-2, C, D, and E.  In both mailings, the Notice informs Class Members that the Tier 1 payment is a minimum payment, and every Class Member is eligible to make a Claim for a higher-tier award.

16.     Upon receipt of Class list data, JND will promptly load the information into a unique database for the Settlement.  A unique ID will be

DECLARATION OF JENNIFER M. KEOUGH
REGARDING PROPOSED NOTICE PROGRAM - 10

1  assigned to each Class Member to identify the Class Member throughout the

2  administration process.   To increase deliverability, JND will review the data

3  provided to identify any bad mail and email addresses and duplicate records based

4  on exact name, address, and/or email.

5          17.     Prior to mailing a Notice Packet, JND will update all mail addresses

6  using the United States Postal Services' National Change of Address ("NCOA")

7  database.[2]

8          18.     JND will track all mailed Notices Packets returned undeliverable

9  by the USPS and will promptly re-mail Notice Packets that are returned with a

10  forwarding address.    JND will also take reasonable efforts to research and

11  determine a better mailing address through a sophisticated advanced address

12  search through credit bureaus to re-mail Notice Packets that are returned

13  undeliverable without a forwarding address.

14      **C.**    **Email Notice**

15          19.     An Email Notice will be disseminated to all *known* Class Members

16  using email contact information provided by UCLA.   These emails will include

17  the appropriate Claimant ID and language indicating that the recipient has been

18  pre-identified as a known Class Member and will receive a Tier 1 Award without

19  _____

20  [2] The NCOA database is the official United States Postal Service ("USPS") technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream.  This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained on the database for 48 months.

21

doing anything further.   The Email Notice to *known* Class Members will be substantially in the form attached as Exhibit F.  The Email Notice informs Class Members that the Tier 1 payment is a minimum payment, and every Class Member is eligible to make a Claim for a higher-tier award.

20.    JND uses industry-leading email solutions to achieve the most efficient email notification campaigns.  Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the Settlement.  JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs").  For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed.  These actions ensure the highest possible deliverability of the email campaign so that more potential Class Members receive notice of the proposed Settlement.

21.    Prior to sending the Email Notice, JND will evaluate the email for potential spam language to improve deliverability.  This process includes running the email through spam testing software, DKIM for sender identification and authorization, and hostname evaluation.  Additionally, we will check the send domain against the 25 most common IPv4 blacklists.

22.    For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability.  We will then clean the list of email

1   addresses for formatting and incomplete addresses to further identify all invalid

2   email addresses.  The email content is then formatted and structured in a way that

3   receiving servers expect, allowing the email to pass easily to the recipient.

4        23.     To ensure readability of the Email Notice, our team will review and

5   format the body content into a structure that is applicable to all email platforms.

6   Before sending the Email Notice campaign, we send a test email to multiple ISPs

7   and open the email on multiple devices (iPhones, Android phones, desktop

8   computers, tablets, etc.) to ensure the email opens as expected.  Additionally, JND

9   includes an "unsubscribe" link at the bottom of the Email Notice to allow Class

10   Members to opt out of any additional email notices from JND.  This step is

11   essential to maintain JND's good reputation among the ISPs and reduce

12   complaints relating to the email campaign.

13        **D.**     <u>**Notice Design and Content**</u>

14        24.     Notice Documents are written in plain language and comply with the

15   requirements of Rule 23 of the Federal Rules of Civil Procedure.  I have reviewed

16   the Notice Documents and believe each complies with these requirements as well

17   as the Federal Judicial Center Class Action Notice and Plain Language Guide.

18        25.     JND has designed the Notice Packet to attract the attention of the

19   recipient so they are encouraged to read the contents and take additional action

20   to learn more about the Settlement.  Each Notice Packet includes "call-outs" on

21   the front and back of the mailing envelope to encourage the recipient to open and

1    read the Notice and identifies that the Notice is Court-ordered.  The actual content

2    of the Notice Packet includes bolded language to indicate that important Court-

3    ordered information is enclosed and contains plain and easy-to-read summaries

4    of the Settlement and details the options available to Class Members.  In addition,

5    each Notice Packet provides instructions on how to obtain more information

6    about the Settlement.

7        26.    For *known* Class Members who are sent a Notice Package by direct

8    mail, the Notice Packet informs the known Class Member that they will receive a

9    Tier 1 payment without needing to take additional action, but that they are also

10   eligible to make a claim for a higher-tier award using the Claim Form.  The Notice

11   Packet will also include a Claim Form for those who are seeking an additional Tier

12   2 or Tier 3 Claim Award.  Women who self-identify as Class Members will be

13   sent a Notice Packet with a Statement of Class Membership and Claim Form.  That

14   Notice indicates that Class Members who self-identify need to act to be included

15   in the Settlement Class and receive a Tier 1 payment.  The Notice also informs

16   these potential Class Members that they are also eligible to make a claim for a

17   higher-tier award using the Claim Form.

18       27.    *Known* Class Members sent Email Notice are instructed to click on

19   links to obtain additional Settlement information as well as how to take additional

20   action to download or submit a Claim Form.

21

28.     In addition, to the extent some portion of the Class may speak Spanish as their primary language, JND will include a Spanish footnote in the mailed Notice Packet and a Spanish tag line at the top of the Email Notice to direct Spanish speaking recipients to the toll-free number and Settlement Website where they can obtain a copy of the Long Form Notice in Spanish.

**E.     Supplemental Media Efforts**

29.     To supplement the Direct Notice, JND will implement a digital effort on the leading digital network (Google Display Network – "GDN") and the top social media platform (Facebook) as well as a print effort with *Los Angeles Daily News* and *People* magazine.

30.     Based on discussions with Counsel, it is my understanding that unknown Class Members are primarily female patients who were seen for treatment by Dr. Heaps at UCLA Facilities prior to 2010.  As a result, to extend reach to 70% of women 25+ years of age in Los Angeles County, JND will cause 5.9 million digital impressions targeting women 25+ in Los Angeles County to deliver through GDN and Facebook. A portion of the impressions will be allocated to Spanish sites (GDN) and Spanish accounts (Facebook).  To further extend reach in Los Angeles County, JND will publish notice once on a Sunday and once on a weekday in the *Los Angeles Times*.

31.     Given that the class period dates back to 1983, JND considered that Class Members may have since moved out of Los Angeles County. Census data

1   indicates that about 13-14% of the Los Angeles County population moves per year,

2   with 9-10% moving within Los Angeles County, about 2% to another county in

3   California, and about 2% to a different state.[3]  Besides elsewhere in California, most

4   of California's population moves to Arizona, Nevada, Oregon, Texas, or

5   Washington.[4]  As a result, to extend reach to 25% of women 25+ in California,

6   Arizona, Nevada, Oregon, Texas, and Washington ("Key Mobility States"), JND

7   will cause 10.7 million digital impressions targeting women 25+ years of age in Key

8   Mobility States to deliver through GDN and Facebook.  A portion of the impressions

9   will be allocated to Spanish sites (GDN) and Spanish accounts (Facebook).

10          32.     To extend reach to Class Members wherever they may reside today,

11  JND recommends a notice placement in the national edition of *People* magazine.

12  *People* is a highly read weekly entertainment magazine.  It reaches 20% of women

13  25+ years of age nationwide.  Combined with the digital effort, the notice placement

14  in *People* extends reach to more than 75% among women 25+ in Los Angeles

15  County and to 40% among women 25+ in the Key Mobility States.

16

17

18

19

20  [3]  *See*  https://ww.census.gov/topics/population/migration/guidance/county-to-county-migration-flows.html.

21  [4]  *See*  https://www.census.gov/data/tables/time-series/demo/geographic-mobility/state-to-state-migration.html.

1

### F.   **Press Release**

2   33.   At the launch of the notice campaign, a press release will be

3   distributed to over 15,000 media outlets nationwide in English and Spanish.  The

4   press release will assist in getting "word of mouth" out about the Settlement.

5   ### G.   **Dedicated Settlement Website**

6   34.   An informational, interactive, ADA-compliant Settlement website

7   will be developed to enable Class Members to get information about the

8   Litigation and Settlement.  The Website will have an easy-to-navigate design and

9   will be formatted to emphasize important information and deadlines.   Other

10   available features will include Settlement deadlines, Frequently Asked Questions

11   page, and links to download the Long Form Notice, in English and Spanish,

12   Statement of Class Membership, Claim Form, and other important Court

13   documents.

14   35.   The Settlement website will be optimized for mobile visitors so that

15   information loads quickly on mobile devices and will also be designed to

16   maximize search engine optimization through Google and other search engines.

17   Keywords and natural language search terms will be included in the site's metadata

18   to maximize search engine rankings.

19   36.   Visitors to the Settlement website will have the ability to download

20   or submit electronically both a Statement of Class Membership Form and/or a

21

1  Claim Form.    JND reserved the domain requested for this Settlement as

2  www.UCLAHeapsSettlement.com.

3  **H.    Settlement Administrator Email Address**

4  37.    JND    has    established    a    dedicated    email    address

5  (info@UCLAHeapsSettlement.com) to receive and respond to Class Member

6  inquiries.  JND will generate email responses from scripted FAQs based on the

7  Long Form Notice that will also be used by our call center personnel.  Depending

8  on call volume and availability, we may use some of the same members on each

9  team for efficiency and to establish uniformity of messaging.

10  **I.    Dedicated Toll-Free Number**

11  38.    JND will make available its scalable call center resources to develop

12  and manage the incoming telephone calls received in response to the Notice

13  program.  JND will establish and maintain a 24-hour, toll-free telephone line where

14  callers may obtain information about the Settlement.   During certain business

15  hours, JND's call center will be staffed with live operators, all female associates,

16  who are professionally trained to emphasize the skills necessary to respond to the

17  sensitive and confidential issues involved in this Settlement.   The Toll-Free

18  information line will clarify before a caller speaks with an associate that these calls

19  do not constitute an interview with the Special Master's Team as required for Tier

20  3 claims.

21

# V.    <u>CONCLUSION</u>

39.    In JND's opinion, the Notice program as described herein as well as the exhibits attached hereto, provide the best notice practicable under the circumstances, are consistent with the requirements of Rule 23 of the Federal Rules of Civil Procedure and all applicable court rules, and are consistent with, and exceed, other similar court-approved best notice practicable notice programs. The Notice program is designed to reach as many Class Members as possible and provide them with the opportunity to review a plain language notice with the ability to easily take the next step to learn more about the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 9, 2020 in Seattle, Washington.

JENNIFER M. KEOUGH

# **EXHIBIT A**

# JENNIFER KEOUGH

## CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





# I. INTRODUCTION

Jennifer Keough is Chief Executive Officer and a Founder of JND Legal Administration ("JND"). She is the only judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $215 million USC Student Health Center Settlement, and countless other high-profile matters. She has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs.

The only female CEO in the field, Ms. Keough oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country. She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing,

Systems and IT work, call center logistics, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues, and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later, Ms. Keough was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th Annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Mrs. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action

business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II. LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

## 1. *Allagas v. BP Solar Int'l, Inc.*

**No. 14-cv-00560 (N.D. Cal.)**

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> *The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits...The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.*

## 2. *Careathers v. Red Bull North America, Inc.*

**No. 13-cv-0369 (KPF) (S.D.N.Y.)**

Due to the nature of this case, direct notice was impossible. Therefore, Ms. Keough assisted in the design of a publication notice and claims administration program intended to reach the greatest number of affected individuals. Due to the success of the notice program, the informational website designed by Ms. Keough and her team received an unprecedented 67 million hits in less than 24 hours. The Claims Administration program received over 2 million claim forms submitted through the three available filing options: online, mail, and email. Judge Katherine Polk Failla approved the notice program (May 12, 2015) finding:

> ...that the Notice to the Settlement Class... was collectively the best notice practicable under the circumstances of these proceedings of the matters set forth therein, and fully satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

## 3. *Chester v. The TJX Cos.*

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

*...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.*

### 4. *Cobell v. Salazar*

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

*...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual*

*notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).*

## 5. Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

## 6. Hernandez v. Experian Info. Solutions, Inc.

**No. 05-cv-1070 (C.D. Cal.)**

This case asserts claims in violation of the Fair Credit Reporting Act. The litigation dates back to 2005, when José Hernandez filed his original Class Action Complaint in *Hernandez v. Equifax Info. Services, LLC*, No. 05-cv-03996 (N.D. Cal.), which was later transferred to C.D. Cal. and consolidated with several other related cases. In April 2009, a settlement agreement between Defendants and some Plaintiffs was reached that would provide payments of damage awards from a $45 million settlement fund. However, after being granted final approval by the Court, the agreement was vacated on appeal by the United States Circuit Court of Appeals for the Ninth Circuit. The parties resumed negotiations and reached an agreement in April 2017. The settlement provided both significant monetary (approximately $38.7 million in non-reversionary cash) and non-monetary benefits. Ms. Keough oversaw the notice and administration efforts for the entire litigation. In approving the settlement and responding to objections about notice and administration expenses, Honorable David O. Carter, stated (April 6, 2018):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*

## 7.   *In re Air Cargo Shipping Servs. Antitrust Litig.*

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

## 8.    In re Classmates.com

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice… together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process…

## 9.    In re Equifax Inc. Customer Data Sec. Breach Litig.

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.

## 10.  *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

GM Ignition Switch Compensation Claims Resolution Facility

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold

standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

<u>GM Ignition Switch Economic Settlement Claims Center</u>

Ms. Keough was also recently appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> *The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.*

> *The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...*

## 11. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was

the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

## 12.  *In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.*

### No. 13-2441 (MDL) (D. Minn.)

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

## 13.  *In re The Engle Trust Fund*

### No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> *The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

## 14. *In re Washington Mut. Inc., Sec. Litig.*

**No. 08-md-1919 MJP (W.D. Wash.)**

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

## 15. *In re Yahoo! Inc. Sec. Litig.*

**No. 17-cv-373 (N.D. Cal.)**

Ms. Keough oversaw the notice and administration of this $80 million securities settlement. In approving the settlement, Judge Lucy H. Koh, stated (September 7, 2018):

> The Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions: met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and 15 U.S.C. § 78u-4(a)(7) (added to the Exchange Act by the Private Securities Litigation Reform Act of 1995); constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation.

13

## 16.  Linneman v. Vita-Mix Corp.

**No. 15-cv-748 (S.D. Ohio)**

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

> JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.

## 17.  Loblaw Card Program

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program

offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

### 18.  New Orleans Tax Assessor Project

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

### 19.  USC Student Health Ctr. Settlement

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice

to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

> The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.

## 20. *Williams v. Weyerhaeuser Co.*

Civil Action No. 995787 (Cal. Super. Ct.)

This landmark consumer fraud litigation against Weyerhaeuser  Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the legal administration firm handling the case. Operating for nine years, the claims program was extensive, subject to varying claims with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding. The program involved not just payments to class

members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level.  Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes.  Ms. Keough oversaw the entirety of the program from start to finish.



# III. JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from other JND programs listed below.

## 1. Judge Susan O. Hickey

***Stuart v. State Farm Fire & Cas. Co.,*** (June 2, 2020)
No. 14-cv-04001 (W.D. Ark.):

*Plaintiffs and the Administrator have satisfactorily demonstrated that the Class Notice and Claim Form was mailed, that the Publication Notice was published, that the Postcard Notice was mailed, and that an automated toll-free telephone number and settlement website were established in accordance with the Stipulation and Preliminary Approval Order.*

## 2. Judge Susan R. Bolton

***In re Banner Health Data Breach Litig.,*** (April 21, 2020)
No. 16-cv-02696 (D. Ariz.):

*Prior to the Final Approval Hearing, Class Counsel filed the original and supplemental Declaration of Jennifer M. Keough Regarding Notice Administration, confirming that the Notice Program was completed in accordance with the Parties' instructions and the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Approval Hearing in support of, or in opposition to, the proposed Settlement, the award of attorneys' fees, costs, and expenses, and the payment of Service Awards to the Class Representatives.*

### 3.    Honorable Virginia A. Phillips

***Sonner v. Schwabe North America, Inc.,*** (April 7, 2020)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*The Court orders the appointment of JND Legal Administration to implement and administrate the dissemination of class notice and administer opt-out requests pursuant to the proposed notice dissemination plan attached as Exhibit D to the Stipulation.*

### 4.    Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (March 26, 2020)
No. 17-cv-02310 (E.D.N.Y.):

*The Court holds that the Class Notice and notice plan as carried out satisfy therequirements of Fed. R. Civ. P. 23(e) and due process. This Court has previously held the Class Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated December 5, 2019 (ECF No. 74) and Order Regarding Notice to Class and Related Matters dated February 6, 2020 (ECF No. 77). The Court further finds that the direct-notice strategy as implemented has successfully and adequately reached the Class, thus constituting the bestpracticable notice and satisfying due process.*

### 5.    Judge Joan B. Gottschall

***In re Navistar MaxxForce Engines Mktg., Sales Practices and Products,*** (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*In accordance with PTO 29 and subsequent orders, the settlement administrator, a corporation for which Jennifer Keough ("Keough" or "settlement administrator") speaks, filed several declarations updating the court on the notice, opt-out, and claims process... the court finds that the settlement is fair, reasonable, and adequate.*

### 6.   Judge Fernando M. Olguin

***Ahmed v. HSBC Bank USA, NA,*** (December 30, 2019)

No. 15-cv-2057-FMO-SPx (N.D. Ill.):

*On June 21, 2019, the court granted preliminary approval of the settlement, appointed JND Legal Administration ("JND") as settlement administrator… the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement… the reaction of the class has been very positive.*

### 7.   Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (December 4, 2019)

No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 8.   Judge Steven W. Wilson

***Amador v Baca,*** (November 7, 2019)

No. 10-cv-1649 (C.D. Cal.):

*The Court approves the retention of JND Legal Administration ("JND") as Class Administrator, to administer the distribution of the Class and Settlement Notice and publication of the Class and Settlement Notice, and to distribute the proceeds of the settlement to all eligible Class Members pursuant to the Plan set out in the Settlement Agreement (Exhibit A) should the Court grant final approval. Exhibit E (the Class Administrator bid) includes the qualifications of JND, which establishes to the Court's satisfaction the qualifications of JND to act as the Class Administrator.*

### 9.   Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)

No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator,... The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class... constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

### 10.  Judge Sarah D. Morrison

***Blasi v. United Debt Serv., LLC,*** (November 5, 2019)

No. 14-cv-0083 (S.D. Ohio):

*JND Class Action Administration ("JND"), the claims administrator, mailed 166,597 notices to the class and had 10,377 notices returned as undeliverable. Id. at 6. Of those, JND re-mailed 2,306 to updated addresses. Id. 7. In addition, the website hosted 3,606 users who registered 10,170 page views. Id. As of August 14, 2019, JND had received 11,178 claim forms that remained under review. Id. Not one objection was lodged, and no one sought exclusion. Id... Through the postcard mailing and the website, the Court finds that the Class Representatives have utilized the best possible yet reasonable means to effectuate notice. Consequently, the Court holds that the Settlement Notice is sufficient.*

### 11.  Judge Cormac J. Carney

***In re ConAgra Foods Inc.,*** (October 8, 2019)

No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*Following the Court's preliminary approval, JND used a multi-pronged notice campaign to reach people who purchased Wesson Oils...As of September 19, 2019,*

only one class member requested to opt out of the settlement class, with another class member objecting to the settlement. The reaction of the class has thus been overwhelmingly positive, and this factor favors final approval.

## 12. Judge Teri L. Jackson

***Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.,*** (August 30, 2019)
No. CGC-15-547520 (Cal. Super. Ct.):

*On April, 16, 2019, the Court issued Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, in which the Court did the following...appointed JND Legal Administration as the Settlement Administrator...The manner and form of notice...was the best notice practicable under the circumstances, was valid, due, and sufficient notice to all members of the Settlement Class, and complied fully with California law and due process.*

## 13. Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)
No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

## 14. Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

## 15. Honorable James Donato

*In re Resistors Antitrust Litig.,* (May 2, 2019)

No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 16. Honorable Leigh Martin May

*Bankhead v. First Advantage Background Serv. Corp.,* (April 30, 2019)

No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator… The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

## 17. Honorable P. Kevin Castel

*Hanks v. Lincoln Life & Annuity Co. of New York,* (April 23, 2019)

No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the*

*Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120...The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto...the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

## 18. Judge Cormac J. Carney

***In re ConAgra Foods Inc,*** (April 4, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*The bids were submitted to Judge McCormick, who ultimately chose JND Legal Administration to propose to the Court to serve as the settlement administrator. (Id. ¶ 65.) In addition to being selected by a neutral third party, JND Legal Administration appears to be well qualified to administer the claims in this case... The Court appoints JND Legal Administration as Settlement Administrator... JND Legal Administration will reach class members through a consumer media campaign, including a national print effort in People magazine, a digital effort targeting consumers in the relevant states through Google Display Network and Facebook, newspaper notice placements in the Los Angeles Daily News, and an internet search effort on Google. (Keough Decl. ¶ 14.) JND Legal Administration will also distribute press releases to media outlets nationwide and establish a settlement website and toll-free phone number. (Id.) The print and digital media effort is designed to reach 70% of the potential class members. (Id.) The newspaper notice placements, internet search effort, and press release distribution are intended to enhance the notice's reach beyond the estimated 70%. (Id.)*

## 19. Honorable William J. McGovern, III, J.S.C.

***Atl. Ambulance Corp. v. Cullum and Hitti,*** (March 29, 2019)
No. MRS-L-264-12 (N.J. Super. Ct.):

*The Court finds that the manner and form of notice set forth in the Settlement Agreement (Class Notice) was provided to the Settlement Class Members and*

*Settlement Sub-class Members by JND Legal Administration, the Court-appointed Administrator of the Settlement...The Class Notice satisfied the requirements of due process and R. 4:32-2 and constitutes the best practicable notice under the circumstances.*

## 20. Judge Edward M. Chen

***In re MyFord Touch Consumer Litig.,*** (March 28, 2019)
No. 13-cv-3072 (EMC) (N.D. Ca.):

*The parties have justified their choice of JND as Settlement Administrator... And the Court finds that the language of the class notice is appropriate and that the means of notice is the "best notice...practicable under the circumstances."*

## 21. Judge Jonathan Goodman

***Belanger v. RoundPoint Mortgage Servicing,*** (March 28, 2019)
No. 17-cv-23307-MGC (S.D. Fla.):

*Class Counsel has filed with the Court a declaration from Jennifer M. Keough, Chief Executive Officer at JND Legal Administration, the independent third-party Settlement Administrator for the Settlement, establishing that the Mail Notice, Claim Form, and Claim Form Instructions were mailed to Noticed Class Members on December 12, 2018; the Settlement Website and IVR toll-free telephone number system were established on December 12, 2018; internet advertising was published beginning December 14, 2018; and the Publication Notice was published on January 7, 2019. Adequate Class Notice was given to the Noticed Class Members in compliance with the Settlement Agreement and the Preliminary Approval Order.*

## 22. Judge Steven P. Shreder

***Chieftain Royalty Co. v. Marathon Oil Co.,*** (March 8, 2019)
No. 17-cv-334 (E.D. Okla.):

*The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration, and the Escrow Agent, Signature Bank, in assisting with*

25

*certain aspects of the administration of the Settlement, and directs them to continue to assist Class Representatives in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.*

### 23. Judge Thomas S. Zilly

**Connolly v. Umpqua Bank,** (February 28, 2019)
No. C15-517 (TSZ) (W.D. Wash.):

*Notice of the proposed class action settlement and of the final approval hearing scheduled for February 21, 2019, was sent to all members of the Class in the manner described in the Declaration of Jennifer M. Keough, the Chief Executive Officer of JND Legal Administration, which is the Settlement Administrator for this matter... the methods of transmitting notices to class members, along with the maintenance of a dedicated website, were the best notice practicable under the circumstances and comported with Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.*

### 24. Judge Kathleen M. Daily

**Podawiltz v. Swisher Int'l, Inc.,** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 25. Honorable Robert W. Lehrburger

**Hines v. CBS Television Studios,** (February 5, 2019)
No. 17-cv-7882 (PGG) (S.D.N.Y.):

*Class Members were provided with the best notice practicable under the circumstances. The Court further finds that the Notice and its distribution comported*

*with all constitutional requirements, including those of due process. No Cass Member opted out of or objected to the Settlement. Moreover, approximately 57% of Class Members returned the Claim form, which represents a substantial response from the Settlement Class...On August 24, 2018 the Court preliminary appointed JND as the Settlement Claims Administrator in this action. JND is an experienced administrator of Class Action settlements nationwide.*

### 26. Judge Naomi Reice Buchwald

***In re LIBOR-Based Fin. Instruments Antitrust Litig.,*** (December 20, 2018)
No. 11-md-2262 (NRB) (S.D.N.Y.):

*The Court hereby finds that the forms and methods of notifying the Lender Class of the Settlements and their terms and conditions met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all Lender Class Members entitled thereto of these proceedings and the matters set forth herein, including the Settlements and Plan of Distribution.*

### 27. Judge Kimberly E. West

***Reirdon v. Cimarex Energy Co.,*** (December 18, 2018)
No. 16-CIV-113 (KEW) (E.D. Okla.):

*The Court further finds that due and proper notice, by means of the Notice and Summary Notice, was given to the Settlement Class in conformity with the Settlement Agreement and Preliminary Approval Order...The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration, and the Escrow Agent, Signature Bank, in assisting with certain aspects of the administration of the Settlement, and directs them to continue to assist Class Representative in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.*

### 28.  Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

### 29.  Judge Mark H. Cohen

***Liotta v. Wolford Boutiques, LLC,*** (November 30, 2018)
No. 16-cv-4634 (N.D. Ga.):

*The Notice Program included written mail notice via post-card pursuant to addresses determined from a look-up on the telephone numbers using a historic look-up process designed to identify the owner of the relevant telephone numbers on July 7, 2016 and September 2, 2016. Keough Decl. ¶¶ 3-4. The Claims Administrator used multiple databases to determine addresses and names of the cellular telephone owners at the time the text messages were sent. Keough Decl. ¶ 3. The Parties' filed evidence that the Claims Administrator provided notice in conformance with the Notice Program approved by the Court. Id. ¶ 4 & Ex. A; Settlement Agreement § C.4; Prelim. Approval Order at 16-17. This notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreement and the fairness hearing. The notice constituted due and sufficient notice for all other purposes to all persons entitled to receive notice.*

### 30.  Judge Kimberly E. West

***Cecil v. BP America Prod. Co.,*** (November 19, 2018)
No. 16-cv-410 (RAW) (E.D. Okla.):

*The form, content, and method of communicating the Notice of Settlement, together with the class settlement website referred to therein: (i) constituted the best notice*

*practicable under the circumstances; (ii) constituted notice reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Litigation, the proposed Settlement Agreement, their right to exclude themselves from the proposed Settlement Agreement and resulting Settlement, their right to object to the same of any part thereof, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, the Due Process protection of the State of Oklahoma, and any other applicable law.*

## 31. Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

## 32. Honorable Beth Labson Freeman

***Wahl v. Yahoo! Inc.,*** (November 15, 2018)
No. 17-cv-2745 (BLF) (N.D. Cal.):

*The Settlement Class was provided with adequate notice of the settlement and an opportunity to object or opt out. The notice satisfied all applicable legal requirements, including those under Federal Rule of Civil Procedure 23 and the United States Constitution.*

### 33.  Honorable Tanya Walton Pratt

***Pierce v Anthem Ins. Cos.,*** (November 13, 2018)

No. 15-cv-00562-TWP-TAB (S. D. Ind.):

*The Court hereby finds and concludes that Notice and the Supplemental Notice was disseminated to members of the Settlement Class in accordance with the terms of the Agreement and that the Notice and its dissemination were in compliance with the Agreement and this Court's Preliminary Approval. The Court further finds and concludes that the Notice implemented pursuant to the Settlement Agreement constitutes the best practicable notice; is notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to accept, object to or exclude themselves from the proposed settlement and to appear at the fairness hearing; constitutes reasonable, due, adequate and sufficient notice to all persons entitled to receive notice; and meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and any Rules of the Court.*

### 34.  Judge Maren E. Nelson

***Granados v. County of Los Angeles,*** (October 30, 2018)

No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

## 35.  Judge Maren E. Nelson

***McWilliams v. City of Long Beach,*** (October 30, 2018)

No. BC361469 (Cal. Super. Ct.):

*It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

## 36.  Judge Cheryl L. Pollak

***Dover v. British Airways, PLC (UK),*** (October 9, 2018)

No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

## 37.  Judge Edward J. Davila

***In re Intuit Data Litig.,*** (October 4, 2018)

No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator...The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed*

*forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

### 38. Judge Michael H. Watson

***O'Donnell v. Fin. American Life Ins. Co.,*** (August 24, 2018)
No. 14-cv-01071 (S.D. Ohio):

*The Court finds that the Class Notice and the notice methodology implemented pursuant to this Settlement Agreement (as evidenced by the Declaration of Settlement Administrator Keough, JND Legal Administration): (1) constituted the best practicable notice; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the terms of the Proposed Settlement, the available relief, the release of claims, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the fairness hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

### 39. Judge Timothy J. Corrigan

***Finerman v. Marriott Ownership Resorts, Inc.,*** (August 15, 2018)
No. 14-cv-1154-J-32MCR (M.D. Fla.):

*Notice was given by Mail in accordance with the Settlement Agreement and the Preliminary Approval Order. The Class Notice, Claim Form, Preliminary Approval Order, Petition for Attorney's Fees, and Settlement Agreement (without exhibits) were also posted on the Settlement Website at www.cruisefaresettlement.com. These forms of class notice fully complied with the requirements of Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and were due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.*

## 40. Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (August 10, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the notice to the Class Members regarding settlement of this
Action, including the content of the notices and method of dissemination to the Class
Members in accordance with the terms of Settlement Agreement, constitute the best
notice practicable under the circumstances and constitute valid, due and sufficient
notice to all Class Members, complying fully with the requirements of California
Code of Civil Procedure § 382, California Civil Code § 1781, California Rules of
Court Rules 3.766 and 3.769(f), the California and United States Constitutions, and
any other applicable law.*

## 41. Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (June 22, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The proposed notice plan set forth in the Motion and the supporting declarations
comply with Rule 23(c)(2)(B) and due process as it constitutes the best notice that is
practicable under the circumstances, including individual notice vial mail and email
to all members who can be identified through reasonable effort. The direct mail
and email notice will be supported by reasonable publication notice to reach class
members who could not be individually identified.*

## 42. Honorable Stanley R. Chesler

***Muir v. Early Warning Services, LLC,*** (June 13, 2018)
No. 16-cv-00521 (D.N.J.):

*Notice to the Class required by Rule 23(e) of the Federal Rules of Civil Procedure
has been provided in accordance with the Court's Preliminary Approval Order,
and such notice has been given in an adequate and sufficient manner; constitutes
the best notice practicable under the circumstances; and satisfies Rule 23(e) and*

*due process. The Court is informed the Mail Notice was sent by first class mail to approximately 211 Settlement Class Members by JND Legal Administration, the third-party Settlement Administrator.*

## 43.  Honorable Lewis A. Kaplan

***Cline v. TouchTunes Music Corp.,*** (May 24, 2018)
No. 14-CIV-4744 (LAK) (S.D.N.Y.):

*The Court finds that the Notice Program has been implemented by the Claims Administrator and Parties, and that such Notice Program, including of the utilized Notice Form, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws.*

## 44.  Judge Janet T. Neff

***Sullivan v. Wenner Media LLC,*** (May 22, 2018)
No. 16−cv−00960−JTN−ESC (W.D. Mich.):

*The Settlement Administrator completed the delivery of Class Notice according to the terms of the Agreement. The Class Notice given by the Settlement Administrator to the Settlement Class, which set forth the principal terms of the Agreement and other matters, was the best practicable notice under the circumstances.*

## 45.  Judge Maren E. Nelson

***Djoric v. Justin Brands, Inc.,*** (March 12, 2018)
No. BC574927 (Cal. Super. Ct.):

*Based on the number of claims submitted the Court concludes that the notice was adequate and the best available means under the circumstances.*

## 46. Judge Federico A. Moreno

***Brna v. Isle of Capri Casinos and Interblock USA, LLC,*** (February 20, 2018) No. 17-cv-60144 (FAM) (S.D. Fla.):

*Class Counsel has filed with the Court a Declaration from JND Legal Administration, the independent third-party Settlement Administrator for the Settlement, establishing the Settlement Notice and Claim Form were delivered by email and mail to the class members on November 27, 2017 and December 4, 2017, the Settlement website was established on November 27, 2017, and Claim Forms were also available electronically on the website. Adequate notice was given to the Settlement Class Members in compliance with the Settlement Agreement and the preliminary approval order.*

## 47. Honorable Percy Anderson

***Nozzi v. Housing Authority for the City of Los Angeles,*** (February 15, 2018) No. CV 07-380 PA (FFMx) (C.D. Cal.):

*The notice given in this case was reasonably calculated to reach the Damages Class... Finally, a notice was published in the L.A. Times for three consecutive weeks on August 18, 2017, August 25, 2017, and September 1, 2017, and a 30-day internet advertising campaign was launched on Facebook, Instagram, and Twitter to inform Class Members about the settlement. (Keough Decl. ¶ 12.) The Court therefore concludes that the notice procedures satisfied the requirements of Due Process and Federal Rule of Civil Procedure 23(e).*

## 48. Judge Ann D. Montgomery

***In re Wholesale Grocery Prod. Antitrust Litig.,*** (November 16, 2017) No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of*

*due process, is the best notice practicable under the circumstances, and constituted
due and adequate notice to the Class of the Settlement, Final Approval Hearing and
other matters referred to in the Notice.*

## 49.  Honorable Robert S. Lasnik

***Gragg v. Orange Cab Co.,*** (October 5, 2017)
No. C12-0576RSL (W.D. Wash.):

*The Settlement Administrator completed the delivery of Class Notice according to
the terms of the Agreement. The Class Notice given by the Settlement Administrator
to the Settlement Class, which set forth the principal terms of the Agreement and
other matters, was the best practicable notice under the circumstances…The Class
Notice given to the Settlement Class Members satisfied the requirements of Federal
Rule of Civil Procedure 23 and the requirements of constitutional due process.*

## 50.  Honorable Philip S. Gutierrez

***Harris v. Amgen, Inc.,*** (April 4, 2017)
No. CV 07-5442 PSG (PLAx) (C.D. Cal.):

*Class counsel retained JND to provide notice and administration services for this
litigation. See generally Keough Decl. JND mailed 13,344 class action notices to
class members by first-class mail on January 14, 2017. See Keough Decl., ¶ 6. If the
mailings returned undeliverable, JND used skip tracing to identify the most updated
addresses for class members. Id. To date, JND reports than only 179 notices are
undeliverable. Id. ¶ 7. Moreover, as of March 21, 2017, the deadline for filing
objections, JND had received no objections to the final settlement agreement. The
lack of objections is an indicator that class members find the settlement to be fair,
reasonable, and adequate.*



# IV. CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Adair v. Michigan Pain Specialist, PLLC | 14-28156-NO | Mich. Cir. |
| Adkins v. EQT Prod. Co. | 10-cv-00037-JPJ-PMS | W.D. Va. |
| Adzhikosyan v. Denver Mgmt. | BC648100 | Cal. Super. Ct. |
| Ahmed v. HSBC Bank USA, NA | 15-cv-2057-FMO-SPx | N.D. Ill. |
| Allagas v. BP Solar Int'l, Inc. | 14-cv-00560 (SI) | N.D. Cal. |
| Amador v. Baca | 10-cv-1649 | C.D. Cal. |
| Amin v. Mercedes-Benz USA, LLC | 17-cv-01701-AT | N.D. Ga. |
| Andreas-Moses v. Hartford Fire Ins. Co. | 17-cv-2019-Orl-37KRS | M.D. Fla. |
| Anger v. Accretive Health | 14-cv-12864 | E.D. Mich. |
| Arthur v. Sallie Mae, Inc. | 10-cv-00198-JLR | W.D. Wash. |
| Atkins v. Nat'l. Gen. Ins. Co. | 16-2-04728-4 | Wash. Super. Ct. |
| Atl. Ambulance Corp. v. Cullum & Hitti | MRS-L-264-12 | N.J. Super. Ct. |
| Backer Law Firm, LLC v. Costco Wholesale Corp. | 15-cv-327 (SRB) | W.D. Mo. |
| Baker v. Equity Residential Mgmt., LLC | 18-cv-11175 | D. Mass. |
| Bankhead v. First Advantage Background Services Corp. | 17-cv-02910-LMM-CCB | N.D. Ga. |
| Barclays Dark Pool Sec. Litig. | 14-cv-5797 (VM) | S.D.N.Y. |
| Barrett v. Nestle USA, Inc. | 18-cv-167-DPM | E.D. Ark. |
| Belanger v. RoundPoint Mortgage Servicing | 17-cv-23307-MGC | S.D. Fla. |
| Beltran v. InterExchange, Inc. | 14-cv-3074 | D. Colo. |
| Bergman v. Thelen LLP | 08-cv-05322-LB | N.D. Cal. |
| Bey v. Encore Health Res. | 19-cv-00060 | E.D. Tex. |
| BlackRock Core Bond Portfolio v. Wells Fargo | 65687/2016 | N.Y. Super. Ct. |
| Blasi v. United Debt Serv., LLC | 14-cv-0083 | S.D. Ohio |
| Blocher v. Landry's Inc. | 14-cv-03213-MSS-JSS | M.D. Fla. |
| Bobo v. LM Wind Power Blades (ND), Inc. | 18-cv-230-DPM | E.D. Ark. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions* | 17-cv-134 | W.D. Okla. |
| *Boskie v. Backgroundchecks.com* | 2019CP3200824 | S.C. C.P. |
| *Boyd v. RREM Inc., d/b/a Winston* | 2019-CH-02321 | Ill. Cir. Ct. |
| *Bradley v. Honecker Cowling LLP* | 18-cv-01929-CL | D. Or. |
| *Briones v. Patelco Credit Union* | RG 16805680 | Cal. Super. Ct. |
| *Brna v. Isle of Capri Casinos* | 17-cv-60144 (FAM) | S.D. Fla. |
| *Broussard v. Stein Mart, Inc.* | 16-cv-03247 | S.D. Tex. |
| *Browning v. Yahoo!* | C04-01463 HRL | N.D. Cal. |
| *Call v. Shutterstock* | SCV-262841 | Cal. Super. Ct. |
| *Calvert v. Xcel Energy* | 17-cv-02458-RBJ | D. Colo. |
| *Cambridge v. Sheetz, Inc.* | 17-cv-01649-JEJ | M.D. Pa. |
| *Careathers v. Red Bull North America, Inc.* | 13-cv-369 (KPF) | S.D.N.Y. |
| *Carmack v. Amaya Inc.* | 16-cv-1884 | D.N.J. |
| *Carson v. Cheers* | 17-2-29644-9 | Wash. Super. Ct. |
| *Castro v. Cont'l Airlines, Inc.* | 14-cv-00169 | C.D. Cal. |
| *Cecil v. BP America Prod. Co.* | 16-cv-410 (RAW) | E.D. Okla. |
| *Chamblee v. TerraForm Power, Inc.* | 16 MD 2742 (PKC)(AJP) | S.D.N.Y. |
| *Chanve c. E.I. Du Pont De Nemours* | 16-cv-00376-MAC-ZJH | E.D. Tex. |
| *Chavez v. Our Lady of Lourdes Hosp.* | 12-2-50575-9 | Wash. Super. Ct. |
| *Chester v. TJX Cos.* | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| *Chieftain Royalty Co. v. Marathon Oil Co.* | 17-cv-334 | E.D. Okla. |
| *Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc.* | 17-cv-00336-KEW | E.D. Okla. |
| *Chieftain Royalty Co. v. XTO Energy, Inc.* | 11-cv-00029-KEW | E.D. Okla. |
| *City of Los Angeles v. Bankrate, Inc.* | 14-cv-81323 (DMM) | S.D. Fla. |
| *Cline v Sunoco, Inc.* | 17-cv-313-JAG | E.D. Okla. |
| *Cline v. TouchTunes Music Corp.* | 14-CIV-4744 (LAK) | S.D.N.Y. |
| *Cobell v. Salazar* | 96-cv-1285 (TFH) | D.D.C. |
| *Common Ground Healthcare Coop. v. United States* | 17-877C | F.C.C. |
| *Connolly v. Umpqua Bank* | C15-517 (TSZ) | W.D. Wash. |
| *Corona v. Sony Pictures Entm't Inc.* | 14−CV−09600−RGK−E | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Courtney v. Avid Tech., Inc.* | 13-cv-10686-WGY | D. Mass. |
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Dearth v. Hartford Fire Ins. Co.* | 16-cv-1603-Orl-37LRH | M.D. Fla. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *del Toro Lopez v. Uber Techs., Inc.* | 14-cv-6255 | N.D. Cal. |
| *Delgado v. America's Auto Auction* | 2019-CH-04164 | Ill. Cir. Ct. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *De Santiago v. California Respite Care, Inc.* | CIVDS1807688 | Cal. Super. Ct. |
| *Diaz v. Lost Dog Pizza, LLC* | 17-cv-02228-WJM-NYW | D. Colo. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Dixon v. Grunt Style, LLC* | 2019 CH 01981 | Ill. Cir. Ct. |
| *Dixon v. Zabka* | 11-cv-982 | D. Conn. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Dozier v. Club Ventures Invs. LLC* | 17BK10060 | S.D.N.Y. |
| *Duran v. DirecTV* | 4850 (1-14-CV-274709) | Cal. Super. Ct. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Easley v. The Reserves Network, Inc.* | 16-cv-544 | N.D. Ohio |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *EEOC v. Patterson-UTI Drilling Co. LLC* | 5-cv-600 (WYD) (CBS) | D. Colo. |
| *Erica P. John Fund, Inc. v. Halliburton Co.* | 02-cv-1152 | N.D. Tex. |
| *Espenshade v. Wilcox & Wilcox* | BC647489 | Cal. Super. Ct. |
| *Essex v. The Children's Place, Inc.* | 15-cv-5621 | D.N.J. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Group Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Felix v. WM. Bolthouse Farms, Inc.* | 19-cv-00312-AWI-JLT | E.D. Cal. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |
| *Fosbrink v. Area Wide Protective, Inc.* | 17-cv-1154-T-30CPT | M.D. Fla. |
| *Fresno County Employees Ret. Assoc. v. comScore Inc.* | 16-cv-1820 (JGK) | S.D.N.Y. |
| *Frost v. LG Elec. MobileComm U.S.A., Inc.* | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| *FTC v. Consumerinfo.com* | SACV05-801 AHS (MLGx) | C.D. Cal. |
| *Gazda v. Serve U Brands, Inc.* | E2019009233 | N.Y. Super. Ct. |
| *Gehrich v. Howe* | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| *Gervasio v. Wawa, Inc.* | 17-cv-245 (PGS) (DEA) | D.N.J. |
| *Gonzalez-Tzita v. City of Los Angeles* | 16-cv-00194 | C.D. Cal. |
| *Gormley v. magicJack Vocaltec Ltd.* | 16-cv-1869 | S.D.N.Y. |
| *Gragg v. Orange Cab Co.* | C12-0576RSL | W.D. Wash. |
| *Granados v. County of Los Angeles* | BC361470 | Cal. Super., Ct. |
| *Grant v. Ballard Mgmt, Inc.* | 18-2-54890-0 SEA | Wash. Super. Ct. |
| *Hahn v. Hanil Dev., Inc.* | BC468669 | Cal. Super. Ct. |
| *Hall v. Dominion Energy* | 18-cv-00321-JAG | E.D. Va. |
| *Halperin v. YouFit Health Clubs* | 18-cv-61722-WPD | S.D. Fla. |
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Harris v. Amgen, Inc.* | CV 07-5442 PSG (PLAx) | C.D. Cal. |
| *Harris v. Chevron U.S.A., Inc.* | 15-cv-00094 | W.D. Okla. |
| *Harrison v. Strategic Experiential Group* | RG16 807555 | Cal. Super. Ct. |
| *Hayes v. Saddle Creek Corp.* | 19-cv-01143-SMY | S.D. Ill. |
| *Health Republic Ins. Co. v. United States* | 16-259C | F.C.C. |
| *Hernandez v. Experian Info. Solutions, Inc.* | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| *Hernandez v. Great Western Pacific Inc.* | 18-2-08788-1 SEA | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Hernandez v. United States Cold Storage of California, Inc.* | S-1500-CV-282297-SPC | Cal. Super. Ct. |
| *Hines v. CBS Television Studios* | 17-cv-7882 (PGG) | S.D.N.Y. |
| *Holt v. Murphy Oil USA, Inc.* | 17-cv-911 | N.D. Fla. |
| *Hopwood v. Nuance Commc'n, Inc.* | 4:13-cv-02132-YGR | N.D. Cal. |
| *Howard v. Southwest Gas Corp.* | 18-cv-01035-JAD-VCF | D. Nev. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *Ilano v. Wells Fargo* | 30-2019-0199146-CU-OE-CXC | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Akorn, Inc. Sec. Litig.* | 15-c-1944 | N.D. Ill. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (American Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AudioEye, Inc. Sec. Litig.* | 15-cv-163 (DCB) | D. Ariz. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re ConAgra Foods Inc.* | 11-cv-05379-CJC-AGR | C.D. Cal. |
| *In re CRM Holdings, Ltd. Sec. Litig.* | 10-cv-00975-RPP | S.D.N.Y. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re General Motors LLC Ignition Switch Litig.* | 2543 (MDL) | S.D.N.Y. |
| *In re Global Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re GoPro, Inc. Shareholder Litig.* | CIV537077 | Cal. Super. Ct. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Initial Pub. Offering Sec. Litig. (IPO Sec. Litig.)* | No. 21-MC-92 | S.D.N.Y. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |
| *In re J.P. Morgan Stable Value Fund ERISA Litig.* | 12-cv-02548-VSB | S.D.N.Y. |
| *In re Legacy Reserves LP Preferred Unitholder Litig.* | 2018-225 (JTL) | Del. Ch. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Products* | 14-cv-10318 | N.D. Ill. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Resonant Inc. Sec. Litig.* | 15-cv-1970 (SJO) (MRW) | C.D. Cal. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Stericycle, Inc. Sec. Litig.* | 16-cv-07145 | N.D. Ill. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re SunTrust Banks, Inc. ERISA Litig.* | 08-cv-03384-RWS | N.D. Ga. |
| *In re Tenet Healthcare Corp. Sec.* | CV-02-8462-RSWL (Rzx) | C.D. Cal. |
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re Ubiquiti Networks Sec. Litig.* | 18-cv-01620 (VM) | S.D.N.Y. |
| *In re Unilife Corp. Sec. Litig.* | 16-cv-3976 (RA) | S.D.N.Y. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Williams Sec. Litig.* | 02-CV-72-SPF (FHM) | N.D. Okla. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *Ivery v. RMH Illinois, LLC and RMH Franchise Holdings, Inc.* | 17-CIV-1619 | N.D. Ill. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Jones v. Encore Health Res.* | 19-cv-03298 | S.D. Tex. |
| *Jordan v. Things Remembered, Inc.* | 114CV272045 | Cal. Super. Ct. |
| *Kellgren v. Petco Animal Supplies, Inc.* | 13-cv-644 (L) (KSC) | S.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Konecky v Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Kramer v. DuPont, USA* | 17L2 | Ill. Cir. Ct. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.* | CGC-15-547520 | Cal. Super. Ct. |
| *Linderman v. City of Los Angeles* | BC650785 | Cal. Super. Ct. |
| *Lindsay v. Cutter Wireline Serv., Inc.* | 7-cv-01445 (PAB) (KLM) | D. Colo. |
| *Linneman v. Vita-Mix Corp.* | 15-cv-748 | S.D. Ohio |
| *Lion Biotechnologies Sec. Litig.* | 17-cv-02086-SI | N.D. Cal. |
| *Liotta v. Wolford Boutiques, LLC* | 16-cv-4634 | N.D. Ga. |
| *Lippert v. Baldwin* | 10-cv-4603 | N.D. Ill. |
| *Lloyd v. CVB Fin. Corp.* | 10-cv-6256 (CAS) | C.D. Cal. |
| *Loblaw Card Program* | Remediation Program | |
| *Mabrey v. Autovest* | CGC-18-566617 | Cal. Super. Ct. |
| *Machado v. Endurance Int'l Grp. Holdings Inc.* | 15-cv-11775-GAO | D. Mass. |
| *Malin v. Ambry Gentics Corp.* | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| *Martinez v. Rial de Minas, Inc.* | 16-cv-01947 | D. Colo. |
| *McClellan v. Chase Home Fin.* | 12-cv-01331-JGB-JEM | C.D. Cal. |
| *McClintock v. Continuum Producer Serv., LLC* | 17-cv-00259-JAG | E.D. Okla. |
| *McFarland v. Swedish Med. Ctr.* | 18-2-02948-1 SEA | Wash. Super. Ct. |
| *McGann v. Schnuck Markets Inc.* | 1322-CC00800 | Mo. Cir. Ct. |
| *McKibben v. McMahon* | 14-2171 (JGB) (SP) | C.D. Cal. |
| *McKnight Realty Co. v. Bravo Arkoma, LLC* | 17-CIV-308 (KEW) | E.D. Okla. |
| *McNeal v. AccentCare, Inc.* | 4:15cv03304 | N.D. Cal. |
| *McNeill v. Citation Oil & Gas Corp.* | 17-CIV-121 (KEW) | E.D. Okla. |
| *McWilliams v. City of Long Beach* | BC361469 | Cal. Super. Ct. |
| *Mild v. PPG Indus., Inc.* | 18-cv-04231 | C.D. Cal. |
| *Millien v. Madison Square Garden* | 17-cv-04000 | S.D.N.Y. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Milstead v. Robert Fiance Beauty Sch., Inc. | CAM-L-328-16 | N.J. Super. Ct. |
| Moeller v. Advance Magazine Publishers, Inc. | 15-cv-05671 (NRB) | S.D.N.Y. |
| Mohamed v. SkyHop Global LLC | 18-2-54565-0-KNT | Wash. Super. Ct. |
| Mojica v. Securus Techs., Inc. | 14-cv-5258 | W.D. Ark. |
| Molnar v. 1-800-Flowers Retail, Inc. | BC 382828 | Cal. Super. Ct. |
| Monteleone v. Nutro Co. | 14-cv-00801-ES-JAD | D.N.J. |
| Moodie v. Maxim HealthCare Servs. | 14-cv-03471-FMO-AS | C.D. Cal. |
| Morel v. Lions Gate Entm't Inc. | 16-cv-1407 (JFC) | S.D.N.Y. |
| Moss v. United Airlines | 16-cv-08496 | N.D. Ill. |
| Muir v. Early Warning Services, LLC | 16-cv-00521 | D.N.J. |
| Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. | 12-3824 | E.D. Pa. |
| Nasseri v. Cytosport, Inc. | BC439181 | Cal. Super. Ct. |
| Nesbitt v. Postmates, Inc. | CGC-15-547146 | Cal. Super. Ct. |
| New Orleans Tax Assessor Project | Tax Assessment Program | |
| New York v. Steven Croman | 450545/2016 | N.Y. Super. Ct. |
| NMPA Late Fee Program Groups I-IVA | Remediation Program | CRB |
| Noland-Moore v. City of Cleveland | 18-cv-2730 | N.D. Ohio |
| Nozzi v. Housing Authority of the City of Los Angeles | CV 07-0380 PA (FFMx) | C.D. Cal. |
| Nwabueza v. AT&T | C 09-01529 SI | N.D. Cal. |
| Nwauzor v. GEO Group, Inc. | 17-cv-05769 | W.D. Wash. |
| Ortega v. Borton & Sons, Inc. | 17-2-03005-39 | Wash. Super. Ct. |
| O'Donnell v. Fin. American Life Ins. Co. | 14-cv-01071 | S.D. Ohio |
| Ortez v. United Parcel Serv., Inc. | 17-cv-01202 (CMA) (SKC) | D. Colo. |
| Paggos v. Resonant, Inc. | 15-cv-01970-SJO | C.D. Cal. |
| Palazzolo v. Fiat Chrysler Auto. NV | 16-cv-12803 | E.D. Mich. |
| Palmateer v. Les Schwab | 17CV22189 | Or. Cir. Ct. |
| Parker v. Time Warner Entm't Co. | 239 F.R.D. 318 | E.D.N.Y. |
| Parker v. Universal Pictures | 16-cv-1193-CEM-DCI | M.D. Fla. |
| Parmelee v. Santander Consumer USA Holdings Inc. | 16-cv-783-K | N.D. Tex. |
| Pauley v. CF Ent. | 13-CV-08011-RGK-CW | C.D. Cal. |
| Pemberton v. Nationstar Mortgage LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Perez v. DIRECTV | 8:16-cv-01440-JLS-DFM | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Petersen v. Costco Wholesale Co.* | 13-cv-01292-DOC-JCG | C.D. Cal. |
| *Pickett v. Simos Insourcing Solutions Corp.* | 1:17-cv-01013 | N.D. Ill. |
| *Pierce v Anthem Ins. Cos.* | 15-cv-00562-TWP-TAB | S. D. Ind. |
| *Podawiltz v. Swisher Int'l, Inc.* | 16CV27621 | Or. Cir. Ct. |
| *Press v. J. Crew Group, Inc.* | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| *Purcell v. United Propane Gas, Inc.* | 14-CI-729 | Ky. 2nd Cir. |
| *Racies v. Quincy Bioscience, LLC* | 15-cv-00292 | N.D. Cal. |
| *Ralph v. Get Fresh Produce, Inc.* | 2019-CH-02324 | Ill. Cir. Ct. |
| *Ramos v. Hopele of Fort Lauderdale, LLC* | 17-cv-62100 | S.D. Fla. |
| *Reirdon v. Cimarex Energy Co.* | 16-CIV-113 (KEW) | E.D. Okla. |
| *Rhea v. Apache Corp.* | 14-cv-00433-JH | E.D. Okla. |
| *Rice v. Insync* | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| *Rice-Redding v. Nationwide Mut. Ins. Co.* | 18-cv-01203 | N.D. Ga. |
| *Rich v. EOS Fitness Brands, LLC* | RIC1508918 | Cal. Super. Ct. |
| *Rollo v. Universal Prop. & Cas. Ins.* | 2018-027720-CA-01 | Fla. Cir. Ct. |
| *Roman v. Antelope Valley Newspapers, Inc.* | BC382639 | Cal. Super. Ct. |
| *Rotatori v. TGI Fridays* | 14-0081-B | Mass. Super. Ct. |
| *Roth v. Bellevue Club* | 19-2-07780-8 | Wash. Super. Ct. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Rozeboom v. Dietz & Watson* | 17-cv-01266-RAJ | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *San Antonio Fire & Police Pension Fund v. Dole Food Co.* | 15-cv-1140 (LPS) | E.D. Del. |
| *Sanders v. Global Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sanders v The CJS Solutions Group, LLC* | 17-cv-03809 | S.D.N.Y. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schourup v. Private Label Nutraceuticals, LLC* | 2015cv01026 | C.D. Cal. |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Schwartz v. Opus Bank* | 16-cv-7991 (AB) (JPR) | C.D. Cal. |
| *SEB Inv. Mgmt. AB v. Endo Int'l PLC* | 17-cv-3711-TJS | E.D. Pa. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |
| *Solano v. Amazon Studios LLC* | 17-cv-01587 (LGS) | S.D.N.Y. |
| *Sonner v. Schwabe North America, Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Soto v. Diakon Logistics (Delaware), Inc.* | 08-cv-33-L(WMC) | S.D. Cal. |
| *Speed v. JMA Energy Co., LLC* | CJ-2016-59 | Okla. Dist. Ct. |
| *Stanley v. Capri Training Ctr.* | ESX-L-1182-16 | N.J. Super. Ct. |
| *Steele v. PayPal, Inc.* | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| *Stewart v. Early Warning Serv., LLC* | 18-cv-3277 | D.N.J. |
| *Stillman v. Clermont York Assocs. LLC* | 603557/09E | N.Y. Super. Ct. |
| *Stretch v. Montana* | DV-04-713 (A) | Mont. 11th Dist. Ct. |
| *Strickland v. Carrington Mortgage Services, LLC* | 16-cv-25237 | S.D. Fla. |
| *Strougo v. Lannett Co.* | 18-cv-3635 | E.D. Pa. |
| *Stuart v. State Farm Fire & Cas. Co.* | 14-cv-04001 | W.D. Ark. |
| *Sudunagunta v. NantKwest, Inc.* | 16-cv-01947-MWF-JEM | C.D. Cal. |
| *Sullivan v Wenner Media LLC* | 16–cv–00960–JTN–ESC | W.D. Mich. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Szafarz v. United Parcel Serv., Inc.* | SUCV2016-2094-BLS2 | Mass. Super. Ct. |
| *Terrell v. Costco Wholesale Corp.* | 16-2-19140-1-SEA | Wash. Super. Ct. |
| *Timberlake v. Fusione, Inc.* | BC 616783 | Cal. Super. Ct. |
| *Tkachyk v. Traveler's Ins.* | 16-28-m (DLC) | D. Mont. |
| *T-Mobile Remediation Program* | Remediation Program | |
| *Tolliver v. Avvo, Inc.* | 16-2-5904-0 (SEA) | Wash. Super. Ct. |
| *Townes, IV v. Trans Union, LLC* | 04-1488-JJF | D. Del. |
| *Townsend v. G2 Secure Staff* | 18STCV04429 | Cal. Super. Ct. |
| *Trepte v. Bionaire, Inc.* | BC540110 | Cal. Super. Ct. |
| *Tschosik v. Diamond Freight Sys.* | 16-2-01247-1 | Wash. Super. Ct. |
| *Tyus v. Gen. Info. Solutions LLC* | 2017CP3201389 | S.C. C.P. |
| *United States v. City of Austin* | 14-cv-00533-LY | W.D. Tex. |
| *United States v. City of Chicago* | 16-c-1969 | N.D. Ill. |
| *United States v. Consol. City of Jacksonville* | 170-17M-393 | U.S. D.O.J. |
| *United States v. Greyhound Lines, Inc.* | 16-67-RGA | D. Del. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Viesse v. Saar's Inc.* | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Walton v. AT&T Servs., Inc.* | 15-cv-3653 (VC) | N.D. Cal. |
| *Weber v. KASA Delivery LLC* | 16-2-13761-0 SEA | Wash. Super. Ct. |
| *WellCare Sec. Litig.* | 07-cv-01940-VMC-EAJ | M.D. Fla. |
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |
| *Williams v. Naples Hotel Group, LLC* | 18-cv-422-Orl-37-DCI | M.D. Fla. |
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilson v. LSB Indus., Inc.* | 15-cv-07614-RA-GWG | S.D.N.Y. |
| *Wood v. AmeriHealth Caritas Serv.* | 19-2194 | E.D. Pa. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Young v. World Wide Tech., LLC* | 2019-L-001728 | Ill. 13th Cir. Ct. |

# EXHIBIT B-1

CLAIMANT ID NUMBER:  [JND NAME NUMBER]

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

## Women who were seen for treatment by Dr. James Heaps at UCLA medical facilities may be eligible to participate in a class action settlement.

- A settlement has been reached with Regents of the University of California ("Regents") and with Dr. James M. Heaps, M.D. ("Dr. Heaps") (collectively "Defendants") in a class action lawsuit.  Plaintiffs allege in the lawsuit that Dr. Heaps assaulted, abused, and engaged in harassing and offensive behavior towards female patients while he was an obstetrician and gynecologist at UCLA medical facilities and that Regents failed to respond appropriately.

- The settlement provides a $73,000,000 fund for the benefit of female patients of Dr. Heaps who were seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010, or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.  As part of the settlement, Regents will ensure improved operating and oversight procedures for identification, prevention, and reporting of sexual conduct in the clinical setting, including: implementing a new investigation model for sexual harassment/sexual assault; improved chaperone policies; notice to patients of reporting options; training for UCLA medical facilities personnel on provider-patient boundaries and on conducting sensitive examinations; enhanced due diligence during the credentialing and recredentialing process and in connection with UCLA Health's acquisition of a physician or group practice; and appointment of a compliance monitor to facilitate, oversee, and evaluate implementation of these institutional changes.  A complete description of the changes Regents is implementing can be found on the settlement website at www.UCLAHeapsSettlement.com.

- The Defendants deny all charges of wrongdoing and liability.

- Your legal rights are affected whether or not you act.  This Notice contains information about the settlement and the lawsuit.  Please read this entire Notice carefully.

<u>CLAIMANT ID NUMBER</u>: [JND NAME NUMBER]

| YOUR LEGAL RIGHTS AND OPTIONS | | |
|---|---|---|
| | | <u>DUE DATE</u> |
| **DO NOTHING** | You have been pre-identified as a class member.  If you do nothing, you will be included in the settlement and will receive a payment of $2,500.  You will also give up your right to sue the defendants about the claims in this case. | |
| **SUBMIT A CLAIM FORM** | You can also choose to submit a Tier 2 or Tier 3 claim describing your experience as a patient of Dr. Heaps.  Depending on the information you provide and whether you are willing to be interviewed, you could receive up to $250,000 (or more in exceptional circumstances), subject to *pro rata* adjustment up or down.<br><br>For more information about submitting a Tier 2 or 3 claim, and your choices, see the answers to questions 8-10 below.  If you submit a claim you give up your rights to sue the Defendants about the claims in this case. | Month Day, 20__ |
| **EXCLUDE YOURSELF** | You will not be included in the settlement.  You will receive no benefits and you will keep any rights you currently have to sue the Defendants about the claims in the case. | Month Day, 20__ |
| **OBJECT** | If you do not exclude yourself, and if you disagree with the settlement, you can write to the Court to explain your objection. | Month Day, 20__ |
| **GO TO A HEARING** | Ask to speak in court about the fairness of the settlement. | Month Day, 20__ at XX:XX a.m./p.m. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still must decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement and after any appeals are resolved.

- For updates visit www.UCLAHeapsSettlement.com.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

CLAIMANT ID NUMBER: [JND NAME NUMBER]

# WHAT THIS CLASS NOTICE CONTAINS

BASIC INFORMATION.................................................................................................. 4

    1.    Why did I get this Notice? ............................................................ 4

    2.    What is this lawsuit about?............................................................ 4

    3.    Why is this a class action?............................................................ 4

    4.    Why is there a Settlement? ............................................................ 4

WHO IS IN THE SETTLEMENT? ................................................................................. 5

    5.    How do I know if I am part of the Settlement? ................................. 5

    6.    What should I do if am not sure if I am included in the Settlement?.............. 5

BENEFITS OF THE SETTLEMENT — WHAT YOU GET ................................................ 5

    7.    What does the Settlement provide?................................................. 5

    8.    How much will my payment from the Settlement be? ....................... 6

HOW YOU GET A PAYMENT ...................................................................................... 8

    9.    How can I get Settlement payment(s)? ........................................... 8

    10.    When would I get my payment(s) from the Settlement? ................... 9

    11.    What am I giving up to get payment(s) and stay in the Settlement? .............. 9

EXCLUDING YOURSELF FROM THE SETTLEMENT ..................................................... 10

    12.    How do I get out of the Settlement? .............................................. 10

    13.    If I don't exclude myself, can I sue the Defendants for the same thing later?.............. 11

    14.    If I exclude myself, can I get money from the Settlement?................. 11

THE LAWYERS REPRESENTING YOU .......................................................................... 11

    15.    Do I have a lawyer in this case? ................................................... 11

    16.    How will the lawyers be paid? ..................................................... 12

OBJECTING TO THE SETTLEMENT ............................................................................ 12

    17.    How do I tell the Court that I don't like the Settlement?................... 12

    18.    What's the difference between objecting and excluding? ................. 13

THE COURT'S FAIRNESS HEARING .......................................................................... 13

    19.    When and where will the Court decide whether to approve the Settlement? .............. 13

    20.    Do I have to come to the Fairness Hearing? ................................... 13

    21.    May I speak at the Fairness Hearing?............................................ 14

IF YOU DO NOTHING ............................................................................................... 14

    22.    What happens if I do nothing at all?.............................................. 14

GETTING MORE INFORMATION ............................................................................... 14

    23.    How do I get more information?................................................... 14

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

3

# BASIC INFORMATION

## 1.   Why did I get this Notice?

If you are a woman who was seen for treatment by Dr. James M. Heaps at (1) UCLA's student health center (now Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010; (2) UCLA Medical Center (now Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018; or (3) Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018, you have the right to know about a proposed settlement of a class action lawsuit, and your options, before the Court decides whether to approve the settlement.

This Notice is to inform you of the lawsuit, the proposed settlement and your legal rights. The women who sued are called "plaintiffs."  The doctor and university they sued are called "defendants."

## 2.   What is this lawsuit about?

During varying periods of time between January 1, 1983 and June 28, 2018, Dr. James Heaps provided obstetric and gynecological services at certain UCLA medical facilities.  Plaintiffs allege that Dr. Heaps sexually assaulted, abused and engaged in harassing and offensive behavior towards his female patients. Plaintiffs further allege that UCLA supervisors and administrators were repeatedly informed of Dr. Heaps's misconduct but failed to take the necessary measures to protect his patients.  Defendants deny plaintiffs' allegations.  The Court has not decided who is right.

## 3.   Why is this a class action?

In a class action, one or more plaintiffs called "class representatives" sue on behalf of themselves and other people with similar claims. This group of people is called the "class" and the people in the class are called "class members."  One court resolves the issues for all class members, except for those who exclude themselves from the class.

This lawsuit is *A.B. et al. v. Regents of the University of California et al.*, No. 2:20-CV-09555-RGK (C.D. Cal.). The judge is R. Gary Klausner of the United States District Court for the Central District of California.

## 4.   Why is there a Settlement?

The Court has not decided in favor of plaintiffs or defendants.  Instead, both sides have agreed  to a settlement to avoid the costs and risks of trial and appeals. The class representatives and their attorneys think the settlement is best for the class.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

4

<u>CLAIMANT ID NUMBER</u>:  [JND NAME NUMBER]

# WHO IS IN THE SETTLEMENT?

| 5.   How do I know if I am part of the Settlement? |
|---|

You are a class member, and are included in the settlement, if you are a woman who was seen for treatment by Dr. James M. Heaps: (1) at UCLA Medical Center (now Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018; (2) at UCLA's student health center (now Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010; or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

You have already been pre-identified (via UCLA's records) as a class member, and your Claimant ID Number is on the upper left hand corner of each page of this Notice.

| 6.   What should I do if am not sure if I am included in the Settlement? |
|---|

If you are not sure whether you are in the class, you can ask for free help and more information by calling the Settlement Administrator at 1-888-921-0726 or sending an email to info@UCLAHeapsSettlement.com.  More details about the class, its claims and the settlement can be found in the settlement agreement and other documents available on the settlement website, www.UCLAHeapsSettlement.com.

# BENEFITS OF THE SETTLEMENT — WHAT YOU GET

| 7.   What does the Settlement provide? |
|---|

**<u>Monetary Benefits</u>**

Defendants will pay $73,000,000 to settle the lawsuit.  This fund will be used to pay class member claims. (See the answers to questions 8-10 below.)  The fund will also be used to pay any class representative service award(s) approved by the Court.

Separate from and in addition to the $73,000,000 fund, Defendants will pay the costs of notifying class members and administering the settlement, including compensating the members of a three-person panel, comprised of a court-appointed special master, a forensic psychologist/psychiatrist, and an OB/GYN, who will decide how much individual class members receive.  Defendants will also pay attorneys' fees and expenses of counsel for the plaintiffs.  Settlement benefits will not be reduced to pay attorneys' fees.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

5

CLAIMANT ID NUMBER: [JND NAME NUMBER]

**Institutional Changes at UCLA**

In addition to monetary benefits, the settlement requires the Regents to ensure that UCLA medical personnel act consistently with standards recognized by applicable health oversight agencies such as the Medical Board of California and specialty societies such as the American College of Obstetricians and Gynecologists. The Regents will adopt and implement written operating and oversight procedures for identification, prevention, and reporting of sexual conduct at UCLA medical facilities, including:

- implementing a new model for investigating alleged sexual harassment, including alleged sexual assault arising in the patient care context;

- updated chaperone policies that, among other things, require annual chaperone training allow chaperones to report through central health system administration and not the physicians whose exams and procedures they chaperone;

- requiring that (i) every physician credentialed or otherwise permitted to practice by UCLA medical facilities will complete a boundaries training course; and (ii) every physician credentialed or otherwise permitted to perform sensitive examinations will complete a training course reflecting best practices for such examinations;

- improving notice to patients of how to report sexual misconduct in the clinical setting.

- enhancing due diligence during the credentialing and recredentialing process and in connection with UCLA Health's acquisition of a physician or group practice, aimed at protecting patient safety; and

- appointing the Senior Vice President for Ethics, Compliance and Audit Services in the University of California Office of the President, as "Compliance Monitor" to facilitate, oversee, and independently evaluate implementation of the institutional changes at UCLA required under the settlement.

More details about these institutional changes can be found at www.UCLAHeapsSettlement.com.

| 8.  How much will my payment from the Settlement be? |
| --- |

How much you get from the settlement will depend on whether you file a claim and, if you do, what type of claim you file. The details of the claim options are as follows:

**Tier 1 Award:** Every settlement class member is eligible for a Tier 1 Award payment of $2,500, and possibly more.

(i) Settlement class members who could be pre-identified through UCLA's records were assigned a unique claimant identifier. If you received a notice with a Claimant ID Number on the upper left-hand corner of each page, your membership in the class is established. UCLA's records cover the period from 2006 to June 28, 2018 at UCLA Medical Center; July 22, 2004 to January 21, 2010 at UCLA's student health center; and February 1, 2014 to June 28, 2018 at Dr. Heaps's medical offices at 100 UCLA Medical Plaza.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

6

**CLAIMANT ID NUMBER:  [JND NAME NUMBER]**

(ii)    If you have not been pre-identified as a class member, you must submit a Statement of Class Membership attesting to facts showing that you are a member of the class.  You can find and submit this statement on the settlement website, www.UCLAHeapsSettlement.com.

(iii)   Each settlement class member who can be identified through UCLA's records, or who submits a valid Statement of Class Membership, will be mailed a Tier 1 check.  This Tier 1 payment will be mailed even if you also submit a Tier 2 or Tier 3 Claim Form.

(iv)    A settlement class member who accepts a Tier 1 Award remains eligible to make a Tier 2 or Tier 3 Claim, as described below.  The Tier 1 Award shall be counted against any further awards, but under no circumstances will a settlement class member be required to return a Tier 1 Award.

**Tier 2 Claim:** Each settlement class member can also choose to submit an online or written Tier 2 Claim Form describing your experience with Dr. Heaps, the impact on you, and/or the emotional distress and/or bodily injury you suffered.  **Submitting a Tier 2 Claim is optional and if you qualify as a settlement class member, you will be sent the Tier 1 Award even if you do not submit a Tier 2 Claim.**

Each Tier 2 Claim will be reviewed by an impartial three-person panel that includes a court-appointed special master, a forensic psychologist/psychiatrist, and an OB/GYN.

If you submit a Tier 2 Claim, the panel may ask you additional questions, to be answered in writing. If that happens, you may decline to answer, although doing so could affect your eligibility for a Tier 2 Award.

If the panel determines that the Tier 2 Claim is credible, and that the conduct by Dr. Heaps fell outside the scope of accepted medical standards of care applicable during the relevant time, or is otherwise actionable, you will be awarded an additional payment of $10,000 (for a total Tier 2 Award payment of $12,500), subject to *pro rata* adjustment up or down as detailed below.  If the panel determines you are not entitled to a Tier 2 Award, you will still receive the Tier 1 Award.

**Tier 3 Claim:** Tier 3 Claims are for settlement class members who wish to provide further evidence—beyond the Claim Form and any written follow-up answers—of conduct or statement(s) by Dr. Heaps and their impact.  In addition to a Claim Form describing your experience, the impact on you, and/or the emotional distress and/or bodily injury you suffered, you may submit additional evidence of impact or damages, which may include, for example, evidence of medical expenses or of previous formal or informal complaints.  You will also be interviewed by a member of the special master's team about your experience and its impact on you.  The interviewer will then provide an assessment to the panel.  The interviewer will be a neutral, trained specialist.  The purpose of the interview is to collect information about your claim—the interview is not a cross-examination.  **Submitting a Tier 3 Claim is optional and if you qualify as a settlement class member, you will be sent the Tier 1 Award even if you do not submit a Tier 3 Claim.**

Based on all information provided, the panel will determine whether each Tier 3 Claim is credible and may award you a Tier 3 Award of between $12,500 and $250,000, subject to *pro rata* adjustment up or down as detailed below.  The panel will determine Tier 3 claim eligibility and awards by assessing

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

7

**CLAIMANT ID NUMBER:** **[JND NAME NUMBER]**

whether the conduct described falls outside the scope of accepted medical standards of care applicable during the relevant time, or is otherwise actionable, and based on an assessment of the emotional distress and/or bodily injury to you.

In addition, $5,000,000 of the settlement fund will be set aside for Supplemental Awards to Tier 3 claimants.  Based on the panel's consideration of the evidence submitted by a Tier 3 claimant (including the Claim Form, interview conducted by a member of the special master's team, and any other evidence provided), the panel's assessment of the claimant's emotional distress and/or bodily injury, the panel's assessment of the claimant's credibility, and whether the conduct described fell outside the scope of accepted medical standards of care applicable during the relevant time or was otherwise actionable, the panel may determine in its discretion to make a Supplemental Award in extraordinary cases and when the panel determines that additional compensation is necessary to adequately compensate a claimant who is otherwise eligible to receive the maximum Tier 3 Award.  The panel may decide on a Supplemental Award of <u>any amount</u> for an individual eligible to receive a maximum Tier 3 Award, as long as the total amount of all Supplemental Awards does not exceed $5,000,000.

If the panel determines that you are not entitled to a Tier 3 Award, you will still be sent the Tier 1 Award if you are confirmed to be a settlement class member.

***Pro Rata* Adjustments.**  If the total of all Tier 1, 2 and 3 Awards is less than the settlement amount of $73,000,000, Tier 2 and Tier 3 Awards will be increased *pro rata* (by the same percentage) until the settlement amount is reached or all Tier 2 and 3 Awards have been increased by 50%, whichever comes first. If all Tier 2 and Tier 3 Awards have been increased by 50% and the settlement fund is not exhausted, the balance will be distributed equally among all settlement class members, unless doing so would result in distributions of less than $100 per claimant, in which case the remaining balance will be applied to increase the distributions to Tier 2 and Tier 3 Claimants.

If the total payments for all Tier 1, 2 and 3 Awards exceeds the settlement amount of $73,000,000, all Tier 2 and 3 Awards will be decreased *pro rata* (by the same percentage) until the Settlement Amount is reached. Tier 1 Awards will not be reduced.

**Liens.**  The amount of money you will receive also depends on any legally enforceable liens on the claim award.  The amount paid to resolve any liens for settlement class members will be paid out of such settlement class member's claim award.

# HOW YOU GET A PAYMENT

| 9. | How can I get Settlement payment(s)? |
|---|---|

## Tier 1 Awards

You were pre-identified through UCLA's records and therefore you received this Notice that contains a Claimant ID Number on the upper left-hand corner.  You will be sent your Tier 1 payment of $2,500, subject to a *pro rata* increase, once the Court grants final approval of the settlement and certifies the

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

8

**CLAIMANT ID NUMBER:  [JND NAME NUMBER]**

settlement class and any appeals are resolved in favor of the settlement.  You need not take any further action at this time regarding your Tier 1 payment.  However, you may also choose to submit a Tier 2 or Tier 3 Claim, as discussed below.

**Tier 2 and Tier 3 Awards**

To be eligible for a Tier 2 or Tier 3 Award, you must complete and submit a Tier 2 or 3 Claim Form, including supporting evidence for a Tier 3 Claim.  The Tier 2 and Tier 3 Claim Form is available on the settlement website, www.UCLAHeapsSettlement.com, and you may also request a Claim Form by email at info@UCLAHeapsSettlement.com or by phone at 1-888-921-0726.  Claim Forms can be completed and submitted to the Settlement Administrator online through the settlement website at www.UCLAHeapsSettlement.com or mailed to UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111.  For your claim to be valid and timely, your Tier 2 and Tier 3 Claim Form **must be received by the Settlement Administrator via the settlement website (www.UCLAHeapsSettlement.com) or postmarked by mail no later than Month Day, 20___** [120 days from Notice mailing].

All claims and submissions in the settlement will be kept confidential by the Settlement Administrator, the panel, the special master, and the special master's team, and will be destroyed after the claims process is over and the settlement fund has been fully distributed.  Settlement class counsel will seek an order from the Court, called a Qualified Protective Order that will authorize disclosure of information under the Health Insurance Portability and Accountability Act ("HIPAA") for purposes of identifying and resolving any potential medical liens that may be asserted against settlement class members' claim awards.  Certain information also is required to be provided to defendants' insurers, and the insurers will keep the information strictly confidential.

## 10.   When would I get my payment(s) from the Settlement?

Payments will not be made until the Court grants final approval of the settlement and any objections or appeals are resolved in favor of the settlement.  Updates will be provided on the settlement website, www.UCLAHeapsSettlement.com, and can also be obtained by contacting the Settlement Administrator by email at info@UCLAHeapsSettlement.com or by phone toll-free at 1-888-921-0726. Please be patient.  Please do not contact the Court directly.

## 11.   What am I giving up to get payment(s) and stay in the Settlement?

In exchange for receiving payment and benefits from the settlement, you will give up your right to sue the Defendants on your own for the claims described in the settlement agreement.  You will also be bound by any decisions of the Court relating to the settlement.  If you do not wish to give up your right to sue the Defendants, you must exclude yourself from (opt out of) the settlement.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

9

CLAIMANT ID NUMBER: [JND NAME NUMBER]

In return for paying the Settlement Amount and providing non-monetary benefits, the Defendants will be released from claims relating to the conduct alleged in this lawsuit.  Defendants will not be released from claims (i) based on actions by any medical practitioner at UCLA medical facilities unrelated to matters alleged in the Litigation in connection with Dr. Heaps, or (ii) medical malpractice or negligence by Dr. Heaps unrelated to any sexual conduct or physician/patient boundary allegations against Dr. Heaps, or (iii) medical malpractice or negligence by Dr. Heaps unknown to you as of the deadline to opt out of the settlement.  The settlement agreement describes the released claims in further detail in section 2.30.  Please read that agreement carefully since those releases will be binding on you as a class member if the Court grants final approval of the settlement.  If you have any questions, you can talk with class counsel free of charge or you may talk with your own lawyer (at your own expense).  The settlement agreement and releases are available at www.UCLAHeapsSettlement.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the settlement, but you want to keep the right to sue the Defendants, then you must take steps to get out of the settlement class.  This is called asking to be excluded from or "opting out" of the settlement class.

## 12.  How do I get out of the Settlement?

To exclude yourself from the settlement, you must send a letter to the Settlement Administrator stating that you wish to be excluded.  Your written exclusion request must include the following:

- Your full name, address, and telephone number;

- The following statement:

    I want to be excluded from *A.B. v. Regents*, No. 2:20-CV-09555-RGK (C.D. Cal.), and understand that by excluding myself, I will not be able to get any money or benefits from the settlement.

- Your handwritten signature.

You must mail your written exclusion request, **postmarked no later than Month Day, 20___** [90 days from Notice mailing] to:

> UCLA Heaps Settlement
> c/o JND Legal Administration
> P.O. Box 91387
> Seattle, WA 98111

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

10

CLAIMANT ID NUMBER: [JND NAME NUMBER]

## 13.   If I don't exclude myself, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself from the settlement, you give up any right to sue the Defendants for the claims being released in *A.B. v. Regents*, No. 2:20-CV-09555-RGK (C.D. Cal.).  If you have a pending lawsuit against any of the Defendants, please speak to your lawyer as soon as possible; you will need to exclude yourself from this settlement to continue your own lawsuit.

## 14.   If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself from the settlement, you will not receive payment(s) from the settlement, but you will keep your legal rights to sue the Defendants.

# THE LAWYERS REPRESENTING YOU

## 15.   Do I have a lawyer in this case?

The Court has appointed the following lawyers, known as class counsel, to represent the class members in connection with the settlement:

| | |
|---|---|
| Daniel C. Girard<br>GIRARD SHARP LLP<br>601 California Street, Suite 1400<br>San Francisco, CA 94108<br>Phone: 415-981-4800<br>Email: dgirard@girardsharp.com | Amy M. Zeman<br>GIBBS LAW GROUP LLP<br>505 14th Street, Suite 1110<br>Oakland, CA 94612<br>Phone: 510-350-9700<br>Email: amz@classlawgroup.com |
| Elizabeth A. Kramer<br>ERICKSON KRAMER OSBORNE LLP<br>182 Howard Street<br>San Francisco, CA 94105<br>Phone: 415-635-0631<br>Email: elizabeth@eko.law | |

You will not be charged for contacting these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

11

CLAIMANT ID NUMBER: [JND NAME NUMBER]

## 16.  How will the lawyers be paid?

Class counsel will ask the Court for payment of attorneys' fees and incurred expenses up to $8,760,000 to compensate them for their services in this litigation.  Any payment to the attorneys will be subject to Court approval, and the Court may award less than the amount requested.  Any attorneys' fees and expenses that the Court approves will not come out of the Settlement Amount, but will be paid separately by the Defendants.

Class Counsel will file a motion for attorney's fees and expenses after the claims process is complete and awards have been made to all claimants.  The claims process may take six months or more after the settlement becomes effective.  When class counsel's motion for attorneys' fees and expenses is filed, it will be posted at www.UCLAHeapsSettlement.com.  You have the right to comment in support of or in opposition (object) to the fee request.

# OBJECTING TO THE SETTLEMENT

## 17.  How do I tell the Court that I don't like the Settlement?

If you are a settlement class member and you have objections to any aspect of the settlement, you may express your views to the Court.  You can object to the settlement only if you do not exclude yourself from the settlement class.

You can ask the Court to deny approval by filing an objection.  You can't ask the Court to order a larger settlement—the Court can only approve or deny approval of the settlement the parties have reached.  If the Court denies approval of the settlement, no payments from the settlement fund will be made and the litigation will continue.  If that is what you want to happen, you must object.

If you wish to object to the settlement, you must do so in writing.  You may also appear at the fairness hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must: (a) list your name, address, and telephone number; (b) clearly identify the case name and number (*A.B. v. Regents*, No. 2:20-CV-09555-RGK (C.D. Cal.)); (c) state whether the objection applies only to the objector, to a specific subset of the class, or to the entire class and state with specificity the grounds for the objection; (d) state whether the objecting class member intends to personally appear and/or testify at the fairness hearing; (e) include the name and contact information of any and all attorneys representing, advising, or assisting the objecting class member; (f) state whether any attorney will appear on the objecting class member's behalf at the fairness hearing, and if so, the identity of that attorney; (g) be submitted to the Court by mailing to the Clerk, United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, or by filing in person at any location of the United States District Court for the Central District of California; and (h) be **filed or postmarked on or before Month Day, 20___** [90 days from Notice mailing].

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

12

CLAIMANT ID NUMBER: [JND NAME NUMBER]

You can also submit a statement in support of the settlement by writing to the Court at the address above.

| 18. What's the difference between objecting and excluding? |
| --- |

By excluding yourself from the settlement, you are telling the Court that you do not want to participate in the settlement. For that reason, you will not be eligible to receive any benefits from the settlement and you will not be able to object to it, as it will no longer apply to you or bind you.

By objecting to the settlement, you are telling the Court that you want to participate in the settlement, but that there is something about it you do not like. If you object, you are still eligible to receive payment (s) from the settlement.

# THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement. You may attend the hearing, and you may ask to speak, but you are not required to do so.

| 19. When and where will the Court decide whether to approve the Settlement? |
| --- |

The Court will hold its fairness hearing on Month Day, _____ at XX:XX a.m. at the United States District Court, Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012.

The hearing may be moved to a different date or time without additional direct notice to you. You can check the Court's PACER site, http://cand.uscourts.gov/cm-ecf, check the settlement website, www.UCLAHeapsSettlement.com, or call (1-888-921-0726) or email the Settlement Administrator (info@UCLAHeapsSettlement.com) to confirm the date of the hearing.

At the fairness hearing, the Court will consider whether the proposed settlement is fair, reasonable, and adequate. If there are objections or comments, the Court will consider them at that time and may listen to people who have asked to speak at the hearing. The Court will decide whether to approve the settlement at or after the hearing.

| 20. Do I have to come to the Fairness Hearing? |
| --- |

No. Class counsel will answer any questions the Court may have at the fairness hearing, but you may attend at your own expense. If you send an objection or comment in support of the settlement you do not have to come to the hearing to talk about it. As long as you filed or mailed your written objection on time, the Court will consider it. You may also hire your own lawyer at your own expense to attend the hearing on your behalf, but you are not required to do so.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

13

CLAIMANT ID NUMBER:  [JND NAME NUMBER]

| 21.   May I speak at the Fairness Hearing? |
|---|

If you send an objection or comment on the settlement, you may be able to speak at the fairness hearing, subject to the Court's discretion.  You cannot speak at the fairness hearing if you exclude yourself from the settlement.

# IF YOU DO NOTHING

| 22.   What happens if I do nothing at all? |
|---|

If you do nothing and the settlement is finally approved, you will receive a Tier 1 Award payment from the settlement if UCLA's records show you are a class member, and you will be bound by the Court's final judgment and the release of claims detailed in the settlement agreement.

# GETTING MORE INFORMATION

| 23.  How do I get more information? |
|---|

This Notice summarizes the settlement and your rights and options.  More details are contained in the settlement agreement.  You can get copies of the settlement agreement and more information about the settlement on the settlement website, www.UCLAHeapsSettlement.com. You also may also contact the Settlement Administrator by email at info@UCLAHeapsSettlement.com, by phone toll-free at 1-888-921-0726, or by mail at UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111.

For a more detailed statement of the matters involved in the litigation and the settlement, you may review the various documents on the settlement website, www.UCLAHeapsSettlement.com, and/or by visiting (during business hours) the clerk's office at the United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, File: *A.B. v. Regents*, No. 2:20-CV-09555-RGK, or by accessing the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE CLAIM PROCESS.**

Dated: Month Day, Year                                    By Order of the Court
                                                          United States District Court
                                                          Central District of California

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

**CLAIMANT ID NUMBER:  [JND NAME NUMBER]**

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

15

# **EXHIBIT B-2**

<u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

<u>**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**</u>

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

## Women who were seen for treatment by Dr. James Heaps at UCLA medical facilities may be eligible to participate in a class action settlement.

- A settlement has been reached with Regents of the University of California ("Regents") and with Dr. James M. Heaps, M.D. ("Dr. Heaps") (collectively "Defendants") in a class action lawsuit. Plaintiffs allege in the lawsuit that Dr. Heaps assaulted, abused, and engaged in harassing and offensive behavior towards female patients while he was an obstetrician and gynecologist at UCLA medical facilities and that Regents failed to respond appropriately.

- The settlement provides a $73,000,000 fund for the benefit of female patients of Dr. Heaps who were seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010, or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018. As part of the settlement, Regents will ensure improved operating and oversight procedures for identification, prevention, and reporting of sexual conduct in the clinical setting, including: implementing a new investigation model for sexual harassment/sexual assault; improved chaperone policies; notice to patients of reporting options; training for UCLA medical facilities personnel on provider-patient boundaries and on conducting sensitive examinations; enhanced due diligence during the credentialing and recredentialing process and in connection with UCLA Health's acquisition of a physician or group practice; and appointment of a compliance monitor to facilitate, oversee, and evaluate implementation of these institutional changes. A complete description of the changes Regents is implementing can be found on the settlement website at www.UCLAHeapsSettlement.com.

- The Defendants deny all charges of wrongdoing and liability.

- Your legal rights are affected whether or not you act. This Notice contains information about the settlement and the lawsuit. Please read this entire Notice carefully.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

1

| YOUR LEGAL RIGHTS AND OPTIONS | | |
|---|---|---|
| | | **DUE DATE** |
| **DO NOTHING** | If you are a class member and do nothing you will get no payment and give up the right to sue the defendants about the claims in this case. | |
| **SUBMIT A CLAIM FORM** | If you are a class member and didn't receive a Notice by mail or email with a Claimant ID Number on the upper left-hand corner, you can only get a payment if you submit a Statement of Class Membership (available at www.UCLAHeapsSettlement.com).  All Statements of Class Membership will be subject to verification.<br><br>You can also choose to submit a Tier 2 or Tier 3 claim describing your experience as a patient of Dr. Heaps. Depending on the information you provide and whether you are willing to be interviewed, you could receive up to $250,000 (or more in exceptional circumstances), subject to *pro rata* adjustment up or down.<br><br>For more information about submitting a Tier 2 or 3 claim, and your choices, see the answers to questions 8-10 below.<br><br>If you submit a claim you give up your rights to sue the defendants about the claims in this case. | Month Day, 20__ |
| **EXCLUDE YOURSELF** | You will not be included in the settlement.  You will receive no benefits and you will keep any rights you currently have to sue the Defendants about the claims in the case. | Month Day, 20__ |
| **OBJECT** | If you do not exclude yourself, and if you disagree with the settlement, you can write to the Court to explain your objection. | Month Day, 20__ |
| **GO TO A HEARING** | Ask to speak in court about the fairness of the settlement. | Month Day, 20__ at XX:XX a.m./p.m. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still must decide whether to approve the Settlement.  Payments will be made if the Court approves the Settlement after any appeals are resolved.

- For updates visit www.UCLAHeapsSettlement.com.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

2

# WHAT THIS CLASS NOTICE CONTAINS

BASIC INFORMATION ........................................................................................................ 4

   1.    Why did I get this Notice? ................................................................................ 4

   2.    What is this lawsuit about? ................................................................................ 4

   3.    Why is this a class action? ................................................................................ 4

   4.    Why is there a Settlement? .............................................................................. 4

WHO IS IN THE SETTLEMENT? ...................................................................................... 5

   5.    How do I know if I am part of the Settlement? .............................................. 5

   6.    What should I do if am not sure if I am included in the Settlement? ............. 5

BENEFITS OF THE SETTLEMENT — WHAT YOU GET ............................................... 5

   7.    What does the Settlement provide? .................................................................. 5

   8.    How much will my payment from the Settlement be? .................................... 6

HOW YOU GET A PAYMENT ............................................................................................ 8

   9.    How can I get Settlement payment(s)? ............................................................ 8

   10.   When would I get my payment(s) from the Settlement? ................................. 9

   11.   What am I giving up to get payment(s) and stay in the Settlement? ............. 10

EXCLUDING YOURSELF FROM THE SETTLEMENT .................................................. 10

   12.   How do I get out of the Settlement? .............................................................. 10

   13.   If I don't exclude myself, can I sue the Defendants for the same thing later? ......... 11

   14.   If I exclude myself, can I get money from the Settlement? .......................... 11

THE LAWYERS REPRESENTING YOU ........................................................................... 11

   15.   Do I have a lawyer in this case? .................................................................... 11

   16.   How will the lawyers be paid? ....................................................................... 12

OBJECTING TO THE SETTLEMENT ............................................................................... 12

   17.   How do I tell the Court that I don't like the Settlement? ............................... 12

   18.   What's the difference between objecting and excluding? .............................. 13

THE COURT'S FAIRNESS HEARING ............................................................................... 13

   19.   When and where will the Court decide whether to approve the Settlement? ............. 13

   20.   Do I have to come to the Fairness Hearing? .................................................. 13

   21.   May I speak at the Fairness Hearing? ............................................................ 14

IF YOU DO NOTHING ........................................................................................................ 14

   22.   What happens if I do nothing at all? .............................................................. 14

GETTING MORE INFORMATION ..................................................................................... 14

   23.   How do I get more information? ..................................................................... 14

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

3

# BASIC INFORMATION

## 1.   Why did I get this Notice?

If you are a woman who was seen for treatment by Dr. James M. Heaps at (1) UCLA's student health center (now Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010; (2) UCLA Medical Center (now Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018; or (3) Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018, you have the right to know about a proposed settlement of a class action lawsuit, and your options, before the Court decides whether to approve the settlement.

This Notice is to inform you of the lawsuit, the proposed settlement and your legal rights. The women who sued are called "plaintiffs." The doctor and university they sued are called "defendants."

## 2.   What is this lawsuit about?

During varying periods of time between January 1, 1983 and June 28, 2018, Dr. James Heaps provided obstetric and gynecological services at certain UCLA medical facilities. Plaintiffs allege that Dr. Heaps sexually assaulted, abused and engaged in harassing and offensive behavior towards his female patients. Plaintiffs further allege that UCLA supervisors and administrators were repeatedly informed of Dr. Heaps's misconduct but failed to take the necessary measures to protect his patients. Defendants deny plaintiffs' allegations. The Court has not decided who is right.

## 3.   Why is this a class action?

In a class action, one or more plaintiffs called "class representatives" sue on behalf of themselves and other people with similar claims. This group of people is called the "class" and the people in the class are called "class members." One court resolves the issues for all class members, except for those who exclude themselves from the class.

This lawsuit is *A.B. et al. v. Regents of the University of California et al.*, No. 2:20-CV-09555-RGK (C.D. Cal.). The judge is R. Gary Klausner of the United States District Court for the Central District of California.

## 4.   Why is there a Settlement?

The Court has not decided in favor of plaintiffs or defendants. Instead, both sides have agreed to a settlement to avoid the costs and risks of trial and appeals. The class representatives and their attorneys think the settlement is best for the class.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

4

# WHO IS IN THE SETTLEMENT?

| 5. How do I know if I am part of the Settlement? |
| --- |

You are a class member, and are included in the settlement, if you are a woman who was seen for treatment by Dr. James M. Heaps: (1) at UCLA Medical Center (now Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018; (2) at UCLA's student health center (now Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010; or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

| 6. What should I do if am not sure if I am included in the Settlement? |
| --- |

If you are not sure whether you are in the class, you can ask for free help and more information by calling the Settlement Administrator at 1-888-921-0726 or sending an email to info@UCLAHeapsSettlement.com. More details about the class, its claims and the settlement can be found in the settlement agreement and other documents available on the settlement website, www.UCLAHeapsSettlement.com.

# BENEFITS OF THE SETTLEMENT — WHAT YOU GET

| 7. What does the Settlement provide? |
| --- |

**Monetary Benefits**

Defendants will pay $73,000,000 to settle the lawsuit. This fund will be used to pay class member claims. (See the answers to questions 8-10 below.) The fund will also be used to pay any class representative service award(s) approved by the Court.

Separate from and in addition to the $73,000,000 fund, Defendants will pay the costs of notifying class members and administering the settlement, including compensating the members of a three-person panel, comprised of a court-appointed special master, a forensic psychologist/psychiatrist, and an OB/GYN, who will decide how much individual class members receive. Defendants will also pay attorneys' fees and expenses of counsel for the plaintiffs. Settlement benefits will not be reduced to pay attorneys' fees.

**Institutional Changes at UCLA**

In addition to monetary benefits, the settlement requires the Regents to ensure that UCLA medical personnel act consistently with standards recognized by applicable health oversight agencies such as the Medical Board of California and specialty societies such as the American College of Obstetricians and Gynecologists. The Regents will adopt and implement written operating and oversight procedures for identification, prevention, and reporting of sexual conduct at UCLA medical facilities, including:

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

5

- implementing a new model for investigating alleged sexual harassment, including alleged sexual assault arising in the patient care context;

- updated chaperone policies that, among other things, require annual chaperone training allow chaperones to report through central health system administration and not the physicians whose exams and procedures they chaperone;

- requiring that (i) every physician credentialed or otherwise permitted to practice by UCLA medical facilities will complete a boundaries training course; and (ii) every physician credentialed or otherwise permitted to perform sensitive examinations will complete a training course reflecting best practices for such examinations;

- improving notice to patients of how to report sexual misconduct in the clinical setting.

- enhancing due diligence during the credentialing and recredentialing process and in connection with UCLA Health's acquisition of a physician or group practice, aimed at protecting patient safety; and

- appointing the Senior Vice President for Ethics, Compliance and Audit Services in the University of California Office of the President, as "Compliance Monitor" to facilitate, oversee, and independently evaluate implementation of the institutional changes at UCLA required under the settlement.

More details about these institutional changes can be found at www.UCLAHeapsSettlement.com.

## 8.  How much will my payment from the Settlement be?

How much you get from the settlement will depend on whether you file a claim and, if you do, what type of claim you file.  The details of the claim options are as follows:

**Tier 1 Award:** Every settlement class member is eligible for a Tier 1 Award payment of $2,500, and possibly more.

(i)     Settlement class members who could be pre-identified through UCLA's records were assigned a unique Claimant ID Number.  If you received a Notice with a Claimant ID Number on the upper left-hand corner of each page, your membership in the class is established. UCLA's records cover the period from 2006 to June 28, 2018 at UCLA Medical Center; July 22, 2004 to January 21, 2010 at UCLA's student health center; and February 1, 2014 to June 28, 2018 at Dr. Heaps's medical offices at 100 UCLA Medical Plaza.

(ii)    If you have not been pre-identified as a class member, you must submit a Statement of Class Membership attesting to facts showing that you are a member of the class.  You can find and submit this statement on the settlement website, www.UCLAHeapsSettlement.com.

(iii)   Each settlement class member who can be identified through UCLA's records, or who submits a valid Statement of Class Membership, will be mailed a Tier 1 check.  This Tier 1 payment will be mailed even if you also submit a Tier 2 or Tier 3 Claim Form.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

6

(iv)     A settlement class member who accepts a Tier 1 Award remains eligible to make a Tier 2 or Tier 3 Claim, as described below.  The Tier 1 Award shall be counted against any further awards, but under no circumstances will a settlement class member be required to return a Tier 1 Award.

**Tier 2 Claim:**  Each settlement class member can also choose to submit an online or written Tier 2 Claim Form describing your experience with Dr. Heaps, the impact on you, and/or the emotional distress and/or bodily injury you suffered.  **Submitting a Tier 2 Claim is optional and if you qualify as a settlement class member, you will be sent the Tier 1 Award even if you do not submit a Tier 2 Claim.**

Each Tier 2 Claim will be reviewed by an impartial three-person panel that includes a court-appointed special master, a forensic psychologist/psychiatrist, and an OB/GYN.

If you submit a Tier 2 Claim, the panel may ask you additional questions, to be answered in writing. If that happens, you may decline to answer, although doing so could affect your eligibility for a Tier 2 Award.

If the panel determines that the Tier 2 Claim is credible, and that the conduct by Dr. Heaps fell outside the scope of accepted medical standards of care applicable during the relevant time, or is otherwise actionable, you will be awarded an additional payment of $10,000 (for a total Tier 2 Award payment of $12,500), subject to *pro rata* adjustment up or down as detailed below.  If the panel determines you are not entitled to a Tier 2 Award, you will still receive the Tier 1 Award.

**Tier 3 Claim:**  Tier 3 Claims are for settlement class members who wish to provide further evidence—beyond the Tier 3 Claim and any written follow-up answers—of conduct or statement(s) by Dr. Heaps and their impact.  In addition to a Tier 3 Claim Form describing your experience, the impact on you, and/or the emotional distress and/or bodily injury you suffered, you may submit additional evidence of impact or damages, which may include, for example, evidence of medical expenses or of previous formal or informal complaints.  You will also be interviewed by a member of the special master's team about your experience and its impact on you.  The interviewer will then provide an assessment to the panel. The interviewer will be a neutral, trained specialist.  The purpose of the interview is to collect information about your claim—the interview is not a cross-examination.  **Submitting a Tier 3 Claim is optional and if you qualify as a settlement class member, you will be sent the Tier 1 Award even if you do not submit a Tier 3 Claim.**

Based on all information provided, the panel will determine whether each Tier 3 Claim is credible and may award you a Tier 3 Award between $12,500 and $250,000, subject to *pro rata* adjustment up or down as detailed below.  The panel will determine Tier 3 claim eligibility and awards by assessing whether the conduct described falls outside the scope of accepted medical standards of care applicable during the relevant time, or is otherwise actionable, and based on an assessment of the emotional distress and/or bodily injury to you.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

7

In addition, $5,000,000 of the settlement fund will be set aside for Supplemental Awards to Tier 3 claimants. Based on the panel's consideration of the evidence submitted by a Tier 3 claimant (including the Tier 3 Claim Form, interview conducted by a member of the special master's team, and any other evidence provided), the panel's assessment of the claimant's emotional distress and/or bodily injury, the panel's assessment of the claimant's credibility, and whether the conduct described fell outside the scope of accepted medical standards of care applicable during the relevant time or was otherwise actionable, the panel may determine in its discretion to make a Supplemental Award in extraordinary cases and when the panel determines that additional compensation is necessary to adequately compensate a claimant who is otherwise eligible to receive the maximum Tier 3 Award. The panel may decide on a Supplemental Award of <u>any amount</u> for an individual eligible to receive a maximum Tier 3 Award, as long as the total amount of all Supplemental Awards does not exceed $5,000,000.

If the panel determines that you are not entitled to a Tier 3 Award, you will still be sent the Tier 1 Award if you are confirmed to be a settlement class member.

***Pro Rata*** **Adjustments.** If the total of all Tier 1, 2 and 3 Awards is less than the settlement amount of $73,000,000, Tier 2 and Tier 3 Awards will be increased *pro rata* (by the same percentage) until the settlement amount is reached or all Tier 2 and 3 Awards have been increased by 50%, whichever comes first. If all Tier 2 and Tier 3 Awards have been increased by 50% and the settlement fund is not exhausted, the balance will be distributed equally among all settlement class members, unless doing so would result in distributions of less than $100 per claimant, in which case the remaining balance will be applied to increase the distributions to Tier 2 and Tier 3 Claimants.

If the total payments for all Tier 1, 2 and 3 Awards exceeds the settlement amount of $73,000,000, all Tier 2 and 3 Awards will be decreased *pro rata* (by the same percentage) until the Settlement Amount is reached. Tier 1 Awards will not be reduced.

**Liens.** The amount of money you will receive also depends on any legally enforceable liens on the claim award. The amount paid to resolve any liens for settlement class members will be paid out of such settlement class member's claim award.

# HOW YOU GET A PAYMENT

| 9.    How can I get Settlement payment(s)? |

## <u>Tier 1 Awards</u>

If you are a class member and you didn't receive a Notice by mail or email with a Claimant ID Number on the upper left-hand corner, to receive a Tier 1 Award you must submit a Statement of Class Membership attesting to facts demonstrating you are a member of the class. All Statements of Class Membership will be subject to verification. You can find the Statement of Class Membership on the settlement website, www.UCLAHeapsSettlement.com. You may also request the Statement of Class Membership by email at info@UCLAHeapsSettlement.com or by phone at 1-888-921-0726. You can also submit a Statement of Class Membership on the settlement website, or you can mail it to:

UCLA Heaps Settlement
c/o JND Legal Administration
P.O. Box 91386
Seattle, WA 98111

Each settlement class member who can be identified through UCLA's records, or who submits a valid Statement of Class Membership, will be mailed a Tier 1 Award.

**Tier 2 and Tier 3 Awards**

To be eligible for a Tier 2 or Tier 3 Award, you must complete and submit a Tier 2 and Tier 3 Claim Form, including supporting evidence for a Tier 3 Claim. The Tier 2 and Tier 3 Claim Form is available on the settlement website, www.UCLAHeapsSettlement.com, and you may also request a Tier 2 and Tier 3 Claim Form by email at info@UCLAHeapsSettlement.com or by phone at 1-888-921-0726. Claim Forms can be completed and submitted to the Settlement Administrator online through the settlement website at www.UCLAHeapsSettlement.com or mailed to UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111. For your claim to be valid and timely, your Tier 2 and Tier 3 Claim Form **must be received by the Settlement Administrator via the settlement website (www.UCLAHeapsSettlement.com) or postmarked by mail no later than Month Day, 20_**[120 days from Notice mailing].

All claims and submissions in the settlement will be kept confidential by the Settlement Administrator, the panel, the special master, and the special master's team, and will be destroyed after the claims process is over and the settlement fund has been fully distributed. Class counsel will seek an order from the Court, called a Qualified Protective Order that will authorize disclosure of information under the Health Insurance Portability and Accountability Act ("HIPAA") for purposes of identifying and resolving any potential medical liens that may be asserted against settlement class members' claim awards. Certain information also is required to be provided to defendants' insurers, and the insurers will keep the information strictly confidential.

## 10.  When would I get my payment(s) from the Settlement?

Payments will not be made until the Court grants final approval of the settlement and any objections or appeals are resolved in favor of the settlement. Updates will be provided on the settlement website, www.UCLAHeapsSettlement.com, and can also be obtained by contacting the Settlement Administrator by email at info@UCLAHeapsSettlement.com or by phone toll-free at 1-888-921-0726. Please be patient. Please do not contact the Court directly.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

9

## 11.   What am I giving up to get payment(s) and stay in the Settlement?

In exchange for receiving payment and benefits from the settlement, you will give up your right to sue the Defendants on your own for the claims described in the settlement agreement.  You will also be bound by any decisions of the Court relating to the settlement.  If you do not wish to give up your right to sue the Defendants, you must exclude yourself from (opt out of) the settlement.

In return for paying the Settlement Amount and providing non-monetary benefits, the Defendants will be released from claims relating to the conduct alleged in this lawsuit.  Defendants will not be released from claims (i) based on actions by any medical practitioner at UCLA medical facilities unrelated to matters alleged in the Litigation in connection with Dr. Heaps, or (ii) medical malpractice or negligence by Dr. Heaps unrelated to any sexual conduct or physician/patient boundary allegations against Dr. Heaps, or (iii) medical malpractice or negligence by Dr. Heaps unknown to you as of the deadline to opt out of the settlement.  The settlement agreement describes the released claims in further detail in section 2.30.  Please read that agreement carefully since those releases will be binding on you as a class member if the Court grants final approval of the settlement.  If you have any questions, you can talk with class counsel free of charge or you may talk with your own lawyer (at your own expense).  The settlement agreement and releases are available at www.UCLAHeapsSettlement.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the settlement, but you want to keep the right to sue the Defendants, then you must take steps to get out of the settlement class.  This is called asking to be excluded from or "opting out" of the settlement class.

## 12.   How do I get out of the Settlement?

To exclude yourself from the settlement, you must send a letter to the Settlement Administrator stating that you wish to be excluded.  Your written exclusion request must include the following:

- Your full name, address, and telephone number;

- The following statement:

  I want to be excluded from *A.B. v. Regents*, No. 2:20-CV-09555-RGK (C.D. Cal.), and understand that by excluding myself, I will not be able to get any money or benefits from the settlement.

- Your handwritten signature.

You must mail your written exclusion request, **postmarked no later than Month Day, 20___** [90 days from Notice mailing] to:

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

10

UCLA Heaps Settlement
c/o JND Legal Administration
P.O. Box 91387
Seattle, WA 98111

## 13.   If I don't exclude myself, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself from the settlement, you give up any right to sue the Defendants for the claims being released in *A.B. v. Regents*, No. 2:20-CV-09555-RGK (C.D. Cal.).  If you have a pending lawsuit against any of the Defendants, please speak to your lawyer as soon as possible; you will need to exclude yourself from this settlement to continue your own lawsuit.

## 14.   If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself from the settlement, you will not receive payment(s) from the settlement, but you will keep your legal rights to sue the Defendants.

# THE LAWYERS REPRESENTING YOU

## 15.   Do I have a lawyer in this case?

The Court has appointed the following lawyers, known as class counsel, to represent the class members in connection with the settlement:

| | |
|---|---|
| Daniel C. Girard<br>GIRARD SHARP LLP<br>601 California Street, Suite 1400<br>San Francisco, CA 94108<br>Phone: 415-981-4800<br>Email: dgirard@girardsharp.com | Amy M. Zeman<br>GIBBS LAW GROUP LLP<br>505 14th Street, Suite 1110<br>Oakland, CA 94612<br>Phone: 510-350-9700<br>Email: amz@classlawgroup.com |
| Elizabeth A. Kramer<br>ERICKSON KRAMER OSBORNE LLP<br>182 Howard Street<br>San Francisco, CA 94105<br>Phone: 415-635-0631<br>Email: elizabeth@eko.law | |

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

11

You will not be charged for contacting these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 16.   How will the lawyers be paid? |
| --- |

Class counsel will ask the Court for payment of attorneys' fees and incurred expenses up to $8,760,000 to compensate them for their services in this litigation.  Any payment to the attorneys will be subject to Court approval, and the Court may award less than the amount requested.  Any attorneys' fees and expenses that the Court approves will not come out of the Settlement Amount, but will be paid separately by the Defendants.

Class Counsel will file a motion for attorney's fees and expenses after the claims process is complete and awards have been made to all claimants.  The claims process may take six months or more after the settlement becomes effective.  When class counsel's motion for attorneys' fees and expenses is filed, it will be posted at www.UCLAHeapsSettlement.com.  You have the right to comment in support of or in opposition (object) to the fee request.

# OBJECTING TO THE SETTLEMENT

| 17.   How do I tell the Court that I don't like the Settlement? |
| --- |

If you are a settlement class member and you have objections to any aspect of the settlement, you may express your views to the Court.  You can object to the settlement only if you do not exclude yourself from the settlement class.

You can ask the Court to deny approval by filing an objection.  You can't ask the Court to order a larger settlement—the Court can only approve or deny approval of the settlement the parties have reached.  If the Court denies approval of the settlement, no payments from the settlement fund will be made and the litigation will continue.  If that is what you want to happen, you must object.

If you wish to object to the settlement, you must do so in writing.  You may also appear at the fairness hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must: (a) list your name, address, and telephone number; (b) clearly identify the case name and number (*A.B. v. Regents*, No. 2:20-CV-09555-RGK (C.D. Cal.)); (c) state whether the objection applies only to the objector, to a specific subset of the class, or to the entire class and state with specificity the grounds for the objection; (d) state whether the objecting class member intends to personally appear and/or testify at the fairness hearing; (e) include the name and contact information of any and all attorneys representing, advising, or assisting the objecting class member; (f) state whether any attorney will appear on the objecting class member's behalf at the fairness hearing, and if so, the identity of that attorney; (g) be submitted to the Court by mailing to the Clerk, United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, or by filing in person at any location of the United States District Court for the Central District of California; and (h) be **filed or postmarked on or before Month Day, 20___** [90 days from Notice mailing].

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

12

You can also submit a statement in support of the settlement by writing to the Court at the address above.

### 18.  What's the difference between objecting and excluding?

By excluding yourself from the settlement, you are telling the Court that you do not want to participate in the settlement.  For that reason, you will not be eligible to receive any benefits from the settlement and you will not be able to object to it, as it will no longer apply to you or bind you.

By objecting to the settlement, you are telling the Court that you want to participate in the settlement, but that there is something about it you do not like. If you object, you are still eligible to receive payment (s) from the settlement.

# THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement.  You may attend the hearing, and you may ask to speak, but you are not required to do so.

### 19.   When and where will the Court decide whether to approve the Settlement?

The Court will hold its fairness hearing on Month Day, _____ at XX:XX a.m. at the United States District Court, Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012.

The hearing may be moved to a different date or time without additional direct notice to you.  You can check the Court's PACER site, http://cand.uscourts.gov/cm-ecf, check the settlement website, www.UCLAHeapsSettlement.com, or call (1-888-921-0726) or email the Settlement Administrator (info@UCLAHeapsSettlement.com) to confirm the date of the hearing.

At the fairness hearing, the Court will consider whether the proposed settlement is fair, reasonable, and adequate.  If there are objections or comments, the Court will consider them at that time and may listen to people who have asked to speak at the hearing.  The Court will decide whether to approve the settlement at or after the hearing.

### 20.  Do I have to come to the Fairness Hearing?

No.  Class counsel will answer any questions the Court may have at the fairness hearing, but you may attend at your own expense.  If you send an objection or comment in support of the settlement you do not have to come to the hearing to talk about it.  As long as you filed or mailed your written objection on time, the Court will consider it.  You may also hire your own lawyer at your own expense to attend the hearing on your behalf, but you are not required to do so.

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

13

## 21.  May I speak at the Fairness Hearing?

If you send an objection or comment on the settlement, you may be able to speak at the fairness hearing, subject to the Court's discretion.  You cannot speak at the fairness hearing if you exclude yourself from the settlement.

# IF YOU DO NOTHING

## 22.  What happens if I do nothing at all?

If you do nothing and the settlement is finally approved, you will receive a Tier 1 Award payment from the settlement if UCLA's records show you are a class member, and you will be bound by the Court's final judgment and the release of claims detailed in the settlement agreement.

# GETTING MORE INFORMATION

## 23.  How do I get more information?

This Notice summarizes the settlement and your rights and options.  More details are contained in the settlement agreement.  You can get copies of the settlement agreement and more information about the settlement on the settlement website, www.UCLAHeapsSettlement.com. You also may also contact the Settlement Administrator by email at info@UCLAHeapsSettlement.com, by phone toll-free at 1-888-921-0726, or by mail at UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111.

For a more detailed statement of the matters involved in the litigation and the settlement, you may review the various documents on the settlement website, www.UCLAHeapsSettlement.com, and/or by visiting (during business hours) the clerk's office at the United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, File: *A.B. v. Regents*, No. 2:20-CV-09555-RGK, or by accessing the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE CLAIM PROCESS.**

Dated: Month Day, Year                                   By Order of the Court
                                                         United States District Court
                                                         Central District of California

QUESTIONS? CALL 1-888-921-0726 TOLL FREE OR VISIT WWW.UCLAHEAPSSETTLEMENT.COM
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITE WWW.UCLAHEAPSSETTLEMENT.COM O LLAME 1-888-921-0726

14

# EXHIBIT C

**Must be received online or postmarked by mail no later than [Month Date Year]**

UCLA HEAPS SETTLEMENT
C/O JND LEGAL ADMINISTRATION
P.O. BOX 91386
SEATTLE, WA 98111
WWW.UCLAHEAPSSETTLEMENT.COM



**You may submit your Statement of Class Membership online at www.UCLAHeapsSettlement.com**

## STATEMENT OF CLASS MEMBERSHIP

## <u>INSTRUCTIONS</u>



**READ FIRST:** If you received a Settlement Notice by mail or email containing a Claimant ID Number, you do NOT need to complete this Form.

If you did not receive a Settlement Notice by mail or email containing a Claimant ID Number, you must complete this Form if you meet the Settlement Class definition below and wish to participate in the Settlement:

Female patients of Dr. Heaps who were seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010, or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

THIS IS NOT A CLAIM FORM.  Use this Form if you believe you are a member of the Class but did not receive a Claimant ID.  If you are confirmed as a Settlement Class Member, you will receive a Tier 1 Award of $2,500.

IF YOU ALSO WISH TO SUBMIT A TIER 2 OR TIER 3 CLAIM, YOU MUST FILL OUT THE TIER 2 AND TIER 3 CLAIM FORM, available at www.UCLAHeapsSettlement.com.

## <u>SECTION 1:  CLAIMANT INFORMATION</u>

| | | |
|---|---|---|
| **1.   CLAIMANT NAME:** | First                    Middle                    Last | |
| **2.   OTHER NAMES USED:** | | |
| **3.   DATE OF BIRTH:** | _____   _____   _____<br>Month                    Day                    Year | |

| 4. | SOCIAL SECURITY NUMBER, TAXPAYER ID OR FOREIGN ID NUMBER (IF NOT A U.S. CITIZEN): | \|___\|___\|___\| - \|___\|___\| - \|___\|___\|___\|___\| **or** <br><br> \|___\|___\|___\|___\|___\|___\|___\|___\|___\|___\| |
|---|---|---|
| 5. | CURRENT ADDRESS: | Street Address 1 <br><br> Street Address 2 <br><br> City    State    ZIP Code <br><br> Country |
| 6. | TELEPHONE NUMBER: | (\|___\|___\|) – \|___\|___\|___\| – \|___\|___\|___\|___\| <br> Area Code |
| 7. | IS IT OKAY TO LEAVE YOU A MESSAGE ON THIS PHONE NUMBER? | Yes: ☐   No: ☐ |
| 8. | EMAIL ADDRESS: | |
| 9. | WERE YOU EVER A UCLA STUDENT? | Yes: ☐   No: ☐ |
| 10. | IF YES, PROVIDE YOUR DATES OF ENROLLMENT AND SCHOOL/DEPARTMENT: | From: _____ To: _____ <br>        Month and Year        Month and Year <br><br> School/Department: <br><br> _____ |

| ATTORNEY REPRESENTATION (IF APPLICABLE) | | |
|---|---|---|
| **1. ATTORNEY NAME:** | First | M.I. | Last |
| **2. LAW FIRM NAME:** | | |
| **3. LAW FIRM MAILING ADDRESS:** | Street Address 1 | |
| | Street Address 2 | |
| | City | |
| | State | |
| | ZIP Code | |
| **4. ATTORNEY TELEPHONE:** | (\|___\|___\|) – \|___\|___\|___\| – \|___\|___\|___\|___\|  Area Code | |
| **5. ATTORNEY EMAIL ADDRESS:** | | |

| **WHAT IS YOUR PREFERRED LANGUAGE?** | |
|---|---|
| | |

## SECTION 2:  CLAIMANT STATEMENT

I was seen for treatment by Dr. Heaps (1) at UCLA Medical Center (currently known as Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018, (2) at UCLA's student health center (currently known as Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010, or (3) at Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

Therefore, I claim to be a Settlement Class Member.  Specifically, my visit(s) with Dr. Heaps occurred on or about the following date(s), and at the following locations:

| Date (mm/dd/yyyy) | Location of Visit |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

If you have any documentation of any of the visits you listed above (e.g., appointment confirmations, invoices, etc.), please attach copies.

You may be eligible even if you do not have any documentation, however, the Claims Administrator may contact you to request additional information.

## SECTION 3:  CLAIMANT SIGNATURE

**I hereby certify that the information provided in this Statement of Class Membership is true and accurate to the best of my knowledge.  I do not object to any resulting disclosures or to the resolution of any potential Liens on my behalf.  I understand that the Claims Administrator may contact me regarding the information I provided, and that providing false or misleading information may result in the rejection of my Claim.**

Signature

Printed Name (First, Middle, and Last)

| | | /| | | /| | | | |

Date (Month/Day/Year)

You may file this Statement of Class Membership by mailing to the Settlement Administrator at UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111 or you may file your claim online through the Settlement Website at www.UCLAHeapsSettlement.com.

Your completed statement must be submitted online or postmarked by mail **no later than Month Day, Year.**

# <u>EXHIBIT D</u>

**Must be received online or postmarked by mail no later than [Month Date Year]**

UCLA HEAPS SETTLEMENT
C/O JND LEGAL ADMINISTRATION
P.O. BOX 91386
SEATTLE, WA 98111
WWW.UCLAHEAPSSETTLEMENT.COM



**You may submit your Claim Form online at www.UCLAHeapsSettlement.com**

## TIER 2 AND TIER 3 CLAIM FORM

### GENERAL INSTRUCTIONS

Please review the following instructions before proceeding.

You may make a Tier 2 or Tier 3 claim, but not both.  In deciding whether to make a Tier 2 or Tier 3 claim, please note:

- To make a Tier 2 or 3 claim, you must fill out Sections 1 through 3, 5 and 6.

- To make a Tier 3 claim, you also need to fill out Section 4, and you will be interviewed by a trained specialist from the Special Master's Team.

- A compensable Tier 2 claim will result in a total award of $12,500 (subject to *pro rata* adjustment).

- A compensable Tier 3 claim will result in a total award of between $12,500 and $250,000, based on an evaluation by the Panel of the information provided in the claim form, during the interview, and in additional evidence of impact or damages.

- The Panel may give a supplemental award in extraordinary cases if the Panel determines that additional compensation is necessary to adequately compensate a claimant who is otherwise eligible to receive the maximum Tier 3 Award.  The supplemental award is at the Panel's discretion; you do not need to take any specific action to apply, aside from making a Tier 3 claim.

Please note, if you are a Settlement Class Member, you are eligible for a guaranteed minimum Tier 1 payment regardless of whether you make a Tier 2 or Tier 3 Claim.  Please see the Settlement website at **www.UCLAHeapsSettlement.com** for additional information.

## SECTION 1:  CLAIMANT NAME AND CONTACT INFORMATION

| | | | |
|---|---|---|---|
| **1. NAME:** | First | Middle | Last |

**2. OTHER NAMES USED:**

**3. DATE OF BIRTH:**

_____     _____     _____
Month                                       Day                                          Year

**4. SOCIAL SECURITY NUMBER, TAXPAYER ID OR FOREIGN ID NUMBER (IF NOT A U.S. CITIZEN):**

|__|__|__| - |__|__| - |__|__|__|__|  **or**

|__|__|__|__|__|__|__|__|__|__|__|

**5. CURRENT ADDRESS:**

Street Address 1

Street Address 2

City

State

ZIP Code

**6. PHONE NUMBER:**

(|__|__|__|) – |__|__|__| – |__|__|__|__|
Area Code

**7. IS IT OKAY TO LEAVE YOU A MESSAGE ON THIS PHONE NUMBER?**

Yes: ☐     No: ☐

**8. EMAIL ADDRESS:**

## ATTORNEY REPRESENTATION (IF APPLICABLE)

| | | | |
|---|---|---|---|
| **1.  ATTORNEY NAME:** | First | M.I. | Last |
| **2.  LAW FIRM NAME:** | | | |
| **3.  LAW FIRM MAILING ADDRESS:** | Street Address 1 | | |
| | Street Address 2 | | |
| | City | | |
| | State | | |
| | ZIP Code | | |
| **4.  ATTORNEY TELEPHONE:** | (\|___\|___\|___\|) – \|___\|___\|___\| – \|___\|___\|___\|___\|  Area Code | | |
| **5.  ATTORNEY EMAIL ADDRESS:** | | | |

| | |
|---|---|
| **WHAT IS YOUR PREFERRED LANGUAGE?** | |

## SECTION 2:  SELECT CLAIM TYPE

Please select **ONE** of the following claim options:

☐    **Tier 2 Claim**    I choose to make a Tier 2 claim and complete this claim form only, to apply for an additional $10,000 award (for a total award of $12,500).  I understand the Special Master's Team may contact me in writing about the information provided on the Claim Form and I may be asked to answer questions in writing, but I will not be required to give an interview.

☐    **Tier 3 Claim**    I choose to make a Tier 3 claim and complete this claim form, and provide any documentation I have to support my claim, and give a confidential interview to a member of the Special Master's Team to provide as much information as possible about my claim.  I understand I may qualify for additional payment for a total award of $12,500 to $250,000.  I understand I may also be eligible for a supplemental award.

## SECTION 3:  QUESTIONS FOR TIER 2 AND 3 CLAIMANTS

Please provide complete responses to the questions below.  You may use additional sheets of paper to describe your experiences.  If you would like help filling out this Claim Form, Class Counsel are available to help at no cost to you. For assistance from Class Counsel, call 1-888-921-0726 and select Option [X] or email ClassCounsel@UCLAHeapsSettlement.com.

For each date that you were seen by Dr. James Heaps, please answer the questions below.  Please be as specific as possible.

1. **To the best of your recollection, provide the date(s) and location(s) for each of your appointment(s) with Dr. Heaps.**

| Date(s): | Location(s): |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

2.  **Do you believe Dr. Heaps engaged in sexual misconduct toward you?**

    **Yes:** ☐      **No:** ☐

    For purposes of this Claim Form, "sexual misconduct" means conduct that is of a sexual nature, and either not medically necessary or not within an acceptable standard of care, including but not limited to sexually suggestive questions, statements, or gestures; touching any part of the body with the hands or with an object for sexual stimulation or gratification; and penetration with the hands or with an object for sexual stimulation or gratification.

3.  **If yes, list the visit(s) below at which you allege that Dr. Heaps engaged in sexual misconduct toward you.**

| Date(s): | Location(s): |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

4.  **For each of the visits at which you allege sexual misconduct occurred, describe the visit in as much detail as possible, including any conduct that you believe was inappropriate and how you felt at the time.  Use additional sheets if needed.**

    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____
    _____

5. **Describe how you felt following your appointment(s) with Dr. Heaps, and any continuing impact on you of your appointment(s) with Dr. Heaps.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

6. **Did you tell anyone about any of your visits with Dr. Heaps (including friends, relatives, doctors or health professionals, hospital or school administrators, social workers, attorneys, law enforcement authorities, or Praesidium, the counseling service made available through a UCLA hotline after Dr. Heaps was criminally charged)?**

   Yes: ☐   No: ☐

7. **If yes, who did you tell and when?  What did you tell them about your interaction with Dr. Heaps? Anyone you list will not be contacted without your permission.**

| <u>Date</u>: | | <u>Name</u>: | |
|---|---|---|---|
| | | | |

_____

_____

_____

_____

_____

_____

_____

_____

_____

| **Date:** | | **Name:** | |
|---|---|---|---|
| | | | |

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name:** | |
|---|---|---|---|
| | | | |

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name:** | |
|---|---|---|---|
| | | | |

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**8.  Did you post any reviews or comments online related to Dr. Heaps?**

Yes: ☐     No: ☐

**9.  If yes, list below to the best of your recollection where you made the post, the approximate date, and the general content of the post.**

| <u>Date</u>: | | <u>Location</u>: | |
|---|---|---|---|

_____

_____

_____

_____

_____

_____

_____

| <u>Date</u>: | | <u>Location</u>: | |
|---|---|---|---|

_____

_____

_____

_____

_____

_____

_____

| <u>Date</u>: | | <u>Location</u>: | |
|---|---|---|---|

_____

_____

_____

_____

_____

_____

_____

## SECTION 4:  QUESTIONS FOR TIER 3 CLAIMANTS ONLY

**10.** **When did you first feel that the behavior you described above was inappropriate (e.g., that the behavior made you uncomfortable, that the behavior might have been improper, or that you suspected the behavior could have been medically unnecessary)?**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**11.** **Describe any mental or emotional distress, or physical pain or discomfort, following your appointment(s) with Dr. Heaps up to the present time that were related to your interactions with him. Describe when you began to feel the distress, pain, or discomfort, and how long it lasted.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**12. Describe how any emotional distress or physical pain or discomfort has affected you, including how it has affected your romantic relationship(s) and social functioning, work functioning, or other important aspects of daily life, including impact on sleep, irritability, concentration, eating, and any other activities and emotions, and how that impact has changed over time.**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**13. Have you sought counseling in connection with the injuries or emotional distress associated with your visit(s) to Dr. Heaps?**

Yes: ☐   No: ☐

**14. If yes, please describe below. Anyone listed below will not be contacted without your permission.**

| <u>Date</u>: | | <u>Name of Professional</u>: | |
|---|---|---|---|

**Nature of Treatment:** _____

_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |
|---|---|---|---|

**Nature of Treatment:**  _____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |
|---|---|---|---|

**Nature of Treatment:**  _____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |
|---|---|---|---|

**Nature of Treatment:**  _____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |
|---|---|---|---|

**Nature of Treatment:**  _____
_____
_____
_____
_____
_____
_____

| **Date**: | | **Name of Professional**: | |
|---|---|---|---|

**Nature of Treatment:** _____

_____

_____

_____

_____

_____

_____

15. **Have you sought other treatment of any kind in connection with the injuries or emotional distress associated with your visit(s) to Dr. Heaps?**

   **Yes:** ☐   **No:** ☐

16. **If yes, please describe below.  Anyone listed below will not be contacted without your permission.**

| **Date**: | | **Name of Professional**: | |
|---|---|---|---|

**Nature of Treatment:** _____

_____

_____

_____

_____

_____

_____

| **Date**: | | **Name of Professional**: | |
|---|---|---|---|

**Nature of Treatment:** _____

_____

_____

_____

_____

_____

_____

| **Date:** | | **Name of Professional:** | |

**Nature of Treatment:** _____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |

**Nature of Treatment:** _____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |

**Nature of Treatment:** _____
_____
_____
_____
_____
_____
_____

| **Date:** | | **Name of Professional:** | |

**Nature of Treatment:** _____
_____
_____
_____
_____
_____
_____

17. **If you have incurred any expenses you attribute to injuries or emotional distress caused by your treatment by Dr. Heaps, please itemize such expenses below and, if available, provide copies of supporting documentation.**

| Expenses: | Supporting Documents Attached? |
|---|---|
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |
| | Yes: ☐   No: ☐ |

18. **Please provide any additional information you believe is relevant or useful for the Panel to know.**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## SECTION 5:  LIENS

As set forth in the Settlement Agreement, the Claims Administrator is administering the process for identifying and resolving any potential Liens that may be withheld or asserted against your Claim Award.  If you or the Claims Administrator identifies a potential Lien asserted, and the Claims Administrator confirms the validity and amount of such Lien(s), we are required to deduct those amounts from your Claim Award.  For purposes of determining if your Claim Award is subject to a Lien, please fill out the information, where applicable, in this Section.

### A. MEDICARE

1. If you are now enrolled, or have been enrolled at any time, in Medicare Part A or Medicare Part B program(s), provide the following information:

   HICN (Medicare Claim #):

   | | | | | | | | | | | | | | | | |

   Enrollment Date: | | | |/| | | |/| | | | | |
                                   (Month/Day/Year)

2. If you are now enrolled, or have been enrolled at any time, in a Medicare Part C program (for example, a Medicare Advantage, Medicare Cost, Medicare healthcare prepayment plan benefits, or similar Medicare plan administered by private entities), provide the following information:

   Name of Plan:

   | | | | | | | | | | | | | | | | | | | | | | | | | | | |

   Member Number for Plan:

   | | | | | | | | | | | | | | | | | | | | | | | |

   Enrollment Date: | | | |/| | | |/| | | | | |
                                   (Month/Day/Year)

3. If you are now enrolled, or have been enrolled at any time, in a Medicare Part D Program (prescription drug benefits), provide the following information:

   Name of Medicare Part D Plan:

   | | | | | | | | | | | | | | | | | | | | | | | | | |

   Member Number of Medical Part D Plan:

   | | | | | | | | | | | | | | | | | | | | | | | |

   Enrollment Date: | | | |/| | | |/| | | | | |
                                   (Month/Day/Year)

## B.  MEDICAID

1.  If you are currently enrolled in a state Medicaid Program, provide the following information:

Medical ID Number:  | | | | | | | | | | | | | | |

State of Issuance:  | | | |

Enrollment Date:  | | | |/| | | |/| | | | | |
                        (Month/Day/Year)

2.  If you have been enrolled in any other state Medicaid Program at any time, provide the following information:

Medical ID Number:  | | | | | | | | | | | | | | |

State of Issuance:  | | | |

Enrollment Date:  | | | |/| | | |/| | | | | |
                        (Month/Day/Year)

## C.  DEPARTMENT OF VETERANS AFFAIRS, TRICARE, OR INDIAN HEALTH SERVICE

If you are now enrolled, or have been enrolled at any time, in any of the following programs, provide the required information about each program:

☐ **Department of Veterans Affairs Healthcare or Prescription Drug Benefits**

Claim Number:

| | | | | | | | | | | | | | | | | | | | |

Enrollment Dates: | | | |/| | | |/| | | | |     **TO**     | | | |/| | | |/| | | | |
                        (Month/Day/Year)                                (Month/Day/Year)

Branch:  | | | | | | | | | | | | | | | | | | | |

Sponsor:  | | | | | | | | | | | | | | | | | | |

Sponsor SSN:  | | | | | - | | | | - | | | | |

Tribe:  | | | | | | | | | | | | | | | | | |

Treating Facility:  | | | | | | | | | | | | | | | | | | | |

☐ **TRICARE Healthcare or Prescription Drug Benefits**

Claim Number:

| | | | | | | | | | | | | | | | | | | | | | | | |

Enrollment Dates: | | |/| | |/| | | | |    **TO**    | | |/| | |/| | | | |
(Month/Day/Year)                               (Month/Day/Year)

Branch: | | | | | | | | | | | | | | | | | | | | | | | |

Sponsor: | | | | | | | | | | | | | | | | | | | | | | | |

Sponsor SSN: | | | | | - | | | | | - | | | | | |

Tribe: | | | | | | | | | | | | | | | | | | | | | | | |

Treating Facility: | | | | | | | | | | | | | | | | | | | | | | | |

☐ **Indian Health Service Healthcare or Prescription Drug Benefits**

Claim Number:

| | | | | | | | | | | | | | | | | | | | | | | | |

Enrollment Dates: | | |/| | |/| | | | |    **TO**    | | |/| | |/| | | | |
(Month/Day/Year)                               (Month/Day/Year)

Branch: | | | | | | | | | | | | | | | | | | | | | | | |

Sponsor: | | | | | | | | | | | | | | | | | | | | | | | |

Sponsor SSN: | | | | | - | | | | | - | | | | | |

Tribe: | | | | | | | | | | | | | | | | | | | | | | | |

Treating Facility: | | | | | | | | | | | | | | | | | | | | | | | |

## D.  OTHER GOVERNMENTAL PAYOR

If you were entitled to receive medical items, services, and/or prescription drugs from any Federal, State, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, and/or prescription drugs not previously listed above, provide the following information:

Name of Plan/Entity:

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Policyholder Name:

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Policy Number:

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Medical Condition Covered by Plan/Entity:

## E.  PRIVATE HEALTHCARE INSURANCE

If you have received medical treatment for your injuries described above that were covered by a private healthcare insurance plan, provide the following information for each such plan:

Name of Plan/Entity:

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Policyholder Name:

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Policy Number:

| | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Medical Condition Covered by Plan/Entity:

## F.  OTHER LIENS

**1.   Are you aware of a potential Lien that could be asserted against your Claim Award?**

**Yes:** ☐   **No:** ☐

*A "Lien" would include any lien, mortgage, reimbursement claim, pledge, charge, security interest, or other legal encumbrance, of any nature whatsoever, creating a legal obligation to withhold payment of a Claim.*

**2.   If yes, please describe such Liens below:**

_____

_____

_____

_____

_____

_____

_____

_____

## SECTION 6:  VERIFICATION

**I hereby certify that the information provided in this Claim Form, and any attachments, is true and accurate to the best of my knowledge.  I authorize the Claims Administrator to contact the healthcare insurance providers identified on this Claim Form per the Settlement Agreement, and I do not object to any resulting disclosures or to the resolution of any potential Liens on my behalf.  I understand that the Special Master or her team may contact me regarding the information I provided and that providing false or misleading information may result in the rejection of my Claim.**

Claimant Signature

| | | |/| | |/| | | | |

Date (Month/Day/Year)

Printed Full Name (First, Middle, and Last)

You may submit this Tier 2 or Tier 3 claim by completing this hard copy claim form and mailing it to the Settlement Administrator at UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111 or you may file your claim online through the Settlement Website at www.UCLAHeapsSettlement.com.

Your completed claim must be submitted online or postmarked by mail **no later than Month Day, Year.**

# **EXHIBIT E**

UCLA Heaps Settlement
c/o JND Legal Administration
P.O. Box 91386
Seattle, WA 98111

**IMPORTANT COURT-ORDERED INFORMATION**



# IMPORTANT COURT-ORDERED INFORMATION

# EXHIBIT F

To: [Pre-ID Class Member Email Address]

From:  info@ UCLAHeapsSettlement.com

Subject:  Notice of UCLA Dr. Heaps Settlement

Claimant ID No.  [JND Name Number]

Dear [Pre-Identified Class Member Name]:

# Women who were seen for treatment by Dr. James Heaps at UCLA medical facilities may be eligible to participate in a class action settlement.

### Para obtener la notificación en español, llame al 1-888-921-0726 o visite www.UCLAHeapsSettlement.com.

**Why did I get this Notice?**  A proposed settlement has been reached in a class action lawsuit pending in the United States District Court for the Central District of California ("Court") titled *A.B. et al. v. Regents of the University of California et al.*, Case No. 2:20-CV-09555-RGK ("Litigation").  According to UCLA's records, you have been pre-identified as a class member.  The purpose of this email notice is to inform you of the Litigation, the settlement, and your legal rights.  Please also visit the settlement website: www.UCLAHeapsSettlement.com.

**What is the Litigation about?**  Dr. James Heaps ("Dr. Heaps") provided obstetric and gynecological services at University of California Los Angeles ("UCLA") medical facilities during certain periods of time between January 1, 1983 and June 28, 2018.  The women who brought the Litigation ("plaintiffs") allege that Dr. Heaps assaulted, abused, and engaged in harassing and offensive behavior towards female patients.  Plaintiffs further allege that UCLA supervisors and administrators were repeatedly informed of Dr. Heaps's misconduct but failed to take the necessary measures to protect his patients.  Regents of the University of California ("Regents") and Dr. Heaps ("Defendants") deny these allegations.  The Court has not decided who is right.

**Who is a Class Member?**  You are a class member if you are a woman who was seen for treatment by Dr. Heaps at (1) UCLA's student health center (now Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010; (2) UCLA Medical Center (now Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018; or (3) Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

**What are the Terms of the Settlement?**  Defendants will pay seventy three million dollars to settle the Litigation.  This fund will be used to pay class member claims and any class representative service awards approved by the Court.  You have been pre-identified as a class member and will be included in the settlement and sent a payment of two thousand five hundred dollars ("Tier 1 payment") without having to do anything else.  You also have the option to submit a Tier 2 and Tier 3 Claim Form.  Depending on the information provided and whether you are willing to be interviewed, you could be awarded up to two hundred fifty thousand dollars (or more in exceptional circumstances).  An impartial Panel, including a court-appointed Special Master, will evaluate Claim Forms, and confidential interviews will be conducted by a specialist trained in communicating with survivors of trauma and harassment.  All claims and submissions will be kept strictly confidential by the Claims Administrator, Panel, and Special Master's Team.  Certain information is also required to be provided to Defendants' insurers, and the insurers will keep the information strictly confidential.  In addition to monetary benefits, Regents will implement institutional changes at UCLA.  The fund will not be reduced to pay attorneys' fees and costs or Administrative Expenses.  Additional information and the Tier 2 and Tier 3 Claim Form is available on the settlement website at www.UCLAHeapsSettlement.com.  **The deadline to submit a Claim Form is Month Day, Year** [120 days from Notice].

**What are the other options for Class Members?**  If you don't want settlement payment(s) and don't want to be legally bound by the settlement, you must exclude yourself by [Month Day, Year] [90 days from Notice].  Class members who do not request exclusion may object to the settlement by [Month Day, Year] [90 days from Notice].  The detailed Notice you receive by mail or available on the settlement website provides detailed information

regarding how to request exclusion or object.  The Court will hold a fairness hearing on [Month Day, Year] at [Time], Pacific, to consider whether the settlement is fair, reasonable, and adequate.  Class members may ask the Court to appear at the fairness hearing but don't have to do so.  The hearing may be moved to a different date or time without additional direct notice to you.  Check the settlement website to confirm the date has not changed.

**How do I get more information?**  To learn more about the settlement, and review related Court documents, visit www.UCLAHeapsSettlement.com.   You may also contact the Settlement Administrator by email at info@UCLAHeapsSettlement.com, by phone toll-free at 1-888-921-0726, or by mail at UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111.

To unsubscribe from this list, please click on the following link:  Unsubscribe

# **EXHIBIT G**

## Banner Ad Examples                                                           1

**728 x 90**



**160 x 600**



**300 x 250**



**320 x 50**



## Facebook Ad Example                                                    2

**Mobile News Feed**



# EXHIBIT H



**LEGAL NOTICE – UCLA DR. HEAPS SETTLEMENT**

Women who were seen for treatment by **Dr. James Heaps** at **UCLA medical facilities** may be eligible to participate in a class action settlement

▶ *Learn about your rights and options*

*Para una notificación en español, visite o llame:*

**www.UCLAHeapsSettlement.com** ● **1-888-921-0726**



# EXHIBIT I



**LEGAL NOTICE – UCLA DR. HEAPS SETTLEMENT**

Women who were seen for treatment by **Dr. James Heaps** at **UCLA medical facilities** may be eligible to participate in a class action settlement

▶ *Learn about your rights and options*

*Para una notificación en español, visite o llame:*

**www.UCLAHeapsSettlement.com ● 1-888-921-0726**



# EXHIBIT J

# Women who were seen for treatment by Dr. James Heaps at UCLA medical facilities may be eligible to participate in a class action settlement

Seattle / DATE /

A proposed class action Settlement may affect you if you were a woman seen for treatment by Dr. James Heaps ("Dr. Heaps") at University of California Los Angeles ("UCLA") medical facilities during varying periods of time between January 1, 1983 and June 28, 2018. The lawsuit pending in the United States District Court for the Central District of California is *A.B. et al. v. Regents of the University of California et al.*, Case No. 2:20-CV-09555-RGK ("lawsuit").

**WHAT IS THE LAWSUIT ABOUT?** The women who brought the lawsuit ("Plaintiffs") allege that Dr. Heaps assaulted, abused, and engaged in harassing and offensive behavior towards female patients while he was an obstetrician and gynecologist at UCLA medical facilities and that Regents of the University of California ("Regents") failed to respond appropriately. Dr. Heaps and Regents ("Defendants") deny Plaintiffs' allegations. The Court has not decided who is right.

**WHO IS AFFECTED?** You are a "Class Member" if you are a woman who was seen for treatment by Dr. Heaps at (1) UCLA's student health center (now Arthur Ashe Student Health and Wellness Center) from January 1, 1983 to June 30, 2010; (2) UCLA Medical Center (now Ronald Reagan UCLA Medical Center) from January 1, 1986 to June 28, 2018; or (3) Dr. Heaps's medical offices at 100 UCLA Medical Plaza from February 1, 2014 to June 28, 2018.

**WHAT CAN YOU GET FROM THE SETTLEMENT?** The $73 million Settlement Fund will be used to pay Settlement Class Member claims and any Class Representative service awards approved by the Court. In addition to monetary benefits, Regents will make institutional changes at UCLA. The Settlement Fund will not be reduced to pay attorneys' fees and costs or Administrative Expenses.

**HOW DO YOU GET A PAYMENT?** Settlement Class Members who are pre-identified and receive a Settlement Notice packet with a Claimant ID and women who submit a qualifying Statement of Class Membership will receive a Tier 1 Settlement payment of $2,500. Settlement Class Members also have the option to submit a Tier 2 and Tier 3 Claim Form. Depending on the information provided and whether claimants are willing to be interviewed, claimants could be awarded up to $250,000 (or more in exceptional circumstances). The Statement of Class Membership and Tier 2 and Tier 3 Claim Form are available on the Settlement Website at www.UCLAHeapsSettlement.com or may be requested by phone toll-free at 1-888-921-0726. All Claim Forms must be received online through the Settlement Website or postmarked by mail no later than [**Month Day, Year**] [120 days from Notice].

**WHAT ARE YOUR OPTIONS?** Class Members who don't want Settlement payment(s) and don't want to be legally bound by the Settlement, must exclude themselves by [Month Day, Year] [90 days from Notice]. Class Members who do not request exclusion may object to the Settlement by [Month Day, Year] [90 days from Notice]. The detailed Settlement Notice provides detailed information regarding how to request exclusion or object. The Court will hold a Fairness Hearing on [Month Day, Year] at [Time], Pacific, to consider whether the Settlement is fair, reasonable, and adequate. Class Members may ask the Court to appear at the Fairness Hearing but don't have to do so.

**HOW CAN YOU GET MORE INFORMATION?** This Notice is a summary. Detailed Settlement information is available at www.UCLAHeapsSettlement.com. You may also contact the Settlement Administrator by phone toll-free at 1-888-921-0726 or by mail at UCLA Heaps Settlement, c/o JND Legal Administration, P.O. Box 91386, Seattle, WA 98111.