```
 1  GIBSON, DUNN & CRUTCHER LLP
    DEBRA WONG YANG, SBN 123289
 2    dwongyang@gibsondunn.com
    CATHERINE A. CONWAY, SBN 98366
 3    cconway@gibsondunn.com
    JESSE A. CRIPPS, SBN 222285
 4    jcripps@gibsondunn.com
    MATTHEW A. HOFFMAN, SBN 227351
 5    mhoffman@gibsondunn.com
    333 South Grand Avenue
 6  Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
 7  Facsimile:   213.229.7520

 8  Attorneys for Defendant
    THE REGENTS OF THE UNIVERSITY
 9  OF CALIFORNIA
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., C.D., E.F., G.H., I.J., K.L., and M.N., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JAMES MASON HEAPS,<br><br>Defendants. | CASE NO. 2:20-cv-09555 RGK(Ex)<br><br>**DEFENDANT THE REGENTS OF THE UNIVERSITY OF CALIFORNIA'S OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM THE COURT'S ORDER, PURSUANT TO FED. R. CIV. P. 60(B) AND 6(B)**<br><br>**Hearing:**<br>Date:   September 13, 2021<br>Time:   9:00 a.m.<br>Place:  Courtroom 850<br>Judge:  Hon. R. Gary Klausner |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 3

    A. Notice by Publication Weighs *Heavily* Against Allowing Late Opt-Outs ............................................................................................................. 3

    B. Plaintiffs' Delay in Seeking the Late Opt-Outs is Not Excusable ............. 6

    C. Denying the Late Opt-Outs would Preserve the Finality of the Settlement and Would *Not* Subvert AB-3092 .............................................. 9

III. CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   1995 WL 221860 (D. Ill. Apr. 12, 1995) ............................................................... 1, 4

*Brown v. Nucor Corp.*,
   2018 WL 6818997 (D.S.C. Dec. 7, 2018) ............................................................ 9, 10

*Georgine v. Amchem Products, Inc.*,
   1994 WL 637404 (E.D. Penn. Nov. 10, 1994) ...................................... 1, 3, 9, 10, 11

*Grace v. City of Detroit*,
   145 F.R.D. 413 (E.D. Mich. 1992) ............................................................................ 10

*Graphic Comms. Int'l Union v. Quebecor Printing Providence, Inc.*,
   270 F.3d 1 (1st Cir. 2001) .......................................................................................... 8

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ....................................................................... 2, 10, 12

*Khrapunov v. Prosyankin*,
   931 F.3d 922 (9th Cir. 2019) ..................................................................................... 8

*Klein v. O'Neal*,
   2009 WL 1174638 (N.D. Tex. Apr. 29, 2009) ............................................ 1, 3, 4, 10

*Lowry v. McDonnell Douglas Corp.*,
   211 F.3d 457 (8th Cir. 2000) ..................................................................................... 8

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................... 3

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993) ................................................................................................... 6

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997) ............................................................................ 1, 4, 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................................................. 11

Gibson, Dunn & Crutcher LLP

ii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Silber v. Mabon*,
 18 F.3d 1449 (9th Cir. 1994) ................................................................................ 6

*Speiser, Krause & Madole P.C. v. Ortiz*,
 271 F.3d 884 (9th Cir. 2004) ................................................................................ 7

*Stender v. Archstone-Smith Operating Trust*,
 958 F.3d 938 (10th Cir. 2020) ............................................................................ 11

*In re Torazosin Hydrocholoride Antitrust Litigation*,
 2005 WL 2451957 (S.D. Fla. July 8, 2005) ..................................................... 1, 4

*In re Tronox Inc.*,
 626 B.R. 688 (Bankr. S.D.N.Y. 2021) ...................................................... 1, 3, 7, 11

*United States v. Torres*,
 372 F.3d 1159 (10th Cir. 2004) ............................................................................ 8

*In re Vitamins Antitrust Class Actions*,
 327 F.3d 1207 (D.C. Cir. 2003) ........................................................................ 8, 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
 895 F.3d 597 (9th Cir. 2018) ................................................................. 2, 6, 7, 8, 9

*In re Washington Mutual, Inc.*,
 2018 WL 3736515 (D. Del. Aug. 6, 2018) ........................................................... 1

**STATUTES**

CAL. CIV. PROC. CODE § 340.16(c)(1) ...................................................................... 11

CAL. CIV. PROC. CODE § 340.16(c)(2)(C) ................................................................. 11

**OTHER AUTHORITIES**

Legis. Counsel's Dig., Assem. Bill No. 3902 (2019-2020 Reg. Sess.) ..................... 11

**TREATISES**

Manual for Complex Litigation (Fourth) § 21.321 (2004) .......................................... 1

William B. Rubenstein, 3 Newberg on Class Actions § 9:45 (5th Ed.) ................... 1, 9

## I.  INTRODUCTION

An opt-out deadline is just that: a deadline.  This is for good reason:  while "courts have the discretion to excuse tardy opt outs, the *Manual for Complex Litigation* reminds judges that the 'state of the class *at the end of the opt-out period* should be fixed enough to allow parties to conduct their affairs.'"  William B. Rubenstein, 3 Newberg on Class Actions § 9:45 (5th Ed.) (quoting Manual for Complex Litigation (Fourth) § 21.321 (2004)) (emphasis added).  "Although courts have granted leave for an extension of time to opt-out, it is an infrequent occurrence."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 237 (D.N.J. 1997).  This case is not one of those rare exceptions, and Plaintiffs' **renewed** motion for permission to opt out now, well-past the opt-out deadline, should be denied for several reasons:

**First**, a key consideration courts take into account in deciding whether to allow a late opt out is whether Plaintiffs had notice of the opt-out deadline.  In making that determination, the <u>form</u> of the notice is important, and courts routinely deny tardy opt-out requests where claimants had constructive notice of the settlement through publication—as every Plaintiff did here.  *See, e.g.*, *In re Prudential Ins. Co.*, 177 F.R.D. at 238; *In re Tronox Inc.*, 626 B.R. 688 (Bankr. S.D.N.Y. 2021); *In re Washington Mutual, Inc.*, 2018 WL 3736515 (D. Del. Aug. 6, 2018); *Klein v. O'Neal*, 2009 WL 1174638 (N.D. Tex. Apr. 29, 2009); *In re Torazosin Hydrocholoride Antitrust Litigation*, 2005 WL 2451957 (S.D. Fla. July 8, 2005); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 221860 (D. Ill. Apr. 12, 1995); *Georgine v. Amchem Products, Inc.*, 1994 WL 637404 (E.D. Penn. Nov. 10, 1994).

**Second**, even putting aside the notice publication, this Court should still deny Plaintiffs' request based purely on Plaintiffs' delay in filing their motion.  Not only did Plaintiffs have notice of the settlement through publication, but every Plaintiff except Jane NN Doe **admits** that she received actual notice of the settlement by mail or email, which weighs heavily against Plaintiffs' argument that their delay in seeking relief is the result of "excusable neglect."  In the Ninth Circuit, the test for excusable neglect is

"whether [the claimant] received notice, and who is responsible for the delay." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018). Plaintiffs had notice of the settlement and did not take action by the deadline, which simply does not constitute "excusable neglect" in this Circuit.

Indeed, Plaintiffs' delay here is far from excusable at this juncture. After a two month delay, Plaintiffs' counsel filed an initial draft of this very motion that did not comply with the local rules, which resulted in the Court rejecting the motion. Order to Strike Elect. Filed Docs., ECF 49. After that motion was rejected, Plaintiffs did not promptly correct and refile their brief. Nor did they appear at the final settlement approval hearing to press their case. Instead, Plaintiffs waited more than a month after this Court rejected Plaintiffs' initial motion to renew their motion. This does not constitute excusable delay.

**Third**, even if Plaintiffs' neglect were excusable – which it is not – the Court should still deny the motion. Courts routinely deny late opt-outs because they undermine the finality of settlements, devalue and ultimately discourage settlements, and expose defendants to a neverending stream of movants. Moreover, there is no merit to Plaintiffs' argument that denying the late opt-outs (and the opt-out deadline itself) somehow subverts AB-3092. AB-3092 "revive[d] claims for damages arising out of a sexual assault" or related conduct by a UCLA physician "that would otherwise be barred before January 1, 2021, *solely because the applicable statute of limitations has or had expired*." By its plain language, AB-3092 has a very specific purpose: to allow individuals who may have had claims against UCLA physicians that were barred by the statute of limitations to have their day in court. Nothing in the text of AB-3092 suggests that it was intended to interfere with Federal Rule of Civil Procedure 23 or to invalidate settlement agreements entered into pursuant to that rule.

As the Ninth Circuit explained, "there has to be a cutoff point." *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977). That cutoff point was May 6, 2021, as the parties previously agreed and as this Court ordered. Ultimately, despite


what Plaintiffs would have this Court believe, the decision to grant or deny a request for a late opt-out is left to the sound discretion of the district court, and any one of the reasons articulated above is sufficient for this Court to exercise its discretion and deny Plaintiffs' request.

## II.     ARGUMENT

### A.     Notice by Publication Weighs *Heavily* Against Allowing Late Opt-Outs

First and foremost, Plaintiffs' request for late opt-outs should be denied because in addition to ordering notice through direct mailings, this Court ordered notice by publication through multiple outlets, which weighs heavily against allowing *any* late opt-outs. The Supreme Court has held that "reasonable publication notice is sufficient" to satisfy due process because "actual notice is not always possible." *In re Tronox Inc.*, 626 B.R. at 719 (construing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–18 (1950)). Courts routinely deny claimants' motions to extend opt-out deadlines when constructive notice is given by publication*, including when those claimants did not receive actual notice of the opt-out deadline* (which is not even the case here). Many courts have denied late opt-outs based on this factor alone. For example, in *Georgine v. Amchem Products, Inc.*, 1994 WL 637404 (E.D. Penn. Nov. 10, 1994), a claimant moved to extend the opt-out deadline because he "never received notice of his right to exclude himself from the *Georgine* settlement" and, even if he had received notice, he "would not have had the opportunity to opt out because he was occupied with medical tests and treatment." *Id.* at *7. The court denied the motion, explaining that class members had received constructive notice through publication, and that whether a claimant "received actual notice of [a] class action before the close of the opt-out period" was irrelevant because "actual notice to every class member was not required." *Id.* at *9–10.

Similarly, in *Klein v. O'Neal*, 2009 WL 1174638 (N.D. Tex. Apr. 29, 2009), the court considered a claimant's motion to opt out of a certified class after the opt-out deadline had passed. The court acknowledged that the claimant "did not receive actual

notice of the class action until after the opt-out deadline had expired," but found that he had received "constructive notice through publication" before the deadline had passed. *Id.* at 3–4. The court held "that an opt-out deadline may bind a class member who has received the best notice practicable," explaining that "[t]o hold that a class member who receives actual notice of a class action after the opt out deadline must always be given another opportunity to opt out, even though he received constructive notice before the deadline, would defeat the purpose of constructive notice." *Id.* at *3. Similarly, in *In re Terazosin Hydrochloride Antitrust Litigation*, 2005 WL 2451957 (S.D. Fla. July 8, 2005), the court denied a claimant's motion to extend an opt-out deadline because the plaintiff had notice by publication, and "the unfortunate fact that a particular [claimant] may not have received actual notice has no bearing and *does not warrant* an extension of the opt-out date." *Id.* at *3 (emphasis added); *see also In re Prudential Sales Co.*, 177 F.R.D. at 238 (D.N.J. 1997) (same); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 221860 at *4 (D. Ill. Apr. 12, 1995) (same).

In this case, the notice plan was comprehensive, with ***multiple*** outlets designed to ensure that as many class members as possible received notice of the settlement. *See generally* Decl. of J. Keogh re Notice Program and Settlement Admin. ("Keogh Decl."), ECF 40-4. In addition to actual notice through the mail to 5,451 class members, publication notice was provided through the following sources:

- A "digital effort through GDN [Google Display Network] and Facebook" that delivered "10,959,173 impressions to Women 25+ in California, Arizona, Nevada, Oregon, Texas, and Washington," included English and Spanish language notices, and "ran across all devices (i.e., desktop, laptop, tablet, and mobile)." Keough Decl. ¶ 20, ECF 40-4.
- Quarter-page notices were run in the *Los Angeles Times* on Sunday, February 14, 2021, and Wednesday, February 17, 2021. Keough Decl. ¶ 21, ECF 40-4.

- A third-page, color notice was placed in the March 8, 2021 national edition of *People* magazine. Keough Decl. ¶ 21, ECF 40-4.
- A press release was sent out via PR Newswire's US1 Newsline "to approximately 15,000 English and Spanish media outlets" on February 8, 2021. Keough Decl. ¶¶ 19, 22, ECF 40-4. The press release was picked up, verbatim, 143 times, reaching "a potential audience of over 158 million." *Id.* ¶ 22.
- A settlement website was set up on February 5, 2021, and the site had received 24,984 views and 13,382 unique visitors by May 20, 2021. Keough Decl. ¶¶ 25–26, ECF 40-4

Moreover, the notice plan was augmented and amplified by media coverage of the settlement. Beyond the 143 outlets that disseminated the February 8, 2021 press release to a potential audience of over 158 million, "at least 64 media outlets covered the Settlement during the period of January 19, 2021, through March 11, 2021." Keough Decl. ¶ 23. Media outlets including the *Los Angeles Times*, Los Angeles television station KTLA, and CNN also covered the settlement before and after this period. *See, e.g.*, Richard Winton, *Class-Action Settlement Against Former UCLA Gynecologist a 'Travesty,' Lawyers Say*, L.A. TIMES (Apr. 20, 2021), tinyurl.com/4rc35pny; *Lawyers Urge Accusers to Reject Settlement Against Former UCLA Gynecologist, Saying It Allows School to Keep 'Dark Secrets'*, KTLA (Apr. 20, 2021), tinyurl.com/2vsrr3x3; Madeline Holcombe & Sarah Moon, *University of California Reaches a $73 Million Settlement Against Former Gynecologist Accused of Sexual Misconduct*, CNN (Nov. 17, 2020), tinyurl.com/23yme4ch. Indeed, the Court itself found "the proposed notice and method of delivery sufficient and approve[d] the notice." Order 11, ECF 33. And the notice was successful: "Class members have actively engaged with the settlement since notice was disseminated." Pls.' Memo ISO Mot. for Final Approval 9, ECF 40-1.

For these reasons, the Court should find that the notice by publication given here is sufficient on its own to justify a denial of Plaintiffs' motion.

### B. Plaintiffs' Delay in Seeking the Late Opt-Outs is Not Excusable

Even ignoring the notice by publication, this Court should still deny Plaintiffs' request based purely on Plaintiffs' unjustified delay in filing their motion. Plaintiffs' primary argument as to why their late opt-outs should be permitted is that their "delay" or "neglect" in not seeking to opt out until now was "excusable," based on the four factors articulated in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993). But just a passing look at the facts and circumstances regarding the timing of Plaintiffs' delay shows that it does not meet the test for "excusable neglect."

As a threshold matter, *Pioneer* does not establish the standard for excusable neglect for class action opt-outs. "In the context of a tardy opt-out from a class action settlement, [the Ninth Circuit has] specifically identified as the relevant 'excusable neglect' factors 'the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt-out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment.'" *In re Volkswagen*, 895 F.3d at 618 (quoting *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994)). Two of these factors are particularly relevant here: (1) "whether [the claimant] received notice, and" (2) "who is responsible for the delay."[1]  *Id.*

First, it is **undisputed** that Plaintiffs received notice of the settlement. Indeed, not only did Plaintiffs receive constructive notice of the settlement, every Plaintiff except Jane NN Doe received physical or electronic mail about the settlement. Mot. at 12, ECF 52-1 (acknowledging that Jane LS Doe "discovered she missed the May 6, 2021, opt-out deadline" once she reviewed her mail); *id.* at 13 (admitting that Jane FR Doe received

---

[1] Although the other factors are less relevant, they also support a denial of Plaintiffs' motion. *See* Section II.A, *supra* [detailing the notice procedures followed in this case]; Section II.C, *infra* [explaining that allowing belated opt-outs would undermine the settlement and the finality of judgement].

an email from UCLA regarding the settlement); *id.* at 13–14 (acknowledging that when Jane SV Doe "finally reviewed her mail" she discovered that she had received mail regarding the settlement); *id.* at 14–15 (admitting that Jane NE Doe received an email from UCLA, apparently about the class action, and that she believes materials regarding the settlement were likely sent to the address she had on file with UCLA), *id.* at 16 (acknowledging that Jane CB Doe received "UCLA's mailed settlement packet"). And if Jane NN Doe did not receive a mailed settlement packet it was only because "she did not file a change of address with UCLA." *Id.* at 15.

Courts are "bound to apply strict due process and excusable neglect standards even if the movants may feel that the results are harsh." *In re Tronox Inc.*, 626 B.R. at 699. In the Ninth Circuit, receiving notice of a class action and subsequently failing to take appropriate action precludes a finding of excusable neglect. *In re Volkswagen*, 895 F.3d at 618. Here, Plaintiffs all received timely notice in multiple ways. For that reason alone, Plaintiffs failure to opt out by the deadline was not excusable neglect.

Second, and independent of the notice Plaintiffs received, the Court should also find that Plaintiffs' delay is inexcusable because Plaintiffs failed to act diligently in seeking late opt-outs. Plaintiffs assert that Jane CB Doe mailed her opt-out letter "on May 7, 2021, resulting in a one-day delay."[2] Mot. at 16, ECF 52-1. Two months later, without first meeting and conferring with UCLA, Plaintiffs filed their motion on behalf of Jane CB Doe and the other Plaintiffs—and their motion was promptly rejected for failing to conform to the local rules. Order, ECF 49. Rather than correcting the issue, Plaintiffs waited over a month, and did not provide any reason for the additional delay when they finally refiled their motion.

---

[2] Even if Plaintiff Jane CB Doe's neglect was excusable on May 7, 2021 or when the original motion was filed on July 9, 2021 (and it was not), the neglect certainly stopped being excusable when Plaintiffs failed to conform their brief to the local rules. *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 886 (9th Cir. 2004) ("[T]the general rule [is] that a mistake of law does not constitute excusable neglect"). And the failure to correct the filing after it was rejected is inexcusable.

Gibson, Dunn & Crutcher LLP

7

1    Plaintiffs' argument that *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207
2 (D.C. Cir. 2003) provides a basis for the Court to excuse their delay is incorrect. *See*
3 Mot. at 6–7, ECF 52-1. *In re Vitamins* dealt with "the question of whether *attorney*
4 *error* may constitute 'excusable neglect.'" *Id.* at 1210 (emphasis added). Plaintiffs
5 concede that "[h]ere, there has been no attorney oversight," and instead blame **their**
6 failure to timely opt out on their personal unawareness of the opt-out deadline. Mot. at
7 7, ECF 52-1. *In re Vitamins* did not consider – let alone decide – whether client error,
8 as opposed to attorney error, could justify an extension of an opt-out deadline. "It is
9 axiomatic that cases are not authority for issues not considered," *Khrapunov v.*
10 *Prosyankin*, 931 F.3d 922, 933 (9th Cir. 2019), and *In re Vitamins* is therefore
11 inapplicable. Furthermore, this case is nothing like *In re Vitamins*. There, counsel
12 promptly recognized what was essentially a clerical error and took immediate steps to
13 correct it, filing an opt-out motion *two days* after the error was uncovered. 327 F.3d at
14 1209. Here, Plaintiffs could have requested an opt-out for Plaintiff Jane CB Doe within
15 a few days of May 7, 2021, when she discovered she had missed the deadline. Instead,
16 they waited over *two months*. Then, after the motion was stricken for failing to comply
17 with the local rules, Plaintiffs waited over a month to refile.

18    Perhaps realizing their lack of diligence in bringing their motion is inexcusable,
19 Plaintiffs assert that "[t]he reason for delay in filing a class-action opt-out is arguably
20 afforded the least weight of the four factors." Mot. at 11, ECF 52-1. This is incorrect—
21 "the four *Pioneer* factors do not carry equal weight; the excuse given for the late filing
22 must have **the greatest** import." *Graphic Comms. Int'l Union v. Quebecor Printing*
23 *Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) (emphasis added); *accord United States*
24 *v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004); *Lowry v. McDonnell Douglas Corp.*,
25 211 F.3d 457, 463 (8th Cir. 2000).³

---

27  ³ To be sure, the Ninth Circuit follows the factors articulated in *Silber* for class action
28 opt-outs. *In re Volkswagen*, 895 F.3d at 618 (describing the *Silber* factors as specific to class action opt-outs, and the *Pioneer* factors as general). But the *Silber* test
*(Cont'd on next page)*

Plaintiffs have not pursued their motion with any diligence. They waited over two months to file their motion, they waited another month to refile their motion after it was rejected, and they did not appear at the final approval hearing to press their argument that they should be able to opt out. This stands in sharp contrast to the movant's conduct in *In re Vitamins*, where counsel filed a motion to opt out of the settlement *two days* after discovering his client "was not among the class members who had timely opted out." 327 F.3d at 1209. Plaintiffs' lack of diligence is sufficient grounds on its own to deny this motion.

### C. Denying the Late Opt-Outs would Preserve the Finality of the Settlement and Would *Not* Subvert AB-3092

Even if Plaintiffs' failure to opt out by the deadline were excusable – which it was not – this Court should still deny Plaintiffs' motion. The Court has the discretion to do so: "Even upon a finding a excusable neglect . . . it is still in the district court's discretion whether to grant the extension." *In re Prudential*, 177 F.R.D. at 237; *accord* Rubenstein, *supra*, § 9:45 ("Even if a litigant meets [the excusable neglect] standard, however, the district court retains discretion to grant or deny the extension.") The Court should exercise that discretion here, because "[i]f the court granted an extension to one class member, other members would be incentivized to seek similar relief." *Brown v. Nucor Corp.*, 2018 WL 6818997 at *3 (D.S.C. Dec. 7, 2018).

*Georgine* is again helpful. There, the court detailed the "harmful effects that can occur from interpreting [Rule 60(b)] too leniently in the context of late opt-out requests." 1994 WL 637404 at *8. The court warned that "the likely effect would be to undermine the implementation of the entire [class action] settlement" by creating a "never-ending trail" of individuals "who will *claim* that they did not receive actual notice of the existence of the . . . class action, and will file late extension requests." *Id.* (original

---

closely tracks the *Pioneer* test, and the reasoning in *In re Volkswagen* suggests our Court of Appeals would similarly give the greatest weight to the reason behind a late filing. 895 F.3d at 618 (rejecting a late opt-out because the movant was "squarely responsible for the failure to opt out on time").

emphasis). The "entire [class action] settlement likely would disintegrate" under the weight of this "endless stream of similarly situated individuals seeking relief on precisely the same grounds." *Id.* The court also noted that the settlement, which was the product of "significant negotiation," allowed defendants to withdraw "if at the close of the opt-out period, they determined that there had been an excessive number of individuals who opted out," and that "it would be unfair to permit many more individuals to opt out" after the defendants "ability to withdraw from the [settlement] has passed." *Id.* at *9.

Here, as in *Georgine*, the settlement agreement contained a clause allowing UCLA to withdraw if the number of opt outs was excessive. Settlement Agreement, 33–34, ECF 13-3. "[T]he settlement was reached after extensive mediation proceedings, suggesting an arm's length agreement." Order 10, ECF 33. UCLA made the decision not to withdraw from the agreement based on the number of class members who had opted out by the May 6, 2021 deadline. It would be unfair to allow additional opt outs now, more than three months after the deadline has passed, when UCLA no longer has the ability to withdraw from the settlement.

If the Court grants Plaintiffs' motion, it "would create the potential for other similarly situated class members to request exclusion." *Klein*, 2009 WL 1174638 at *3. Defendant UCLA "would be faced with the neverending expansion of its liability, as more class members with equally worthy explanations appeared." *Grace v. City of Detroit*, 145 F.R.D. 413, 418 (E.D. Mich. 1992). Settling defendants are also prejudiced "because the financial certainty they sought to achieve by entering into the settlement would be undermined." *Georgine*, 1994 WL 637404 at *9 (citing *In re Gypsum*, 565 F.2d at 1128). "In a class action settlement setting, defendants seek and pay for global peace," but if the Court allows these opt-outs, "defendants will be forced to separately defend [these] individual lawsuit[s]." *Klein*, 2009 WL 1174638 at *3. Courts have regularly found that such prejudice against defendants is a reason to deny motions to opt out. *See, e.g.*, *Brown*, 2018 WL 6818997 at *3; *Klein*, 2009 WL 1174638 at *3;

*Georgine*, 1994 WL 637404 at *9; *cf. In re Tronox Inc.*, 626 B.R. at 725–26 (collecting cases for the proposition that "the 'prejudice' factor weighs strongly against the movants who seek permission to file late claims").

In contrast to these points, however, Plaintiffs argue that ***not*** allowing late opt-outs at this juncture – and indeed, just the opt-out deadline itself – somehow subverts the purposes of AB-3092. That argument is meritless.

As a threshold matter, Plaintiffs' assertion that the Court's approval of "[t]he May 6, 2021[] opt-out deadline for Defendant's class action violates both the text and spirit of AB-3092," Mot. at p. 1, ECF 52-1, is wrong. AB-3092 "revive[d] claims for damages arising out of a sexual assault" or related conduct by a UCLA physician "that would otherwise be barred before January 1, 2021, *solely because the applicable statute of limitations has or had expired*." Legis. Counsel's Dig., Assem. Bill No. 3902 (2019-2020 Reg. Sess.) at 1 (emphasis added); *see also* CAL. CIV. PROC. CODE § 340.16(c)(1). And AB-3092 "is not applicable to a public entity," such as UCLA. Legis. Counsel's Dig., Assem. Bill No. 3902 (2019-2020 Reg. Sess.) at 1; *see also* CAL. CIV. PROC. CODE § 340.16(c)(2)(C) ("This subdivision does not revive any of the following claims: . . . (C) A claim brought against a public entity.").

By its plain language, AB-3092 has a very specific purpose: to allow individuals who may have had claims against UCLA physicians that were barred by the statute of limitations to have their day in court. Nothing in the text of AB-3092 suggests that it was intended to interfere with Federal Rule of Civil Procedure 23 or to invalidate settlement agreements entered into pursuant to that rule. Nor could it: If AB-3092 did affect opt-out deadlines, it would be trumped by the Federal Rules. *Stender v. Archstone-Smith Operating Trust*, 958 F.3d 938, 940 (10th Cir. 2020) ("[A] valid Federal Rule of Civil Procedure governs over a state procedural rule if the two rules "'answer the same question.'") (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010)).

Although this Court may find that denying Plaintiffs' motion is a "regrettable conclusion . . . there has to be a cutoff point." *In re Gypsum Antitrust Cases*, 565 F.2d at 1128. That cutoff was May 6, 2021. The Court should exercise its discretion and enforce the deadline the parties agreed to and the Court approved.

### III. CONCLUSION

This Court should deny Plaintiffs' Motion for Relief from the Court's Order.

Dated: August 23, 2021

                            GIBSON, DUNN & CRUTCHER LLP
                            DEBRA WONG YANG
                            CATHERINE A. CONWAY
                            JESSE A. CRIPPS
                            MATTHEW A. HOFFMAN

                            By: */s/ Jesse A. Cripps*
                                                Jesse A. Cripps

                            Attorneys for Defendant
                            THE REGENTS OF THE UNIVERSITY OF CALIFORNIA