JOHN C. MANLY, Esq. (SBN 149080)
VINCE W. FINALDI, Esq. (SBN 238279)
ALEX E. CUNNY, Esq. (SBN 291567)
JANE E. REILLEY, Esq. (SBN 314766)
TAYLOR W. BOREN, Esq. (SBN 325590)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys of Record for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., C.D., E.F., G.H., I.J., K.L., and M.N., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA and JAMES MASON HEAPS,<br><br>Defendants. | Case No.:  2:20-CV-09555-RGK-E<br>Assigned to Hon. R. Gary Klausner<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM THE COURT'S ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b), MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       September 13, 2021<br>Time:       9:00 a.m.<br>Location:  Courtroom 850<br><br>Trial Date:  None Set. |

---

**REPLY ISO PLAINTIFFS' MOTION FOR RELIEF FROM ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b)**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION……………………………………………………….....…….1

II. ARGUMENT…………………………………………………………………….1

    A.    DEFENDANT HINGES ITS OPPOSITION ON ITS PURPORTED "NOTICE" EFFORTS, WHICH IS NOT A PIONEER FACTOR…..1

        1. *In Re Vitamins* Involved Substantial "Notice" Efforts that Were Ultimately Immaterial to the Court Granting Multiple Late Opt-Outs……………………………………………………………………..3

    B.    PLAINTIFFS' BELATED OPT-OUTS ARE EXCUSABLE………..4

        1. Defendant's Fixation on "Notice" Is Again Misplaced......………4

        2. Plaintiffs Acted Diligently to Provide Their Opt-Out Requests…..6

    C.    PLAINTIFFS' REQUESTED RELIEF COMPORTS WITH AB-3092…….........................................................................................8

III. CONCLUSION………………………………………………………………….10

**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

# TABLE OF AUTHORITIES

Cases                                                                                                      Page(s)

*Board of Regents, etc. v. Tomanio*,
   446 U.S. 478 .............................................................................................................. 9

*Georgine v. Amchem Products, Inc.*,
   1994 WL 637404 (E.D. Penn. Nov. 10, 1994) ...................................................... 3

*Guaranty Trust Co. of New York v. York*,
   326 U.S. 99 .............................................................................................................. 9

*Haines v. Kerner*,
   404 U.S. (1971) ...................................................................................................... 4

*In re Tronox Inc.*,
   626 B.R. 688 (Bankr. S.D.N.Y. 2021) .................................................................... 5

*In re Vitamins Antitrust Class Action*,
   (D.C. Cir. 2003) 327 F.3d 1207 ......................................................................... 3, 7

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*,
   (9th Cir. 2018) 895 F.3d 597 ......................................................................... 4, 6, 7

*Lowry v. McDonnell Douglas Corp.*,
   (8th Cir. 2000) 211 F.3d 457 .................................................................................. 8

*Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*,
   (1993) 507 U.S. 380 ................................................................................ 1, 2, 3, 4, 5, 7

Statutes

California *Code of Civil Procedure* (*"C.C.P."*) § 314.16(d) .................................... 1

Rules

Fed. R. Civ. P. 60(b) ............................................................................ *passim*, i, 1, 10

Fed. R. Civ. P. 23 ................................................................................................. 2, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Jane CB Doe, Jane LS Doe, Jane FR Doe, Jane SV Doe, Jane NE Doe, and Jane NN Doe ("Plaintiffs") bring the instant Reply in support of their Motion for Relief, under Fed. R. Civ. P. 60(b) and 6(b) ("Motion"), from this Court's Order setting a class action opt-out deadline of May 6, 2021. Defendant UCLA's ("Defendant") Opposition ("Opp."), along with Dr. James Heaps' ("Heaps") Joinder, fail to adequately explain why Plaintiffs lack the "excusable neglect" to warrant their relief sought from this Court. Defendant does not even fully engage with all Supreme Court's *Pioneer* factors, ceding multiple factors to Plaintiffs that warrant relief. *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership* (1993) 507 U.S. 380, 395. Similarly, Defendant does not even attempt to meaningfully explain why the alleged "finality" it assigns to the May 6, 2021, opt-out deadline would not just as readily apply to the statute of limitations decided by the State Assembly: December 31, 2021. *See* California *Code of Civil Procedure* ("*C.C.P.*") § 314.16(d). This Court is empowered with broad discretion to allow these belated opt-outs, and Defendant does not once contest that *every* Plaintiff acted in good faith. The Court should further evaluate the comparatively unique impact of COVID-19 on many of these Plaintiffs, their lives, and the logistics of reviewing opt-out materials—a distinctive factor not meaningfully explored in Defendant's Opposition. Ultimately, the State Assembly enacted a statute of limitations specifically for these same Plaintiffs, which is cut short by this opt-out deadline. Plaintiffs reiterate their request for relief from this Court, as AB-3092 afforded them.

## II. ARGUMENT

**A.  DEFENDANT HINGES ITS OPPOSITION ON ITS PURPORTED "NOTICE" EFFORTS, WHICH IS NOT A *PIONEER* FACTOR.**

Throughout its Opposition, Defendant trumpets that Plaintiffs' belated opt-out requests should be denied purely because Defendant provided "notice" of its

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

class action "by publication through multiple outlets." Opp., 3:8-9. Defendant is so transfixed on this point, that it devotes much of its Opposition to its purported "notice" efforts. Opp., 4:15-5:28. Defendant misses the point completely. <u>Every class action requires notice to prospective class participants to even exist</u>. In fact, the "best notice" is a foundational requirement for certification under the Federal Rules. *See* Fed. R. Civ. P. 23(c)(2)(b) ("[f]or any class certified… the court must direct to class members the best notice that is practicable under the circumstances"). Yet, belated opt-outs are nonetheless granted in class actions. Every belated opt-out that is granted, is granted in the presence of "the best notice… practicable under the circumstances." Every belated opt-out that is denied, is also denied in the presence of "the best notice… practicable under the circumstances." Notice—and the high quality of notice—is *presumed* in every single opt-out determination. This is why Defendant's lack of a citation, let alone a quotation, is so conspicuous when it states "publication through multiple outlets… weighs heavily against allowing *any* late opt-outs." Opp., 3:9-10. "Notice" is not the lead talisman for evaluating an opt-out.

In fact, the U.S. Supreme Court does not even *consider* notice (actual or constructive) in its four *Pioneer* factors for helping courts determine if "excusable neglect" is sufficiently "excusable." *See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership* (1993) 507 U.S. 380, 395. As noted in Plaintiffs' operative Motion, these factors include: (1) the length of delay and its potential impact on judicial proceedings; (2) whether the movant acted in good faith; (3) the danger of prejudice to the party opposing the modification; and (4) the reason for the delay, including whether it was within the reasonable control of the movant.[1] *Id*.

---

[1] As explained throughout Plaintiff's Motion, all four factors cut squarely in favor of Plaintiffs' requested Relief. Defendant does not even contest that Plaintiffs acted in good faith or that their delay does not meaningfully impact judicial administration This combination (good faith by Plaintiffs coupled with no impact on efficient judicial administration), which Defendant essentially concedes, is the same combination that resulted in several opt-outs in *Pioneer* itself: "the Court of Appeals found, the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of respondents and their counsel,

Defendant implies "notice" alone bars belated opt-outs, citing to multiple cases. Examination reveals late opt-outs was not hinged only a "notice" evaluation.[2]

### 1. *In re Vitamins* Involved Substantial "Notice" Efforts that Were Ultimately Immaterial to the Court Granting Multiple Late Opt-Outs.

*In re Vitamins*, the seminal case applying the Supreme Court's *Pioneer* factors to class actions, involved an abundance of "notice." The Court of Appeal in that case, however, did not even consider "notice" in its clear-cut finding of "excusable neglect" for multiple late opt-outs:

> "The plan provided for mailing notices to class members as well as publishing notices in widely read industry periodicals and the *Wall Street Journal*. The notices expressly stated that members would be bound by the settlement and could opt out by sending a written request postmarked before or on September 28, 2021. The Claims Administrator mailed a notice to Hill Pet's corporate parent, at the same address to which prior notices, which had elicited responses, had been sent. The notice was also posted online." *See In re Vitamins Antitrust Class Action* (D.C. Cir. 2003) 327 F.3d 1207, 1208-1209.

Without elevating "notice," the Court provided language that squarely contradicts Defendant's hardline approach that it hopes this Court apply to Plaintiffs' opt-outs:

> "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable

---

weigh strongly in favor of permitting the tardy claim." *Pioneer*, *supra*, 507 U.S. at 381. Plaintiffs also illustrate no real prejudice to Defendant, *infra* (at Section II(C)).
[2] *Georgine v. Amchem Products, Inc.*, 1994 WL 637404 (E.D. Penn. Nov. 10, 1994), examined "notice" in the context of asbestos-related injuries—specifically, "[t]he class certified in *Georgine* include[ed] individuals who **have not [yet]** developed asbestos-related disease." *Id*. at *8 [emphasis added]. Unlike here, where non-class sexual assault survivors of Heaps have only until December 31, 2021, to bring suit under AB-3092 (and are litigating in a single Coordinated Proceeding in Los Angeles Superior Court), the court appropriately reasoned in Georgine that, by contrast, "it is not so fanciful to envision [in Georgine] that the likely never-ending trail of 'future claimants'… [forcing] defendants to defend the settled claims in multiple jurisdictions… in courts all over the country." *Id*. In *Klein v. O'Neal, Inc.* (N.D. Tex. Apr. 29, 2009), the Plaintiff asserted he received actual notice on November 5, 2007. *Id*. at *4. He did not "move for leave to opt-out until January 9, 2008," more than *14 months later*. Id. The Court found *that delay* "substantial."*Id*.

neglect' ... is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."[3] *Id.* Ultimately, despite Defendant's high praise for its own "notice," Defendant's "notice" nonetheless failed to sufficiently inform Plaintiffs Jane LS Doe, Jane SV Doe, Jane NE Doe, Jane FR Doe, and Jane NN Doe of their deadline before the deadline itself, and Defendant even concedes that Jane NN Doe was not even provided notice of the opt-out deadline (via mailed settlement packet or email). *See* Opp., 7:7-8. Defendant cannot elevate this factor above those outlined in *Pioneer*.[4]

## B. PLAINTIFFS' BELATED OPT-OUTS ARE EXCUSABLE.

Defendant incorrectly claims that Plaintiffs do not have "excusable neglect" under the Supreme Court's *Pioneer* factors. Instead, overlooking the plain language of *Pioneer*, Defendant argues that (a) "Plaintiffs receive[d] constructive notice of the settlement," and (b) Plaintiffs purportedly "failed to act diligently in seeking late opt-outs." Opp., 6:22, 7:15-16. Neither is based on the *Pioneer* factors, and neither is sufficient to deny Plaintiffs' requested opt-outs for a lack of "excusable neglect."

### 1. Defendant's Fixation on "Notice" Is Again Misplaced.

Yet again, Defendant improperly emphasizes its purported "notice" to Plaintiffs to justify Plaintiffs' alleged lack of "excusable neglect." However, as explored *supra*, examination of "notice" is not even a *Pioneer* factor to determine "excusable neglect." *See Pioneer, supra*, 507 U.S. at 380. The Supreme Court in

---

[3] Defendant attempts (insufficiently) to distinguish *In re Vitamins* from the present circumstances: "*In re Vitamins* did not consider – late alone decide – whether client error, as opposed to attorney error, could justify an extension of an opt-out deadline." Opp., 8:7-8. This is unfounded. First, *In re Vitamins* refers to the plaintiffs and their counsel jointly as "movant," undercutting any alleged distinction. Secondly, federal law is *less* exacting on unrepresented parties than counsel, not *more*. *See Haines v. Kerner*, 404 U.S. 520 (1971) (Supreme Court found that *pro se* pleadings should be held to "less stringent standards" than those drafted by attorneys).

[4] Some cases include "the degree of compliance with the best practicable notice procedures" among a list of guidelines for the Court's consideration. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (9th Cir. 2018) 895 F.3d 597, 618. Defendant cites to no authority in its Opposition that this "notice" guideline overrule over all other guideline or *Pioneer* factors, which does not even list "notice" evaluation for "excusable neglect."

4

**PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b)**

*Pioneer* clearly outlines how flexible "excusable neglect" really is—and how dissonate Defendant's analysis is with the Supreme Court's straightforward position.

Perhaps because the Supreme Court's language is so squarely on point with Plaintiffs' requested relief in their Motion, Defendant chooses to ignore *Pioneer*'s most salient language that defines "excusable neglect." Instead, Defendant tries to explain away its lack of analysis of *Pioneer* by plainly asserting that "*Pioneer* does not establish the standard for excusable neglect for class action opt-outs." Opp., 6:10-11. **Defendant then, without noting the irony, stakes its hardline position on a bankruptcy case which explicitly disavows its application to class action opt outs**: *In re Tronox Inc.*, 626 B.R. 688 (Bankr. S.D.N.Y. 2021). Opp., 7:9-11. Defendant cites to this case to support the position that "[c]ourts are 'bound to apply strict due process and excusable neglect standards even if the movants may feel that the results are harsh.'" *Id*. *In re Tronox* could not be more distinct from the present facts. *In re Tronox* involves multiple bankruptcy claimants attempting to opt-**in** to a bankruptcy proceeding, well after the Proof of Claims bar date and even in states where the underlying statute of limitations has already expired. *Id*. As if this is not sufficiently distinct from a class action opt-**out** with an active statute of limitations, *In re Tronox* even admonishes against applying its own holding to class actions:

> "**For the benefits of the movants… we have set forth below a description of the bankruptcy process and how it differs from class action procedures**… The bankruptcy claims process differs from a class action procedure in at least one very important respect…. **Creditors vote on a proposed plan of reorganization, and so a process is needed to identify the people who are entitled to vote**…" *Id. at* at 702 [emphasis added].

Defendant's reliance on *In re Tronox* shows how far Defendant's hardline position strays from the Supreme Court's own admonition that even "carelessness" by a plaintiff would be sufficient for a court to find "excusable neglect." *Pioneer*, 507 U.S. at 381. For instance, Defendant acknowledges that Jane NN Doe did not

even receive a mailed settlement packet, but still assigns blame to her *for not somehow knowing that UCLA could not reach her*, despite Jane NN Doe no longer receiving medical care at UCLA, and being unaware that a class action was even ongoing. Opp., 7:7:14. Still, Defendant improperly blames Plaintiff Jane NN Doe.

## 2. Plaintiffs Acted Diligently to Provide Their Opt-Out Requests.

Defendant argues that "Plaintiffs' delay is inexcusable because Plaintiffs failed to act diligently in seeking late opt-outs." Opp., 7:17-18. This is absurd. No Plaintiff mailed her opt-out request to the Class Administrator any later than June 7, 2021—within a month of the opt-out deadline of May 6, 2021. *See* Jane CB Doe Decl., Jane FR Doe Decl., Jane LS Doe Decl., Jane SV Doe Decl., Jane NE Doe Decl., and Jane NN Doe Decl., Exs. "5"-"10" to Boren Decl. (accompanying Motion). Jane CB Doe even submitted her request just *one day* after the deadline, being unable to postmark her opt-out letter in the evening of May 6, 2021 (as Defendant did not allow for an online submission option despite the logistical difficulties of COVID-19). *See* Jane CB Doe Decl., Ex. "10" to Boren Decl. (accompanying Motion). *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (9th Cir. 2018) 895 F.3d 597, 618, sets forth guidelines that a Court may consider when evaluating "excusable neglect"— without emphasizing any single factor. Defendant even quotes this case in its Opposition. Opp., 6:15-16. Defendant overlooks, however, that the Court considers "how quickly the belated opt-out request was made once notice was received." *In re Volkswagen*, 895 F.3d at 618. There is no guideline in *In re Volkswagen* evaluating the time in which a plaintiff *files a Rule 60(b)/6(b) motion*, or has a Court adjudicate this request, after notice was received. Here, each Plaintiff made a belated opt-out request to the Class Administrator upon discovering she had missed the deadline. As there is nothing stopping the Class Administrator from granting a belated opt-out

request upon receipt of a letter[5], Defendants cannot insist that *In re Volkswagen* requires that relief be specifically sought by the Court. Not only does this interpretation have no clear basis in the law, but it would discourage (and even punish) informal resolution to spare the Court unnecessary motion practice.[6]

Furthermore, the timing of a belated opt-out request cannot be considered in a vacuum. This is why the *Pioneer* factors specifically contemplate "the length of delay **and its potential impact on judicial proceedings.**" *See Pioneer*, 507 U.S. at 395. Defendant does not even superficially argue that allowing these belated opt-outs would have a "potential impact on judicial proceedings"—nor could Defendants credibly argue this. This Court only recently granted approval of the class action itself on July 12, 2021. According to the Heaps Settlement Website, the class has not even begun any of the following: (1) reviewing Tier 2 and 3 Claim Forms, (2) scheduling Tier 3 interviews, (3) issuing Tier 1 settlement checks, (4) even setting a settlement effective date, (4) scheduling or conducting Tier 3 interviews, (5) setting a deadline for Tier 2 and Tier 3 Claim Reviews, (6) issuing Tier 2 and 3 Claims Determinations—or any additional procedural and/or substantive issues in the months *or years* that may arise before this class action is formally concluded.[7] **At**

---

[5] Defendant acknowledges this, accepting an investigation to meet and confer and stating, "Plaintiffs could have requested an opt-out for Plaintiff Jane CB Doe within a few days of May 7, 2021, when she discovered she had missed the deadline." Opp., 8:14-15. This appears little more than an attempt by Defendant to imply it would have been receptive to Plaintiffs' request if Plaintiffs' Counsel had made it in May 2021. Plaintiffs' Counsel did not even represent Plaintiff Jane CB Doe at the time she missed her deadline. Still Jane CB Doe mailed a letter She was ignored.

[6] Defendant argues that Plaintiffs did not give "additional reason" for delay prior to filing the present Motion [Opp., 7:22] and implies that Plaintiff should have "appear[ed] at the final approval hearing to press their arguments" (without citing to authority for which this would be necessary) [Opp. 9:3]. Defendant knows full well the "additional reason" includes Plaintiffs' Counsel's efforts to engage in a good faith meet and confer, an invitation Defense Counsel accepted the day of the hearing.

[7] For a class action opt-out, a 2.5-month delay between the opt-out deadline and even a motion with the Court is considered "short." *See In re Vitamins, supra,* 327 F.3d at 1208–1209. Defendant attempts to point to the fact that counsel sought relief of

7

**PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b)**

**least one Circuit Court has held that failure to examine or rebut a *Pioneer* factor is a concession of that factor**.[8] Thus, Defendant concedes the Court's judicial administration (or sequence of events) will not be disrupted by Plaintiffs' Motion.

Ultimately, this concession is unnecessary to refute Defendant's position that Plaintiffs failed to act diligently. Each Plaintiff promptly contacted the Class Administrator with her request to opt-out of the class action as soon as practicable—with the latest sending her request over a *month* before the class's final approval. These requests were met with silence, necessitating the present relief from the Court. Plaintiffs' opt-outs are hardly disruptive of proceedings for a class action only recently formally approved, which Defendant does not even meaningfully contest.

C. **PLAINTIFFS' REQUESTED RELIEF COMPORTS WITH AB-3092.**

Defendant argues that the May 6, 2021, deadline does not conflict with the statute of limitations deadline in AB-3092. This is untrue. Defendant alleges there is no conflict, because the only purpose of AB-3091 was to give survivors of Heaps "their day in court"—which the class action purportedly gives them. Opp., 11:19-20 C.C.P. § 340.16(c)(1) was specifically passed for *these same Plaintiffs*, and it explicitly states that an action "may be **commenced** between January 1, 2020, and December 31, 2020" [emphasis added]. Plaintiffs, however, are presently barred from commencing their action—a clear conflict between the two deadlines. While failing to address this obvious conflict between the aims of AB-3092 and the cut-off date, Defendant states that the cut-off date should take precedence over the two since

---

the Court within a few days. This is immaterial since the Court evaluated movant's request not by its timing alone but its "impact on judicial proceedings."

[8] A case to which Defendant's own Opposition cites illustrates that failure to examine a *Pioneer* factor allows the Court to presume a factor is not contested:
> "For some reason, MDC opted not to discuss all four of the *Pioneer* factors… and mentions the case only fleetingly in its motion to dismiss…. **We will assume, then, that MDC is not claiming that any prejudice will result to the company from granting Lowry's" motion**. *See Lowry v. McDonnell Douglas Corp.* (8th Cir. 2000) 211 F.3d 457, 463 [emphasis added].

8

**PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b)**

"[n]othing in the text of AB-3092 suggests that it was intended to interfere with Federal Rule of Civil Procedure 23 or invalidate settlement agreements entered into pursuant to that rule." Opp., 11:19-21. Defendant argues that "a valid Federal Rule… governs over a state procedural rule if the two rules 'answer the same question.'" Opp., 11:25-26. This is unpersuasive for two reasons. First, the Rule 23 makes no reference *to the May 6, 2021, opt-out deadline for these Plaintiffs*; the opt-out deadline is set by the Court, and it could have been December 31, 2021, which would not have conflicted with *C.C.P.* § 340.16(c)(1). Secondly, the extended statute of limitations in AB-3092 was not just some procedural technicality. It was substantive and the new law's point.[9] Defendant did not contest passage of AB-3092, nor raise any issue with the December 31, 2021, statute of limitations when the law was considered by the State. Defendant cannot now rely on distorted conflict of law principals to give itself a second bite of the apple to bar Plaintiffs' claims.

Defendant argues that that allowing these Plaintiffs' belated opt-outs would upend the finality of the agreement. It would not. Not even delaying the entire class action opt-out deadline would produce this outcome to which Defendant catastrophizes. Defendants would still have finality in accordance with the underlying statute of limitations deadline in four months: December 31, 2021. Defendant fails to explain how there could be "neverending expansion of its liability" [Opp., 10:19] or a "never-ending trail of individuals" [Opp., 9:23-24]. This

---

[9] Federal Courts have routinely held state statutes of limitation to be substantive rather than procedural. *See Guaranty Trust Co. of New York v. York*, 326 U.S. 99, *see also Board of Regents, etc. v. Tomanio*, 446 U.S. 478, 485-86 ("the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."). Here, the statute of limitations in AB-3092 reflected the State's value judgment of giving Plaintiffs time to recognize their injuries by Dr. Heaps, their former physician, and commence suit. *See* Assembly Floor Analysis, Pg. 2, Ex. "1" to Boren Decl. (accompanying Motion).

is not an asbestos case, like *Georgine*, with claimants who would have no way of even knowing their exposure. It has a hard statute of limitations under AB-3092.

Defendant admits it was given an opportunity not afforded Plaintiffs: the chance to opt-out of the class action, after reviewing the "number of class members who had opted out by the May 6, 2021 deadline." Opp., 10:14. This means that on May 7, 2021—when Plaintiff Jane CB Doe mailed her one-day-late opt-out that Defendant ignored—Defendant UCLA was in the initial stages of *determining* if it still wanted to participate in the class action at all. Yet, Defendant claims "it would be unfair [to allow these six opt-outs] … when UCLA no longer has the ability to withdraw from the settlement." Opp., 10:14-16. Not so. Rather, it is unfair if Defendant was given broad discretion to participate in the class action, even after this deadline, but Plaintiffs are held to a hardline standard. Defendant's ability to review the class size prior to committing speaks to the hyperbole in Defendant's argument that these six opt-outs would unravel the class action. If the class were not sufficiently robust by May 6, 2021, Defendant never would have agreed to join. As such, Defendant's alleged "prejudice" of uncertainty for the class is not only insufficient as a matter of law, but the alleged uncertainty itself is also unfounded.

## III.  CONCLUSION

Based upon the foregoing, Plaintiffs respectfully reiterate their requests that the Court grant their Motion, pursuant to Rule 60(b) and Rule 6(b), providing each Plaintiff the opportunity to opt-out of the class action and litigate her claim in civil court, as explicitly afforded to them by the California State Assembly in AB-3092.

Dated: August 30, 2021

MANLY, STEWART & FINALDI

By: /s/ VINCE W. FINALDI
JOHN C. MANLY, Esq.
VINCE W. FINALDI, Esq.
ALEX E. CUNNY, Esq.
JANE E. REILLEY, Esq.
TAYLOR W. BOREN, Esq.
Attorneys of Record for Plaintiffs

# CERTIFICATE OF SERVICE
*A.B. et al v. The Regents of the University of California et al.*
*Case No. 2:20-cv-09555-RGK-E*

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to the above-entitled cause.

On August 30, 2021, I served a true copy of **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR RELIEF FROM THE COURT'S ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b), MEMORANDUM OF POINTS AND AUTHORITIES**

[ ]   By personally delivering it to the persons(s) indicated below in the manner as provided in FRCivP5(B)

[ ]   By depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the parties indicated on the attached service list;

[X]   By ECF: On this date, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet;

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court, at whose direction this service was made.

Executed on **August 30, 2021,** at Irvine, California.

/s/Kathy Frederiksen

# SERVICE LIST

**Catherine A Conway**
**Jesse A Cripps, Jr**
**Matthew Allan Hoffman**
**Debra Wong Yang**
Gibson Dunn and Crutcher LLP
333 South Grand Avenue Suite 4600
Los Angeles, CA 90071-3197
213-229-7000
213-229-7520 (fax)
cconway@gibsondunn.com
jcripps@gibsondunn.com
mhoffman@gibsondunn.com
dwongyang@gibsondunn.com
Attorneys for Defendant The Regents of the University of California

**Kathleen Dority Fuster**
**Tracy Green**
**Marc Smith**
Krane and Smith APC
16255 Ventura Boulevard Suite 600
Encino, CA 91436
818-382-4000
818-382-4001 (fax)
office@normintonlaw.com
tgreen@greenassoc.com
marc@kranesmith.com
Attorneys for Defendant James Mason Heaps

**Makenna Cox**
**Jordan Elias**
**Daniel C Girard**
**Trevor T Tan**
Girard Sharp LLP
601 California Street Suite 1400
San Francisco, CA 94108
415-981-4800
415-981-4846 (fax)
mcox@girardsharp.com
jelias@girardsharp.com
dgirard@girardsharp.com
ttan@girardsharp.com
Attorneys for Plaintiffs

**Julie Christine Erickson**
**Elizabeth A Kramer**
Erickson Kramer Osborne LLP
182 Howard Street
San Francisco, CA 94105
415-635-0631
415-599-8088 (fax)
elizabeth@eko.law
julie@eko.law
Attorneys for Plaintiffs

**PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b)**

**Eric H Gibbs**
**Amanda M Karl**
**Amy M Zeman**
Gibbs Law Group LLP
505 14th Street Suite 1110
Oakland, CA 94612
510-350-9700
510-350-9701 (fax)
ehg@classlawgroup.com
amk@classlawgroup.com
amz@classlawgroup.com
Attorneys for Plaintiffs

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**PLAINTIFFS' REPLY ISO MOTION FOR RELIEF FROM ORDER, PURSUANT TO FED. R. CIV. P. 60(b) AND 6(b)**