Daniel C. Girard (SBN 114826)
dgirard@girardsharp.com
Jordan Elias (SBN 228731)
jelias@girardsharp.com
Trevor T. Tan (SBN 281045)
ttan@girardsharp.com
Makenna Cox (SBN 326068)
mcox@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Elizabeth A. Kramer (SBN 293129)
elizabeth@eko.law
Julie Erickson (SBN 293111)
julie@eko.law
**ERICKSON KRAMER OSBORNE LLP**
44 Tehama Street
San Francisco, CA 94105
Telephone: (415) 635-0631
Facsimile: (415) 599-8088

Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
Amy M. Zeman (SBN 273100)
amz@classlawgroup.com
Amanda M. Karl (SBN 301088)
amk@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

*Class Counsel*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., C.D., E.F., G.H., I.J., K.L., M.N., on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; JAMES MASON HEAPS, M.D.; AND JOHN DOES 1-20,<br><br>      Defendants. | Case No. 2:20-cv-09555-RGK (Ex)<br><br>Hon. R. Gary Klausner<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date: May 23, 2022<br>Time: 9:00 AM PST<br>Courtroom: 850 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    I.    The approved settlement ..........................................................................2

        a.    The settlement fund..........................................................................2

        b.    Changes to UCLA's policies and procedures ................................3

    II.    Class counsel's work to date ....................................................................3

ARGUMENT ........................................................................................................6

    I.    The requested fee award is fair, reasonable, and justified .......................6

        a.    This settlement is a constructive common fund .............................6

        b.    The fee award here should be calculated as a percentage of
            that fund ..........................................................................................7

        c.    The requested fee is justified .........................................................7

            i.    Class counsel achieved an outstanding result for the
                class....................................................................................9

            ii.    The equitable relief achieved is also significant ................10

            iii.    Further litigation would have entailed significant risk........11

            iv.    Class counsel displayed skill and effort in prosecuting
                 this case..............................................................................11

            v.    The requested fee is a smaller percentage than fee
                 awards in comparable cases..................................................12

            vi.    The contingent nature of the case supports the
                 requested fee ........................................................................13

        d.    A lodestar cross-check confirms the requested fee is
            reasonable......................................................................................13

i

II.   Class counsel's litigation costs are reasonable and should be
      reimbursed .................................................................................... 14

III.  Plaintiffs' requested service payments are reasonable and
      appropriate .................................................................................... 15

CONCLUSION .................................................................................................. 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

1

# TABLE OF AUTHORITIES

2

**CASES**

3

4

*Amador v. Baca*
   2020 WL 5628938 (C.D. Cal. Aug. 11, 2020) ............................................................ 13

5

6

7

*Amador v. Shorter*
   2021 WL 1037119 (9th Cir. Feb. 12, 2021)
   *cert. denied*, 142 S. Ct. 109 (2021)............................................................................... 13

8

9

*Cheryl Gaston v. FabFitFun, Inc.*
   2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)........................................................... 11, 16

10

11

*Elkies v. Johnson & Johnson Servs., Inc.*
   2020 WL 10055593 (C.D. Cal. June 22, 2020) ............................................................. 7

12

13

*Farrell v. Bank of Am. Corp., N.A.*
   827 F. App'x 628 (9th Cir. Sept. 2, 2020) ................................................................... 13

14

15

*Galavis v. Bank of Am., N.A.*
   2020 WL 5898800 (C.D. Cal. July 14, 2020)............................................................ 6, 7

16

17

*Green v. Lawrence Serv. Co.*
   2014 WL 12778929 (C.D. Cal. Apr. 1, 2014) ............................................................... 7

18

19

*Hardisty v. Astrue*
   592 F.3d 1072 (9th Cir. 2010) ...................................................................................... 7

20

21

*Hensley v. Eckerhart*
   461 U.S. 424 (1983)............................................................................................. 7, 9, 10

22

23

*In re Anthem, Inc. Data Breach Litig.*
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ........................................................... 13

24

*In re Cobra Sexual Energy Sales Pracs. Litig.*
   2021 WL 4535790 (C.D. Cal. Apr. 7, 2021) ............................................................... 15

25

26

*In re Google Inc. St. View Elec. Comm'ns Litig.*
   21 F.4th 1102 (9th Cir. 2021) ....................................................................................... 9

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

*In re Heritage Bond Litig.*
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................... 13

*In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*
  2012 WL 5462665 (C.D. Cal. Nov. 7, 2012) ................................................................ 8

*In re Nucoa Real Margarine Litig.*
  2012 WL 12854896 (C.D. Cal. June 12, 2012) ........................................................ 15

*In re Omnivision Techs., Inc.*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................... 7, 8, 11

*In re Online DVD-Rental Antitrust Litig.*
  779 F.3d 934 (9th Cir. 2015) ...................................................................................... 8

*In re Optical Disk Drive Prod. Antitrust Litig.*
  959 F.3d 922 (9th Cir. 2020) ...................................................................................... 8

*In re Toys R Us-Del., Inc. FACTA Litig.*
  295 F.R.D. 438 (C.D. Cal. 2014) .............................................................................. 14

*In re USC Student Health Center Litig.*
  No. 2:18-CV-04258 (C.D. Cal. July 12, 2021) ....................................................... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*
  19 F.3d 1291 (9th Cir. 1994) ................................................................................... 13

*Ingram v. The Coca-Cola Co.*
  200 F.R.D. 685 (N.D. Ga. 2011) ............................................................................. 12

*Marshall v. Northrop Grumman Corp.*
  2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ........................................................ 14

*Mild v. PPG Indus., Inc.*
  2019 WL 9840633 (C.D. Cal. Oct. 25, 2019) ......................................................... 13

*Pan v. Qualcomm Inc.*
  2017 WL 3252212 (S.D. Cal. July 31, 2017) .......................................................... 12

*Rapuano v. Trs. of Dartmouth Coll.*
  2020 WL 3965784 (D.N.H. July 14, 2020) ....................................................... 12, 15

iv

*Rapuano v. Trs. of Dartmouth Coll.*
  2020 WL 6552248 (D.N.H. May 26, 2020) ................................................................. 15

Rodriguez v. W. Publ'g Corp.
  563 F.3d 948 (9th Cir. 2009) ................................................................................... 15

*Song v. THC - Orange Cty., Inc.*
  2019 WL 13030226 (C.D. Cal. Aug. 2, 2019) .......................................................... 15

*St. Louis v. Perlitz*
  No. 3:13-CV-01332 (D. Conn. Aug. 27, 2019) ........................................................ 12

*Stetson v. Grissom*
  821 F.3d 1157 (9th Cir. 2016) ..................................................................................... 6

*Taylor v. Shippers Transp. Exp., Inc.*
  2015 WL 12658458 (C.D. Cal. May 14, 2015) ........................................................ 10

*Thomas v. Dun & Bradstreet Credibility Corp.*
  2017 WL 11633508 (C.D. Cal. Mar. 22, 2017) ........................................... 11, 13, 14

*Trevor Mild v. PPG Industries, Inc.*
  No. 2:18-CV-04231 (C.D. Cal. Feb. 25, 2021) ........................................................ 14

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ............................................................................ passim

*Williams v. MGM-Pathe Comm'ns Co.*
  129 F.3d 1026 (9th Cir. 1997) ..................................................................................... 8

**RULES**

Fed. R. Civ. P. 23 ........................................................................................... 11, 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

**INTRODUCTION**

Plaintiffs filed this class action against UCLA and Dr. James Heaps, a former gynecologist who saw patients at UCLA for decades, after allegations of Heaps's predatory behavior toward his patients surfaced. Following litigation and a protracted negotiation process, the parties entered into a comprehensive settlement, which this Court approved several months ago.

The parties agreed to a $73 million class member fund to compensate women who were exposed to Dr. Heaps's allegedly predatory behavior, a trauma-informed claims process (administered at UCLA's expense), and significant changes to UCLA's policies and procedures. And the response was uniformly positive—not one class member objected. All have since received at least some payment, with the rest of the fund to be distributed in the coming months.

With settlement administration almost complete, class counsel now request the award of attorneys' fees and costs contemplated in the settlement. Their skill and experience in complex class cases, and specifically in sexual assault cases, facilitated this resolution. Class counsel have not been paid for their work to date in litigating this case, negotiating the settlement, consulting with the Special Master, and ensuring the settlement is implemented appropriately. The settlement itself contemplates, and class counsel here request, an award for attorneys' fees and costs of $8,760,000—or, a 3.85 multiplier on time and expense incurred to date: $2,262,197 in fees and $42,038.19 in out-of-pocket costs. Compared with the $73 million fund alone, class counsel's fee request amounts to 12% of the fund, significantly below the Ninth Circuit's 25% fee benchmark. If the award is granted, UCLA will pay it separately from, and without reducing, the $73 million class member fund.

Plaintiffs, too, are entitled to service awards for their efforts representing the class, having repeatedly relived harrowing experiences to shepherd this result for thousands of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

other former patients of Dr. Heaps. Class counsel requests that the Court award each of them $15,000 in service awards, as contemplated by the settlement.

## BACKGROUND

### I.    The approved settlement

The approved settlement provides significant relief to thousands of women who were treated by Dr. Heaps at UCLA, and also implements policy changes to ensure patients' medical experiences at UCLA are safer in the future.

### a.    The settlement fund

The settlement established a $73 million fund—separate and apart from attorneys' fees and administrative costs—to be distributed to class members through a multi-tiered, trauma-informed process. *See generally* ECF No. 13-4, Claims Process ("Claims Process"). The appointed Special Master—Judge Irma Gonzalez—together with two other panelists—is currently overseeing the claims evaluation process. ECF No. 66, Final Approval Order ("FA Order") at 1 (appointing Judge Gonzalez).

The settlement's three-tiered structure provides compensation for all class members who were exposed to Dr. Heaps's alleged misconduct, while also offering additional compensation opportunities for those willing to participate in a trauma-informed claims process. Claims Process at 2-3. Class members have already received their $2,500 Tier 1 payments, which were automatically mailed to all class members. Joint Decl. of Pls.' Counsel in Supp. of Mot. for Att'y Fees, Costs, and Service Awards ("Joint Decl.") ¶ 5. Additionally, class members who believed their experiences with Dr. Heaps fell outside of accepted medical standards could also submit a written claim form. Claims Process at 2-3. If validated by the Panel, that submission will entitle class members to an additional $10,000, for a total Tier 2 payment of $12,500. *Id.* at 3. Finally, under Tier 3, class members can receive up to $250,000 if they both submitted a claim form *and* underwent an interview detailing the conduct they experienced and its impact.

*Id.* Five million dollars were set aside for additional compensation to those Tier 3
claimants who the Panel believed were entitled to more than $250,000. *Id.* at 4.

### b.    Changes to UCLA's policies and procedures

In addition to compensating class members for past exposure and harm, the
settlement requires forward-looking policy changes, many of which have already been
implemented. ECF No. 40-1, Mem. in Supp. of Final Approval ("FA Mem.") at 7-8.
These changes include new systems for investigating alleged sexual harassment within
UCLA's patient care context, formalized chaperone policies for sensitive appointments,
mandated boundaries training for all physicians who practice at UCLA medical facilities,
and more transparent notice to patients regarding how to report misconduct. *Id.*

## II.    Class counsel's work to date

Over the last few years, class counsel have investigated and prosecuted this case,
negotiated the settlement on behalf of the class, obtained final approval of that settlement
from this Court, and overseen the settlement's implementation.

Plaintiffs' efforts began in June 2019. Joint Decl. ¶ 12. Following an initial
investigation, they strategized and drafted a complaint and filed suit in July 2019,
seeking to represent a class of women examined by Heaps at UCLA facilities. *A.B. v.
Regents of Univ. of Cal.*, Case No. 2:19-CV-06586 (C.D. Cal.). They obtained thousands
of pages of documents through discovery, including Heaps's personnel file, the results of
UCLA's investigations into Heaps's conduct, and the University's policies and
procedures regarding sexual harassment and sexual violence. ECF No. 40-3, Final
Approval Joint Decl. ("FA Joint Decl.") ¶¶ 4-5. In addition, UCLA produced anonymized
records of calls from former Heaps patients to an abuse-prevention organization that
UCLA hired to counsel victims after Heaps's arrest. *Id.* ¶ 5. While Plaintiffs made efforts
to obtain central documents early, they also prepared and served third-party subpoenas,
*id.* ¶¶ 4-8, and negotiated and submitted a protective order that Judge Eick entered, ECF
Nos. 26, 28, C.D. Case No. 2:19-cv-06586-RGK-E.

3

Plaintiffs spent significant time analyzing these documents to prepare for depositions targeted at class certification. FA Joint Decl. ¶¶ 4-5. Given that the information spanned Heaps's over-35-year tenure at UCLA, Plaintiffs were simultaneously analyzing incoming materials, researching and refining their class certification strategy, and preparing for institutional depositions. *Id.* ¶ 8. Plaintiffs' first deposition was scheduled for March 10, 2020. ECF No. 13-2, Prelim. Approval Joint Decl. ("PA Joint Decl.") ¶ 8. It was cancelled that morning due the venue's new COVID-related restrictions. *Id.* COVID continued to disrupt the litigation, making a moving target of depositions of important university medical personnel who were themselves attempting to navigate the new disease as doctors. FA Joint Decl. ¶ 8. With few options to complete the planned depositions before the class certification motion deadline, PA Joint Decl. ¶¶ 8-10, the parties negotiated a tolling agreement and agreed to dismiss the case without prejudice while they pursued settlement. *Id.* ¶¶ 10-12.

Using the materials obtained through formal discovery and continuing investigation, Plaintiffs prepared for mediation. This preparation required not only performing factual analysis, brainstorming potential settlement structures and valuations, and preparing a mediation brief, but also creating and orchestrating video presentations to set the stage at mediation. FA Joint Decl. ¶¶ 13, 17. The two-day mediation with nationally recognized mediators Ken Feinberg and Camille Biros culminated in an agreement in principle to resolve the litigation. *Id.* ¶¶ 16-18. In the months that followed, the parties negotiated and drafted the details of the settlement, including the claim form and claims processing procedures. *Id.* ¶ 20.

Upon completion of settlement documentation, FA Joint Decl. ¶¶ 20-21, Plaintiffs refiled the action as a new case and moved for preliminary approval. ECF No. 13, Prelim. Approval Mot. ("PA Mot."); FA Joint Decl. ¶ 21. This Court granted preliminary approval of the settlement and provisionally certified the settlement class. *See generally* ECF No. 33, Order Granting Prelim. Approval ("PA Order"). Regarding attorneys' fees,

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

this Court highlighted that the settlement fund "will be unaffected by the attorneys' fee," and "conditionally approve[d]" the award of $8,760,000, or 12% of the settlement fund, "as it is lower than the accepted range for attorneys' fees in the Ninth Circuit." *Id.* at 10. This Court also "provisionally approve[d]" the proposed service award to class representatives of $15,000 per Plaintiff, finding that an award is "reasonable here and is not the product of collusion or favoritism." *Id.*

Once class notice was disseminated, class counsel received dozens of inquiries from class members. FA Mem. at 9-10. The response to the settlement was overwhelmingly positive—no class member objected, and many expressed support for the settlement's confidential, non-adversarial, and streamlined claims process. FA Joint Decl. ¶¶ 46-50.

Between preliminary and final approval, class counsel worked diligently and promptly to respond to inquiries from women who would be impacted by the settlement about the settlement terms, the tiers of compensation available under the settlement, and the claims process associated with each tier. FA Joint Decl. ¶¶ 47-48; Joint Decl. ¶ 6. They also communicated consistently with the Panel, the claims administrator, and opposing counsel on a variety of issues, including developing claims processing protocols, ensuring that ready payments were disseminated promptly, and negotiating and answering process-related questions as they arose. Joint Decl. ¶ 6.

Following class counsel's preparation and submission of final approval papers, this Court granted final approval of the settlement, appointed Plaintiffs as class representatives, and appointed Girard Sharp LLP, Gibbs Law Group LLP, and Erickson Kramer Osborne LLP as class counsel. ECF No. 51, Order Granting Final Approval ("FA Order") at 1. At the final approval hearing, the Court acknowledged that the parties "put a lot of work into" the settlement, and commented that class counsel's attorneys' fees request "probably will be granted." Joint Decl. Ex. D, Transcript, at 5:11, 5:17. Class counsel have continued to respond to class member inquiries, and work with the Panel,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

the claims administrator, and opposing counsel as issues have arisen in the
implementation of this settlement. Joint Decl. ¶ 6.

**ARGUMENT**

Class counsel have spent a considerable amount of time and advanced litigation
costs to prosecute this case, negotiate a resolution capable of meeting victims'
specialized needs, and implement the resulting settlement—all without any guarantee of
payment for their efforts. Plaintiffs thus request an award of their reasonable attorneys'
fees and reimbursement of their litigation costs. Plaintiffs, too, should be granted service
awards in recognition of their efforts on behalf of the class. All three requests—fees,
costs, and service payments—are described in greater detail below.

**I.     The requested fee award is fair, reasonable, and justified**

Class counsel requests a combined fee and cost award of $8,760,000, or 12% of
the $73 million class settlement fund. This fee award is significantly lower than the
Ninth Circuit's 25% benchmark, and lower still when accounting for the amounts UCLA
has agreed to pay separate and apart from the class member fund. Beyond the figures,
this fee award is justified given the monetary and injunctive relief to the class, and
counsel's skill, efficiency, and care in litigating and settling this case.

**a.     This settlement is a constructive common fund**

In a "common fund" settlement structure, class members are compensated through
a single fund recovered on their behalf. *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir.
2016). Traditionally, attorneys' fees are also taken from that fund, ensuring that each
class member "contributes proportionately" to those fees. *Id*.

Sometimes, though, settlements account for the fee amount separately from the
common fund itself. *See, e.g.*, *Galavis v. Bank of Am., N.A.*, No. 2:18-CV-09490, 2020
WL 5898800, at *2 (C.D. Cal. July 14, 2020). Such a settlement is called a "constructive
common fund" because regardless of its structure, it is "functionally a common fund
settlement." *Id.*; *see also Green v. Lawrence Serv. Co.*, No. 2:12-CV-06155, 2014 WL

6

12778929, at *7 (C.D. Cal. Apr. 1, 2014) (applying a "constructive common fund"
approach).

Here, the settlement class counsel secured is a constructive common fund, with
$73,000,000 for class members alone and separate payments for attorneys' fees, costs,
and settlement administration. FA Joint Decl. ¶ 54. Because class relief and fees here are
a "package deal," the settlement should be treated as a constructive common fund.
*Galavis*, 2020 WL 5898800, at *2.

### b.    The fee award here should be calculated as a percentage of that fund

Courts review fee awards to ensure they are reasonable. *Vizcaino v. Microsoft
Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where parties have already stipulated to the
amount, this inquiry need not be exacting. *See Hensley v. Eckerhart*, 461 U.S. 424, 437
(1983) ("A request for attorney's fees should not result in a second major litigation.
Ideally, of course, litigants will settle the amount of a fee."); *see also Hardisty v. Astrue*,
592 F.3d 1072, 1078 (9th Cir. 2010) (review of attorneys' fees should not "spawn a
second litigation of significant dimension").

The "dominant" method for evaluating fees in common fund cases is the
percentage-of-the-fund method. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,
1046 (N.D. Cal. 2008) (collecting Ninth Circuit authority, including *Vizcaino*, 290 F.3d at
1047); *see also Elkies v. Johnson & Johnson Servs., Inc.*, No. 2:17-CV-7320, 2020 WL
10055593, at *8 (C.D. Cal. June 22, 2020) ("In the Ninth Circuit, use of the percentage
method in common fund cases appears to be dominant."). Because this settlement is
constructively a common fund, the Court should apply the percentage-of-the-fund
approach. *See, e.g.*, *Galavis*, 2020 WL 5898800, at *3 (applying percentage method to
constructive common fund); *Green*, 2014 WL 12778929, at *7 (same).

### c.    The requested fee is justified

Under the percentage-of-the-fund approach, the Ninth Circuit begins with a
benchmark "starting point" of 25%. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

934, 955 (9th Cir. 2015). "However, in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted). Courts may also adjust the percentage downward "to account for any unusual circumstances." *Williams v. MGM-Pathe Comm'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

Here, rather than exceeding the benchmark, class counsel requests a far lower percentage—12% of the class member fund, or $8,760,000 for fees and costs combined, to be paid separately from the fund itself. FA Joint Decl. ¶ 54. That percentage becomes lower still after deducting the requested costs and accounting for Defendants' other payments, like the cost of administering the settlement. *See e.g., In re Midland Nat. Life Ins. Co. Annuity Sales Pracs. Litig.*, No. 2:07-CV-1825, 2012 WL 5462665, at *2 (C.D. Cal. Nov. 7, 2012) (including items like class notice costs in the denominator "would only reduce the percentage of class counsel's award below what is already a reasonable percentage fee and expense award"). Specifically, assuming the Court awards class counsel's requested costs in full, the fee portion of the $8,760,000 would be $8,717,961.81 (the numerator), and the total size of the constructive fund would include $73 million in class member compensation, the $8.76 million fee-and-cost award, and the $1.5 million UCLA has spent on settlement administration to date, or $83.26 million (the denominator). FA Joint Decl. ¶ 54; Joint Decl. ¶ 6. Accounting for these additional figures, class counsel's fee request amounts to 10.5% of the constructive settlement fund.

A closer examination also demonstrates that the requested award is fair, reasonable, and justified. Plaintiffs discuss below the following factors, which courts within this Circuit frequently use to assess percentage-based fee awards: (i) the results class counsel achieved for the class; (ii) whether counsel obtained benefits beyond the settlement fund; (iii) the case's risks; (iv) class counsel's experience litigating the case; (v) comparable fee awards; and (vi) the contingent nature of the case. *In re Optical Disk Drive Prod. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).

### i.   Class counsel achieved an outstanding result for the class

The "most critical factor" in assessing attorneys' fees is "the degree of success obtained." *Hensley*, 461 U.S. at 436. This class settlement should be viewed as a successful result for a number of reasons.

First, class members will receive significant compensation. Each class member has already received a $2,500 payment designed to compensate them for their exposure to an alleged sexual predator. Joint Decl. ¶ 5. Those who submitted written materials establishing that their treatment exceeded the bounds of legitimate medical care will also receive an additional $10,000. Those who established their treatment caused emotional distress or bodily injury by submitting written materials and participating in an interview with a trained specialist will receive up to $250,000 in compensation—and, in some cases more from the supplemental payment fund. FA Mem. at 5-6. Without having to file individual cases, undergo adversarial discovery, and pursue their claims through trial, class members have received and will receive significant compensation for their alleged injuries. *See, e.g.*, *In re Google Inc. St. View Elec. Comm'ns Litig.*, 21 F.4th 1102, 1121-22 (9th Cir. 2021) (affirming a 25% attorney fee award where only *cy pres* payments were disseminated and class members received no payments, and collecting cases). The $73 million class member fund was not a foregone conclusion, but rather the result of class counsel's efforts.

Second, the claims process itself was an important achievement. Class members have praised its confidential, non-adversarial, and streamlined setup. FA Joint Decl. ¶ 49. Depending on the level of harm they suffered and their willingness to participate in a trauma-informed process, class members could choose from varying methods of receiving compensation: no action was required to obtain a base payment, enhanced settlement payments were available through a purely written process, and even more compensation could be obtained following a specially designed interview process. *See*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

Claims Process at 2-3. And as with most class actions, those who preferred to pursue their claims through an individual lawsuit were able to opt out of the class settlement.

Third, the class member fund "guarantee[s] … immediate relief." *Taylor v. Shippers Transp. Exp., Inc.*, No. 2:13-CV-02092, 2015 WL 12658458, at *14 (C.D. Cal. May 14, 2015). Class members already received their automatic $2,500 payments, and will soon receive the enhanced payments to which they are entitled. Joint Decl. ¶ 5. This immediacy is the result of a court-supervised claims adjudication procedure, conducted by an experienced Special Master and Panel, removed from adversarial litigation. FA Joint Decl. ¶¶ 23-25, 49. It also stands in contrast to the uncertainty associated with pursuing an individual case to trial.

Finally, and importantly, the class reaction underscores the strength of the results achieved. Not one class member objected to the settlement and many others communicated their appreciation to class counsel. FA Joint Decl. ¶¶ 47, 49, 50. This "overwhelmingly positive" reaction also supports class counsel's fee request. *Taylor*, 2015 WL 12658458, at *17 (only one objection helped justify a 33% fee request).

In sum, the settlement was a favorable result for class members, which strongly supports class counsel's fee request. *See Hensley*, 461 U.S. at 436.

**ii.      The equitable relief achieved is also significant**

The equitable relief obtained through a settlement also influences the percentage awarded for attorneys' fees. *See Vizcaino*, 290 F.3d at 1049 (considering "generated benefits beyond the cash settlement fund").

Here, as a "product of considerable negotiation between the parties," UCLA agreed to several policy changes to prevent prolonged physician harassment. FA Joint Decl. ¶ 36. These changes include: appointing an independent compliance monitor, implementing a new framework to investigate allegations of sexual harassment and sexual assault in the patient care context, implementing formal chaperone policies, notifying patients of reporting options, and revising physician credentialing applications

10

to incorporate questions about allegations of sexual misconduct. ECF No. 13-5,
Equitable Relief Measures; FA Joint Decl. ¶¶ 36-39. These foundational policy changes
also support class counsel's fee request. *Cf. Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-
CV-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) (improved security
measures supported 25% fee request).

> ### iii.    Further litigation would have entailed significant risk

The risk of no recovery, another component courts assess for attorneys' fees in
common fund cases, also weighs in favor of approving class counsel's fee request. *See
Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance").

Here, although class counsel is confident that Plaintiffs and other class members
would have prevailed without settlement, the hurdles would have been significant. Class
counsel intended to move to certify issue classes under Rule 23(c)(4). PA Joint Decl.
¶ 20. Even assuming Plaintiffs' success on the merits of these issues, class member relief
would have entailed individual trials on the remaining elements. There would have been
a real risk that Plaintiffs or other class members could lose at class certification, either
stage of trials, other dispositive motions, or even on appeal, especially given the
adversarial process and opposing counsel's resources and experience. *See, e.g., Thomas
v. Dun & Bradstreet Credibility Corp.*, No. 2:15-CV-03194, 2017 WL 11633508, at *12,
19 (C.D. Cal. Mar. 22, 2017) (delineating significant risks to recovery including class
certification, trial, and appeals). These risks, too, weigh in favor of granting class
counsel's fee request.

> ### iv.    Class counsel displayed skill and effort in prosecuting this case

The "[s]kill of [c]ounsel" is another factor courts consider when assessing
common-fund attorneys' fees. *Omnivision*, 559 F. Supp. 2d at 1047 (citation omitted).
Generally, the "prosecution and management of a complex national class action requires
unique legal skills and abilities." *Id.* Class actions targeting systemic discrimination and
mistreatment are particularly "difficult to win," especially when the allegations are

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

levied against a large and well-respected institution like UCLA. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2011) (that Coca-Cola is "highly respected … and possesses the financial resources to vigorously defend" an employment discrimination case "merits recognition in the fee award").

Here, class counsel has expended significant effort resolving this case favorably and efficiently. This work, to date, includes over 3,646.2 hours in prosecuting, settling, and administering the settlement in this case. *See Pan v. Qualcomm Inc.*, No. 3:16-CV-01885, 2017 WL 3252212, at *12 (S.D. Cal. July 31, 2017) (3,084 hours expended justified increasing the 25% benchmark by 4.6%). Further, class counsel is nationally recognized for their skill in prosecuting class actions and other complex litigation, including sexual assault class actions. Joint Decl. ¶ 3.

### v.    The requested fee is a smaller percentage than fee awards in comparable cases

Courts within the Ninth Circuit also examine fee awards from comparable settlements. *See Vizcaino*, 290 F.3d at 1050 (instructing courts to examine reasonable attorney expectations for fees "based on circumstances of the case and the range of fee awards out of common funds of comparable size").

Class counsel requests a fee award here of approximately 10.5% of the constructive common fund. *Supra* at p. 8. This fee award is significantly lower than other recent sexual assault class actions. *See Rapuano v. Trs. of Dartmouth Coll.*, No. 1:18-CV-01070, 2020 WL 3965784, at *2 (D.N.H. July 14, 2020) (awarding 35% of a $14 million sexual abuse class action settlement fund as fees, with costs to be deducted from the fund separately); *St. Louis v. Perlitz*, No. 3:13-CV-01332 (D. Conn. Aug. 27, 2019), ECF Nos. 1089, 1080 ¶ 14 (awarding 31% of the settlement fund as fees).

Class counsel's requested fee is also lower than fees awarded from comparably-sized common funds. Courts regularly award as attorneys' fees more than 12%. *See, e.g.*, *Amador v. Baca*, No. 2:10-CV-01649, 2020 WL 5628938, at *12 (C.D. Cal. Aug. 11,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

2020), *appeal dismissed sub nom.*, *Amador v. Shorter*, No. 20-55965, 2021 WL 1037119 (9th Cir. Feb. 12, 2021), *cert. denied*, 142 S. Ct. 109 (2021) (granting 25% of a $53 million fund); *Mild v. PPG Indus., Inc.*, No. 2:18-CV-04231, 2019 WL 9840633, at *1 (C.D. Cal. Oct. 25, 2019) (granting 25% of a $25 million fund); *In re Heritage Bond Litig.*, No. 2:02-MD-00382, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (approving a 33.33% award of a $28 million fund); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-MD-02617, 2018 WL 3960068, at *16 (N.D. Cal. Aug. 17, 2018) (awarding 27% of a $115 million fund).

### vi.    The contingent nature of the case supports the requested fee

Finally, courts also take into account the contingent nature of class litigation. The Ninth Circuit has deemed it an "established practice … to reward attorneys for taking the risk of non-payment … [in] contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Here, this lawsuit began nearly three years ago. Class counsel have expended over 3,646.2 hours, Joint Decl. ¶ 7, and advanced over $42,038.19 in costs, none of which they have been paid for. *Id.* ¶ 11. This circumstance, too, justifies class counsel's requested fee award.

### d.    A lodestar cross-check confirms the requested fee is reasonable

Although the Ninth Circuit "has consistently refused to adopt a [lodestar] crosscheck requirement," such a crosscheck here confirms the reasonableness of class counsel's fee request. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. Sept. 2, 2020) (collecting published Ninth Circuit cases). To perform this crosscheck, courts first evaluate the lodestar (hours spent times the worker's hourly rate), and then assess what "multiplier" would be applied to achieve the requested attorney fee award. Put differently, the requested fee award divided by the lodestar is the lodestar multiplier. *E.g.*, *Thomas*, 2017 WL 11633508, at *24 (C.D. Cal. Mar. 22, 2017).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

Generally, the Ninth Circuit and courts within it find lodestar multipliers lower than four to be reasonable. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (affirming a 25% fee award, explaining that multipliers "ranging from one to four are frequently awarded in common fund cases"); *Thomas*, 2017 WL 11633508, at *24 (finding 27% of the common fund, which produces a lodestar multiplier of 3.92, a reasonable award because the "lodestar multiplier [is] under four").

Here, class counsel's cross-check lodestar multiplier is within the range commonly granted in this circuit. Using the requested fee award of $8,717,961.81 as the numerator, and the lodestar of $2,262,197 as the denominator, class counsel's requested cross-check multiplier is 3.85. That the multiplier is below four confirms the reasonableness of class counsel's fee award.

In sum, because the only circumstance in this case justifying such a large departure from the Ninth Circuit's 25% benchmark is the parties' agreement, and because the requested award's lodestar cross-check multiplier is within the range for approved fees in the Ninth Circuit, Plaintiffs respectfully request that this Court grant their request for $8,717.961.81 in attorneys' fees.

## II.    Class counsel's litigation costs are reasonable and should be reimbursed

Reasonable litigation expenses are generally compensable. Fed. R. Civ. P. 23(h); *In re Toys R Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014). Among others, "travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, … visual equipment … consulting and expert witness fees … are recoverable." *Marshall v. Northrop Grumman Corp.*, No. 16-CV-06794, 2020 WL 5668935, at *9 (C.D. Cal. Sept. 18, 2020). Press release costs are also reimbursable. *See* Order on Att'y Fees, *Trevor Mild v. PPG Industries, Inc.,* No. 2:18-CV-04231 (C.D. Cal. Feb. 25, 2021) (awarding press release costs).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

Class Counsel in this case have collectively incurred $42,038.19 in litigation costs. Joint Decl. ¶ 11. These costs include mediation fees ($21,285.00), legal research ($9,811.95), court costs ($1,493.50), service of process ($504.70), messenger fees ($256.50), copying ($893.50), document management ($2,724.81), travel costs, including meals and travel ($4,786.37), long distance calls ($254.36), press release costs ($300), and postage ($27.50). *Id.* Because these incurred costs are both reasonable and regularly reimbursed, class counsel requests the Court order their reimbursement.

## III.   Plaintiffs' requested service payments are reasonable and appropriate

Plaintiffs request service payments of $15,000 each ($105,000 in total) to compensate them for their efforts on behalf of the class. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

Service payments are "fairly typical in class action cases." *Id.* Although courts often award service payments of $5,000, *Song v. THC - Orange Cty., Inc.*, No. 8:17-CV-00965, 2019 WL 13030226, at *9 (C.D. Cal. Aug. 2, 2019), higher awards are granted where plaintiffs' representation entails personal risk and difficulty. For instance, where litigation requires examining plaintiffs' sensitive personal information, courts generally grant higher awards. *See, e.g.*, *In re Cobra Sexual Energy Sales Pracs. Litig.*, No. 2:13-CV-05942, 2021 WL 4535790, at *9 (C.D. Cal. Apr. 7, 2021) (approving requested awards "given the sensitive issues" in a case about ads for aphrodisiac products); *see also In re Nucoa Real Margarine Litig.*, No. 2:10-CV-0927, 2012 WL 12854896, at *31 (C.D. Cal. June 12, 2012) (finding that awards were justified because plaintiffs had to disclose "personal health information, which might be embarrassing"). And specifically, plaintiffs alleging systemic gender-based violence or harassment receive significant service awards, accounting for "coming forward and describing deeply personal accounts of sexual harassment, assault, and trauma." Mem. in Supp. of Mot. for Fees at 33, *Rapuano*, No. 1:18-CV-01070 (D.N.H. May 26, 2020), 2020 WL 6552248; *see Rapuano,* 2020 WL 3965784, at *2 (approving awards of $75,000 for each of the nine representative

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

plaintiffs in a Title IX sexual predation case); *see also* Order on Att'y Fees, *In re USC Student Health Center Litig.*, No. 2:18-CV-04258 (C.D. Cal. July 12, 2021) (approving awards of $15,000 each to 46 class representatives and $20,000 to four class representatives who alleged sexual abuse by a university gynecologist).

Here, service awards to Plaintiffs of $15,000 each are appropriate. Plaintiffs' prosecution required repeated engagement with their traumatic experiences. *E.g.*, Joint Decl. ¶ 13; FA Joint Decl. ¶ 13; ECF No. 16, Corrected Class Action Compl. ¶¶ 23-27, 46-47, 55-56, 75-76, 95, 112-114 (alleging medically unnecessary and invasive vaginal "exams" performed in a sexual manner); *id.* ¶¶ 75, 99, 102-103, 112-114 (alleging attempts to sexually stimulate patients during their visits); *id.* ¶¶ 31-33, 72-73, 81-82, 86, 110 (alleging medically unnecessary breast exams, performed without gloves and in a sexual manner); *id.* ¶¶ 72, 73, 96-97, 99, 112 (alleging sexualized comments made to patients). Despite risk and personal difficulty, Plaintiffs retained class counsel and came forward, catalyzing this class settlement. *See, e.g.*, ECF No. 16 ¶¶ 100, 115-116, 219 (descriptions of Plaintiffs' lasting and severe emotional distress and trauma). In fact, their recorded video testimonials played during the mediation grounded the parties in Plaintiffs' experiences throughout the settlement negotiations. Joint Decl. ¶ 14; FA Joint Decl. ¶ 13. Plaintiffs also regularly communicated with counsel about the litigation, reviewed pleadings and discovery responses, and provided strategic input to class counsel. Joint Decl. ¶¶ 13, 15; FA Joint Decl. ¶ 13. In all, Plaintiffs made this settlement possible, including significant payments to class members through a trauma-informed and non-adversarial process, and systemic reform at the university. Joint Decl. ¶ 17; *see Gaston*, 2021 WL 6496734, at *4 (contributions to settlement and the fact that service award represented less than 2% of total settlement supported weighed in favor of request). Accordingly, recognizing Plaintiffs' contributions to this litigation, Plaintiffs respectfully request the Court approve the requested service awards.

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For all the foregoing reasons, Plaintiffs request the Court approve a combined attorneys' fees and costs award of $8,760,000, and service payments to Plaintiffs of $105,000 total, or $15,000 apiece.

Respectfully submitted,

Dated: March 30, 2022            /s/ *Daniel C. Girard*

Daniel C. Girard (SBN 114826)
dgirard@girardsharp.com
Jordan Elias (SBN 228731)
jelias@girardsharp.com
Trevor T. Tan (SBN 281045)
ttan@girardsharp.com
Makenna Cox (SBN 326068)
mcox@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Elizabeth A. Kramer (SBN 293129)
elizabeth@eko.law
Julie Erickson (SBN 293111)
julie@eko.law
**ERICKSON KRAMER OSBORNE LLP**
44 Tehama Street
San Francisco, CA 94105
Telephone: (415) 635-0631
Facsimile: (415) 599-8088

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)

Eric H. Gibbs (SBN 178658)
ehg@classlawgroup.com
Amy M. Zeman (SBN 273100)
amz@classlawgroup.com
Amanda M. Karl (SBN 301088)
amk@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

*Class Counsel*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 2:20-cv-09555-RGK (Ex)